UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------------X

EVERSPEED ENTERPRISES LIMITED,                    :

                              Plaintiff,                          :

          - against-                                               :

SKAARUP SHIPPING INTERNATIONAL CORP.,             :
SKAARUP FORTUNE SHIPPING LTD., SKAARUP
SHIPPING CORP., THOMAS BENE, OLE SKAARUP,         :      November 18, 2009
and JONATHAN ZHU,
                                                                   :

                              Defendants.                         :

----------------------------------------------------------------------X

## COMPLAINT

Plaintiff Everspeed Enterprises Limited ("Everspeed") by and through its undersigned

counsel Lennon Murphy & Lennon, LLC and Michael J. Mitchell P.C., as and for its Complaint

against Defendants Skaarup Shipping International Corp., Skaarup Fortune Shipping Ltd.,

Skaarup Shipping Corp., Thomas Bene, Ole Skaarup, and Jonathan Zhu (collectively, the

"Skaarup Defendants"), alleges as follows:

## THE PARTIES

1.      Plaintiff Everspeed is a private corporation duly organized under the laws of the

British Virgin Islands with a principal place of business in Singapore.

2.      Defendant Skaarup Shipping International Corp. ("Skaarup Shipping

International") is a corporation formerly organized under the laws of Liberia with a principal

place of business at 66 Field Point Road, Greenwich, Connecticut. Skaarup Shipping

International was dissolved in 2000.

3.      Defendant Skaarup Fortune Shipping Ltd. ("Skaarup Fortune") is, upon information and belief, a Hong Kong corporation with a principal place of business at 66 Field Point Road, Greenwich, Connecticut.

4.      Defendant Skaarup Shipping Corp. ("Skaarup Shipping") is a corporation duly organized under the laws of Delaware with a principal place of business at 66 Field Point Road, Greenwich, Connecticut, and is a shareholder of Defendant Skaarup Fortune.

5.      Defendant Thomas Bene ("Bene") is the President of Skaarup Shipping, an officer and shareholder of Skaarup Shipping, and an officer and shareholder of Skaarup Fortune. At the time of the events described in this complaint, Bene was represented by Defendant Jonathan Zhu to be the President of Skaarup Shipping International. At the time of its dissolution, Bene was the Chairman and CEO of Skaarup Shipping International. He is a resident of New Canaan, Connecticut.

6.      Defendant Ole Skaarup ("Ole Skaarup") is the CEO of Skaarup Shipping and a shareholder and officer of Skaarup Shipping. At the time of its dissolution, Ole Skaarup was a Director and the sole shareholder of Skaarup Shipping International. He is a resident of Greenwich, Connecticut.

7.      Defendant Jonathan Zhu ("Zhu") is Vice-President of Skaarup Shipping, an officer of Skaarup Shipping, and an officer of Skaarup Fortune. During the events described in this Complaint, Zhu represented himself as having power, authority, and control over Defendant Skaarup Shipping International. On information and belief, he is a resident of China.

2

## JURISDICTION AND VENUE

8.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.  This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States Code § 1331.

9.      Venue in this district is proper since, *inter alia*, the defendants named herein are domiciled in this District and have assets in this District and a substantial part of the events giving rise to the claims herein occurred in this District.

## M/V BUNGA SAGA 9

10.     Plaintiff Everspeed was at all pertinent times the disponent owner of the Motor Vessel BUNGA SAGA 9.

11.     By charter party contract dated March 9, 2008, Skaarup Fortune chartered the vessel from Plaintiff Everspeed for a minimum period of 29 months at a charter hire of $56,500 per day, plus demurrage and expenses as specified in the charter party contract.

12.     Skaarup Shipping International guaranteed the performance of Skaarup Fortune, including the payment of charter hire and all other sums due under the charter party contract to Plaintiff Everspeed.

13.     On January 23, 2009, Skaarup Fortune wrongfully terminated the charter party contract, thereby causing Plaintiff Everspeed to suffer damages to the end of the contract period in the amount of $49,690,801.

14.     Despite due demand having been made, Skaarup Fortune has failed ad refused to perform the charter party contract  and Skaarup Shipping International has failed and refused to perform its obligation as guarantor.

3

## THE SKAARUP GROUP

15.     Collectively, the Defendants operate, advertise, and hold themselves out as "The Skaarup Group," with Skaarup Shipping Corp. as the nominal parent.

16.     Defendant Bene is the President of "The Skaarup Group" and the President of Skaarup Shipping Corp. and has been identified as the President of Skaarup Shipping International. Bene is an officer and shareholder of Skaarup Fortune. **(See Exhibit 4 to Accompanying Declaration of R. Keith Denholm (hereafter "Denholm Decl.") annexed to this Complaint as Exhibit "B")).**

17.     Defendant Ole Skaarup is the Chairman of "The Skaarup Group" and the Chairman of Skaarup Shipping Corp. Ole Skaarup is a beneficial shareholder of Skaarup Fortune.

18.     Nonparty Skaarup Shipbrokers, Inc. (the "Broker"), who brokered the charter on behalf of Skaarup Fortune and Skaarup Shipping International, was at all material times a Delaware corporation with a principal place of business at 850 Canal Street, Stamford, Connecticut. At all pertinent times, Skaarup Shipbrokers Inc. was part of "The Skaarup Group" and acted for and on behalf of the various Skaarup entities, including the Defendants herein.

## SKAARUP SHIPPING INTERNATIONAL

19.     Upon Skaarup Fortune's wrongful termination of the charter party contract, Plaintiff sought to verify the domicile and status of the guarantor, Skaarup Shipping International. Corporate registries in each of the fifty (50) United States and in each of twenty-two (22) foreign jurisdictions frequently used by maritime entities were searched including Liberia. (The Broker had advised plaintiff that Skaarup Shipping was both active and domiciled in Liberia.) The only registry in which Skaarup Shipping International was found was Liberia. On June 29, 2009, the Liberia Ship and Corporate Registry ("LISCR"), the official corporate

registrar for Liberia, advised that Skaarup Shipping International was established on November 1, 1989 and had been **dissolved** on April 18, 2000. **(Denholm Decl. ¶¶ 23-28).** A copy of the certified apostilled Liberian Articles of Dissolution is attached as **Exhibit "A."**

20.     Skaarup Shipping International's Articles of Dissolution identify Thomas Bene as Chairman and CEO and identify Ole Skaarup as the sole Director of Skaarup Shipping International. **(See Exhibit "A" annexed hereto).**

21.     On March 27, 2000, Bene and Skaarup Shipping International's Assistant Secretary appeared before a Connecticut Notary Public, duly acknowledged and verified to said Notary Public that the execution of the corporate resolution dissolving Skaarup Shipping International was the act and deed of the corporation, and presented an executed copy of a shareholder consent dissolving Skaarup Shipping International. **(See Exhibit "A" annexed hereto).**

22.     At the time the parties entered into the charter party contract for the M/V BUNGA SAGA 9, the Skaarup Defendants knew that Skaarup Shipping International had been dissolved eight years before the Skaarup Group proffered the defunct company as the guarantor of Skaarup Fortune.

23.     Defendants collectively and individually knew that Skaarup Shipping International did not exist at the time of the contract and did not have the capacity, financial or corporate, to guarantee the performance of the charter on behalf of Skaarup Fortune. Nonetheless, Defendants individually and collectively perpetrated a fraud upon the Plaintiff by their willful and deliberate acts, omissions, and misrepresentations upon which Plaintiff reasonably relied in agreeing to charter the vessel to Skaarup Fortune. But for the Skaarup guarantee, Plaintiff would not have chartered the vessel to Skaarup Fortune. **(Denholm Decl. ¶¶ 7, 21).**

24.     Upon information and belief, Defendants individually and collectively have issued or caused to be issued other similar performance guarantees by the same defunct entity, namely Skaarup Shipping International, to induce other shipowners to enter into charters with Defendants.

25.     Collectively and individually, "The Skaarup Group" and its various entities, including each of the Defendants herein, conspired to defraud Plaintiff Everspeed by providing a sham guarantee from a non-existent company as an inducement to Plaintiff Everspeed to enter the subject charter and from which each of the Defendants received significant financial benefit. But for the issuance of a guarantee, Plaintiff Everspeed would not have chartered the vessel to Defendant Skaarup Fortune. **(Denholm Decl. ¶¶ 7, 21).**

## RELATED PROCEEDINGS

26.     Following Skaarup Fortune's wrongful cancellation of the charter, Plaintiff commenced arbitration against Skaarup Fortune in Singapore in accordance with the terms of the charter. The charter party contract is subject to English law and Singapore arbitration. Under English law, Plaintiff is entitled to recover attorneys' fees and interest on the principal amount. Plaintiff anticipates that the underlying charter party dispute will be concluded within three years from the breach of the charter party contract by Skaarup Fortune.

27.     The terms of the guarantee issued by Skaarup Shipping International, the dissolved company, provides that Skaarup Shipping International is a primary obligor under the charter party, not merely a surety of Skaarup Fortune. Plaintiff Everspeed is entitled to call upon the guarantee in the first instance without the necessity of demanding performance from, or waiting for non-performance or default by, Skaarup Fortune. **(See Ex. 4 to Denholm Decl.).**

28.     Skaarup Shipping International ceased doing business in 2000, and in fact ceased to exist, and thus did not have the capacity, financial or corporate, to act as guarantor of Skaarup

6

Fortune in the subject charter party contract under which Skaarup Fortune and Skaarup Shipping International were jointly and severally liable to pay Plaintiff Everspeed charter hire in the minimum amount of $50,680,000 over the minimum term of the charter. **(See Exhibit "A" annexed hereto).**

29.     Defendants collectively and individually reaped significant financial benefit by reason of their individual and collective misrepresentations to Plaintiff and by virtue of their provision of a guarantee from a company that does not exist and did not exist at the time the contract was entered and by their joint and several fraudulent acts in inducing Plaintiff Everspeed to enter into the charter party contract.

30.     Plaintiff Everspeed has commenced an action against Skaarup Fortune pursuant to Rule B of the Supplemental Rules for Certain Maritime Claims in the US District Court for the Southern District of New York, 09-CV-1319 (J. Leonard Sand), seeking, inter alia, an attachment of Skaarup Fortune's property in the total amount of USD $49,690,801 inclusive of principal damages, interest, costs, and attorney fees as security for plaintiff's claim against Skaarup Fortune for breach of the charter party contract (hereafter, the "Rule B Action"). A writ of attachment in the full amount complained of has been issued by that Court and to date Plaintiff has attached USD $894,050 in funds belonging to Skaarup Fortune.

31.     Skaarup Fortune has appeared in the Rule B Action and moved for an order seeking to require Plaintiff to post countersecurity in the amount of USD $2,205,198.36. Plaintiff has opposed the motion, which is scheduled to be heard on December 7, 2009.

## THE CHARTER NEGOTIATIONS

32.     During the negotiations for the charter, as a condition to entering the charter, Everspeed required that Skaarup Shipping guarantee the performance of Skaarup Fortune. **(See Denholm Decl. ¶ 8).**

7

33.     Defendants' communications throughout the negotiations included misrepresentations, actionable omissions, inducements, and ambiguities that Defendants knew or should have known would mislead Plaintiff and cause Plaintiff to rely on such communications in entering the charter with Skaarup Fortune. The guarantor Skaarup Shipping International did not exist at the time Defendants provided the guarantee to Plaintiff. **(See Exhibit A annexed hereto).**

34.     Defendants' actionable communications began at the outset of negotiations, as early as March 6, 2008. Without further specifying to which Skaarup entity he referred, Zhu described his need to "inform Skaarup, Greenwich for the sake of good order." **(Denholm Decl. ¶ 9).**

35.     In describing the need for the amendment of an intermediate fixture recap to reflect the name of Skaarup Fortune's guarantor, Everspeed's Mr. Denholm proposed "[s]omething like 'guaranteed by Skaarup Shipping Inc.' or **whatever their full style is**." (emphasis added) **(Denholm Decl. ¶ 13).** Mr. Denholm's statement clearly signaled that he did not know the correct legal name for Skaarup Shipping and that he was therefore relying on Defendants and the Broker (via Mr. Syrrist) to provide the proper designation.

36.     In response, the Broker did not supply a correct corporate name for Skaarup Shipping Corp. but rather alternatively referenced "Skaarup Shipping International" and "Skaarup Greenwich Companies" in close succession. **(Denholm Decl. ¶ 14).**

37.     When Zhu was asked by the Broker, via Mr. Syrrist, whether he had spoken to Bene, President of Skaarup Shipping, or received a letter regarding "Skaarup Int. guaranteeing performance," Zhu did not correct the reference to the non-existent company and instead reinforced the designation by writing "Don't worry. Remember, I am VP of Skaarup, I can make

8

decision for this matter." **(Denholm Decl. ¶ 18).** Here, Zhu adopted the incorrect reference, whatever its source, and ratified its authenticity.

38.     Defendants were provided with multiple opportunities to correct any possible misunderstandings, typographical errors, mistakes, or improper reliance: On March 7, 0311 GMT, Mr. Denholm wrote to Zhu and Mr. Syrrist asking "urgently" for "Charterers written confirmation that charterers performance to be guaranteed by Skaarup Shipping International, Greenwich, Connecticut." **(Denholm Decl. ¶ 19).**

39.     In response, Zhu did not explain the status of Skaarup Shipping International, did not correct a possible mere error of reference that had made its way into the negotiations, did not note that Skaarup Shipping International had not existed for nearly 8 years, and did not direct Plaintiff to the very company, Skaarup Shipping, of which Zhu was Vice-President; rather, he wrote this reply: "also ok, as I told you and Philip before," **(Denholm Decl. ¶ 19)**, in one short phrase cementing Plaintiff's reliance on this falsehood and admitting a prior misrepresentation about the guarantee.

40.     Zhu proffered Skaarup Shipping International as the guarantor but also referred to the guarantor as "Skaarup Shipping." **(Denholm Decl. ¶ 16).** No entity other than Skaarup Shipping was known to Plaintiff; more precisely, Skaarup Shipping International was unknown to Plaintiff because it did not exist.

41.     Then, a few hours later, Zhu sent this statement to the broker: "If Keith need a guarantee from Skaarup Shipping, you can just go ahead to accept." **(Denholm Decl. ¶ 16).** Structuring the sentence in this way was either an absolute statement that Skaarup Shipping International, which did not exist, was the guarantor or an attempt to use the similarity in names to confuse Plaintiff and cause it to rely on the promise of the guarantee in the belief that it was actually from Skaarup Shipping and not Skaarup Shipping international – the defunct entity.

42.    Later, Zhu sent a Letter of Guarantee he drafted to the Broker (Mr. Syrrist) for forwarding to Mr. Denholm for "Owners review and acceptance." Copied on this message is Bene, who is the President of the same Skaarup Shipping of which Zhu is Vice-President. The Letter of Guarantee is signed "For and on behalf of Skaarup Shipping International Corporation" with the following signature:

> Name: Thomas Bene
> Title: President

**(Ex. 4 to Denholm Decl.).**

43.    Bene did not correct the misrepresentation that Skaarup Shipping International was proposing to guarantee the charter by Skaarup Fortune. Bene knew or should have known the correct legal name for Skaarup Shipping, knew or should have known that Skaarup Shipping International did not exist and had no corporate power or authority of any kind to propose to enter into the Letter of Guarantee with Plaintiff, and knew or should have known that Plaintiff would rely on the Letter of Guarantee.

44.    Bene's silence was an adoption and ratification of the misrepresentation of Skaarup Shipping International's corporate existence and authority.

45.    Following the agreement on the terms of the charter party fixture, Zhu reviewed the binding fixture and made additional comments and requests for changes to some terms. None of the comments or requests for changes in his March 7, 2008, 1414 GMT email referenced, addressed, or corrected the explicit statement in the charter party fixture recap: "Performance of which to be guaranteed by Skaarup Shipping International Greenwich Ct USA." **(Ex. 7 to Denholm Decl.).**

46.    On March 9, 2008, Plaintiff Everspeed confirmed that it would charter the vessel to Skaarup Fortune. **(Denholm Decl. ¶ 21.).**

## FIRST COUNT

### FRAUD

47.     Paragraphs 1 through 46, above, are incorporated and realleged as if fully set forth herein.

48.     Defendants falsely represented that Skaarup Shipping International had the capacity, power, intent, and/or had in fact agreed, to serve as the guarantor of Skaarup Fortune.

49.     Defendants knew that Skaarup Shipping International had been legally dissolved as of April 18, 2000.

50.     Defendants knew that Skaarup Shipping International could not legally enter into any contract with the Plaintiff, and/or Defendants knew that Skaarup Shipping International would not legally enter into any contract with the Plaintiff, and/or Defendants knew that Skaarup Shipping International had not legally entered into any contract with the Plaintiff.

51.     Defendants falsely represented Skaarup Shipping International's capacity for the purpose of causing Plaintiff to enter into a charter party contract with Skaarup Fortune.

52.     Plaintiff would not have entered into the charter party contract with Skaarup Fortune but for Defendants' fraudulent nondisclosure.

53.     Plaintiff relied on Defendants' false representations.

54.     As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff Everspeed has been damaged in an amount to be determined at trial, but which is not less than US $49,690,801.

## SECOND COUNT

### FRAUD BY NONDISCLOSURE

55.     Paragraphs 1 through 54, above, are incorporated and realleged as if fully set forth herein.

56.     Defendants made a false representation by nondisclosure by failing to disclose that Skaarup Shipping International had been legally dissolved as of April 18, 2000.

57.     Defendants knew that Skaarup Shipping International had been legally dissolved as of April 18, 2000.

58.     Defendants failed to disclose the legal dissolution of Skaarup Shipping International for the purpose of causing Plaintiff to enter into a charter party contract with Skaarup Fortune.

59.     Defendants proposed Skaarup Shipping International as the guarantor of Skaarup Fortune, thus creating the duty to speak regarding its legal existence (or lack thereof) and its capacity and power to enter into contracts.

60.     Defendants asserted the capacity of Skaarup Shipping International to serve as guarantor of Skaarup Fortune and represented their control, influence, and dominion over Skaarup Shipping International, thus assuming a duty to speak regarding its legal existence or lack thereof and its capacity and power to enter into contracts.

61.     Plaintiff would not have entered into the charter party contract with Skaarup Fortune but for Defendants' fraudulent nondisclosure.

62.     Plaintiff reasonably relied on the Defendants' failure to disclose the legal dissolution of Skaarup Shipping International and their proposal of it as the guarantor of Skaarup Fortune.

63.     As a direct and proximate result of the Defendants' nondisclosure, Plaintiff Everspeed has been damaged in an amount to be determined at trial, but which is not less than US $49,690,801.

## THIRD COUNT

FRAUDULENT INDUCEMENT

64.     Paragraphs 1 through 63, above, are incorporated and realleged as if now fully set forth herein.

65.     Defendants made a false representation by failing to disclose that Skaarup Shipping International had been legally dissolved as of April 18, 2000. Defendants falsely represented that Skaarup Shipping International had the capacity, power, intent, and/or had in fact agreed, to serve as the guarantor of Skaarup Fortune.

66.     Defendants knew that Skaarup Shipping International had been legally dissolved as of April 18, 2000. Defendants knew that Skaarup Shipping International could not legally enter into any contract with the Plaintiff, that Skaarup Shipping International would not legally enter into any contract with the Plaintiff, and/or that Skaarup Shipping International had not legally entered into any contract with the Plaintiff.

67.     Defendants proposed Skaarup Shipping International as the guarantor of the charter party contract, thus creating the duty to speak regarding its legal existence or lack thereof and its capacity and power to enter into contracts. Defendants asserted the capacity of Skaarup Shipping International to serve as guarantor of Skaarup Fortune and represented their control, influence, and dominion over Skaarup Shipping International, thus assuming a duty to speak regarding its legal existence or lack thereof and its capacity and power to enter into contracts.

68.     Defendants falsely represented Skaarup Shipping International's capacity and failed to disclose the legal dissolution of Skaarup Shipping International for the purpose of causing Plaintiff to enter into a contract with Skaarup Fortune.

69.     Plaintiff would not have entered into the charter party contract with Skaarup Fortune but for Defendants' false representations and fraudulent nondisclosure.

70.     As a direct and proximate result of the Defendants' fraudulent conduct, Plaintiff Everspeed has been damaged in an amount to be determined at trial, but which is not less than US $49,690,801.

## FOURTH COUNT

### FRAUDULENT MISREPRESENTATION

71.     Paragraphs numbered 1 through 70, above, are incorporated and realleged as if fully set forth herein.

72.     Defendants Bene, Zhu, and each of the Skaarup companies made material misrepresentations of material facts to Plaintiff Everspeed, including the bona fide existence, capacity, and authority of guarantor Skaarup Shipping International.

73.     Defendants Bene, Zhu, and each of the Skaarup companies made such misrepresentations fraudulently and knowing the same to be false, or recklessly, or with disregard with respect to the accuracy of such representations.

74.     Defendants Bene, Zhu, and each of the Skaarup companies made such misrepresentations to induce Everspeed to enter into a charter with Skaarup Fortune.

75.     Plaintiff justifiably and reasonably relied on Defendants' fraudulent misrepresentations.

76.     Plaintiff would not have entered into the charter party contract with Skaarup Fortune but for Defendants' fraudulent misrepresentation.

77.     As a direct and proximate result, Plaintiff Everspeed has been damaged in an amount to be determined at trial, but which is not less than US $49,690,801.

## FIFTH COUNT

### NEGLIGENT MISREPRESENTATION

78.     Paragraphs numbered 1 through 77, above, are incorporated and realleged as if fully set forth herein.

79.     Defedants Bene, Zhu, Skaarup, and each of the Skaarup companies, in the course of their business or employment, negligently supplied or communicated false information, including the bona fides and very existence of the fictitious company Skaarup Shipping International, to induce Everspeed to enter into a charter with Skaarup Fortune.

80.     Defendants Bene, Zhu, Skaarup, and each of the Skaarup companies knew or should have known that the information they supplied to Plaintiff was false.

81.     Plaintiff justifiably and reasonably relied upon the false information provided by Defendants Bene, Zhu, Skaarup, and each of the Skaarup companies and entered into a charter party contract with Skaarup Fortune.

82.     Plaintiff would not have entered into the charter party contract with Skaarup Fortune but for Defendants' negligent misrepresentations.

83.     As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff Everspeed sustained losses and has been damaged in an amount to be determined at trial, but which is not less than US $49,690,801.

## SIXTH COUNT

### BREACH OF GUARANTEE

84.     Paragraphs 1 through 83, above, are incorporated and realleged as if fully set forth herein.

85.     Plaintiff entered into the fixture with Defendants on March 9, 2008, which thereby became a binding agreement among the Plaintiff and Defendants and which fixture was subsequently adopted and/or ratified by the Skaarup Defendants.

86.     Plaintiff performed its obligations pursuant to the charter party fixture agreement by entering into a charter party contract with Skaarup Fortune.

87.     Following the wrongful termination of the charter party contract by Skaarup Fortune, Plaintiff demanded that Defendants satisfy their obligation under the guarantee provisions of the agreements among the parties.

88.     As a direct and proximate result of the Defendants' breach of guarantee, Plaintiff Everspeed has been damaged in an amount to be determined at trial, but which is not less than US $49,690,801.

## SEVENTH COUNT

### ALTER EGO

89.     Paragraphs 1 through 88, above, are incorporated and realleged as if fully set forth herein.

90.     Upon information and belief, the Skaarup Defendants are all affiliated and commonly controlled entities operating under the name "The Skaarup Group," and, at all relevant times held, and continue to hold, themselves out to the world as belonging to "The Skaarup Group," an international shipping group based in Greenwich, Connecticut.

91.     Upon information and belief, all members of "The Skaarup Group" including the Defendants herein, share officers, directors, and personnel, and operate out of common offices and addresses in Greenwich, Connecticut.

92.     Upon information and belief, the Defendants all operate under the direction of Skaarup Shipping, which is described in the company's website as the parent of The Skaarup Group.

93.     Upon information and belief, the Defendants are controlled and operated from the same address, namely 66 Field Point Road, Greenwich, Connecticut.

94.     The Defendants promote and advertise their services through a single website, http://www.skaarupshipping.com/, which lists the Defendants' common address, corporate organization and contact information.

95.     Upon information and belief, Skaarup Shipping exercises complete domination and control over each of the Defendants and/or disregards the Defendants' corporate forms and/or conducts the business and operations of the Defendants as if the same were Skaarup Shipping's own, such that adherence to the fiction of the separate existence of the Defendants as entities distinct from one another and/or the separate existence of the Defendants as distinct from each other, would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

96.     Upon information and belief, there exists and at all times herein mentioned there existed a unity of interest, ownership and control between and among Defendants, such that any individuality and separateness between said defendants has ceased, and Defendants are alter egos of each other – each being liable for the debts and liabilities of the others.

97.     As a direct and proximate result, Plaintiff Everspeed has been damaged in an amount to be determined at trial, but which is not less than US $49,690,801. Plaintiff Everspeed further prays for a declaration, determination, or finding that the Defendants are alter egos of each other and for such other relief as the Court finds fair, equitable, and appropriate.

## **EIGHTH COUNT**

VIOLATION OF CONNECTICUT UNFAIR TRADE
PRACTICES ACT C.G.S. § 42-110 et seq.

98.     Paragraphs 1 through 97, above, are incorporated and realleged as if fully set forth herein.

99.     Each Defendant was engaged in trade or commerce within the meaning of the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110 et seq.

100.    Each Defendant engaged in unfair and/or deceptive trade practice in the conduct of trade, business and/or commerce in violation of CUTPA in one or more of the following ways:

      a.  The acts and/or practices were deceptive in that they had a tendency and/or capacity to deceive;

      a.  The acts and/or practices violate public policy as has been established by statute, common law or otherwise, including without limitation the Defendants' respective breach of contract, fraudulent and/or negligent misrepresentation;

      b.  The acts and/or practices are immoral, unethical and/or unscrupulous;

      c.  The acts and/or practices have a tendency to cause injury to consumers, competitors and/or business persons; and/or

      d.  The acts and/or practices have caused substantial injury to Plaintiff.

101.    As a direct and proximate result of the actions of each Defendant in violation of CUTPA, Plaintiff has sustained an ascertainable loss of money and/or property.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor on all counts, award damages in the amount of USD $49,690,801 plus interest, costs, expenses, and legal fees, order the relief requested in Plaintiff's motion for prejudgment attachment and other prejudgment remedies sought, and grant such other further and different relief as the Court deems just and proper.

The Plaintiff,
EVERSPEED ENTERPRISES LIMITED

BY: _____
Patrick F. Lennon (CT 11950)
LENNON, MURPHY & LENNON, LLC
Tide Mill Landing
2425 Post Road
Southport, CT 06890
(203) 256-8600
(203) 256-8615 fax
pfl@lenmur.com

*Of counsel:*
Michael J. Mitchell
MICHAEL J. MITCHELL, P.C.
494 Eighth Avenue, 7th Floor
New York, New York 10001
(646) 328-0120
mimoma@rcn.com

List of Exhibits

A. Copy of LISCR documentation re: Skaarup Shipping International
B. Declaration of Keith Denholm, with exhibits.

EXHIBIT "A"



# THE REPUBLIC OF LIBERIA



# APOSTILLE

(Hague Convention of 5 October 1961/Convention de La Haye du 5 Octobre 1961)

1. Country:.                                The Republic of Liberia

**This Public Document**

2. Has been signed by:                     Krubo B. Kollie

3. Acting in the capacity of:              Minister of Foreign Affairs,
                                           Republic of Liberia

4. Bears the seal/stamp of:                Ministry of Foreign Affairs,
                                           Republic of Liberia

**Certified**

5. At:                                     Virginia, United States of America

6. On:                                     July 01, 2009

7. By:                                     E. GORALSKI
                                           Special Agent,
                                           Bureau of Maritime Affairs

8. Number:                                 V-50166

9. Seal/Stamp:

10. Signature:                             

C-59771-1514245

# REPUBLIC OF LIBERIA

Business Corporation Act 1977
The Associations Law, Title 5, as Amended, of the Liberian Code of Laws Revised

# CERTIFIED COPY
## OF
## ARTICLES OF DISSOLUTION

Filed on the 18th day of April, 2000

## OF
# SKAARUP SHIPPING INTERNATIONAL CORPORATION

### Registration Number: C-59771
### Incorporated on the 1st day of November, 1989

### Issued on the 1st day of July, 2009



The LISCR Trust Company
80 Broad Street
Monrovia
Liberia

# THE REPUBLIC OF LIBERIA
## MINISTRY OF FOREIGN AFFAIRS



# CERTIFIED COPY
BUSINESS CORPORATION ACT 1977
THE ASSOCIATIONS LAW, TITLE 5, AS AMENDED, OF THE LIBERIAN CODE OF LAWS REVISED

I HEREBY CERTIFY in accordance with Section 1.5 of the Business Corporation Act that the document attached to this Certificate is a true and complete copy of the ARTICLES OF DISSOLUTION filed on the 18th day of April, 2000 in respect of:

### SKAARUP SHIPPING INTERNATIONAL CORPORATION
### Registration Number: C-59771

a Corporation duly incorporated and which commenced legal existence as a Liberian Nonresident Domestic Corporation on the 1st day of November, 1989.

WITNESS my hand and the official seal of the Ministry of Foreign Affairs this 1st day of July, 2009.

By Order of the Minister of Foreign Affairs

Deputy Registrar of Corporations

V-1842

# ARTICLES OF DISSOLUTION
# OF

### SKAARUP SHIPPING INTERNATIONAL CORPORATION
*(A Non-Resident Domestic Corporation)*

REPUBLIC OF LIBERIA

# MINISTRY OF FOREIGN AFFAIRS

## *DUPLICATE COPY*

The Original Copy of this Document was filed in
accordance with Section 1.4 of the Business
Corporation Act on

April 18, 2000
Date

By Order of the Minister of Foreign Affairs

Deputy Registrar of Corporations
Authorized Signature

# ARTICLES OF DISSOLUTION OF

# SKAARUP SHIPPING INTERNATIONAL CORPORATION

We, the undersigned being the President and Assistant Secretary of SKAARUP SHIPPING INTERNATIONAL CORPORATION for the purpose of dissolving said corporation hereby certify:

1.    The name of the corporation is SKAARUP SHIPPING INTERNATIONAL CORPORATION

2.    The Articles of Incorporation of SKAARUP SHIPPING INTERNATIONAL CORPORATION were filed with the Minister of Foreign Affairs as of the 1st day of November 1989.

3.    The name and address of each of its officers and directors are as follows:

| | |
|---|---|
| Thomas D. Bene<br>39 Sheridan Dr.<br>New Canaan, CT 06840 | Chairman & CEO |
| Arlette W. Britton<br>630 Ponus Ridge Road<br>New Canaan, CT 06840 | Assistant Secretary |
| Frank R. Parker, III<br>276 Taconic Road<br>Greenwich, CT 06831 | Treasurer and Director |
| Ole Skaarup<br>Mead Point<br>Greenwich, CT 06830 | Director |

4.    The Corporation has elected to dissolve.

5.    The dissolution of the corporation was authorized by a vote of the holder of all outstanding shares of the corporation entitled to a vote at a meeting of shareholders. A certified copy of such resolution is annexed hereto.

# STATE OF CONNECTICUT
## OFFICE OF THE SECRETARY OF THE STATE

I, **SUSAN BYSIEWICZ**, Secretary of the State of Connecticut, and keeper of the seal thereof,

**DO HEREBY CERTIFY** that <u>GERARD J. CREAN</u>,was duly appointed and commissioned a <u>NOTARY PUBLIC</u> in and for the State of Connecticut, for the term of <u>January 1, 1997</u> to <u>December 31, 2001</u>;



and that to his/her acts and attestations as such, full faith and credit are and ought to be given in and out of Court.

**In Testimony Whereof**, I have hereunto set my hand and affixed the Great Seal of the State of Connecticut, at Hartford, on **April 11, 2000.**

Secretary of the State

ACKNOWLEDGMENT

STATE OF CONNECTICUT)
                     )         ss:
COUNTY OF FAIRFIELD  )

On this _29TH_ day of March, 2000, before me personally appeared Thomas D. Bene and
Arlette W. Britton, to me known to be the individuals described in and who executed the
foregoing instrument and duly acknowledged and verified to me that the execution thereof
was the act and deed of the corporation.

_____
Notary Public

GERARD J. CREAN
*NOTARY PUBLIC*
MY COMMISSION EXPIRES DEC. 31, 2001

Corporate Certificate of Resolutions
of
SKAARUP SHIPPING INTERNATIONAL CORPORATION

I hereby certify to the LIBERIAN INTERNATIONAL SHIP & CORPORATION REGISTRY, LLC, that I am the Assistant Secretary of SKAARUP SHIPPING INTERNATIONAL CORPORATION (the "Company"), a corporation duly organized and validly existing under the laws of the Republic of Liberia, and that the Consent of Shareholder to Dissolution of the Company, annexed hereto, is a true copy, duly adopted by the sole Shareholder of the Company as of December 23, 1999, and further that such Consent of Shareholder is in conformity with the Certificate of Incorporation and the Constitution of the Company and is in full force and effect on the date hereof and has not been modified or rescinded:

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of this Company this 23rd day of March, 2000.

Arlette W. Britton, Assistant Secretary

[SEAL]

# THE LISCR TRUST COMPANY

The LISCR Trust Company, as Registered Agent for

## SKAARUP SHIPPING INTERNATIONAL CORPORATION

hereby resigns its appointment, said resignation to become effective thirty (30) days after the date on which the attached Articles of Dissolution are filed with the Minister of Foreign Affairs, R.L., pursuant to the relevant provisions of the Business Corporation Act.

THE LISCR TRUST COMPANY

BY: _____

AUTHORIZED SIGNATURE

Dated April 18, 2000

EXHIBIT "B"

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------X

EVERSPEED ENTERPRISES LIMITED,                    :

                Plaintiff,                          :

   - against-                                     :

SKAARUP SHIPPING INTERNATIONAL CORP.,             :
SKAARUP FORTUNE SHIPPING LTD., SKAARUP
SHIPPING CORP., THOMAS BENE, OLE SKAARUP,         :    November 18, 2009
and JONATHAN ZHU,
                                                     :

                Defendants.                         :

-------------------------------------------------------------------X

### DECLARATION OF R. KEITH DENHOLM
### AS TO PROBABLE CAUSE

R. KEITH DENHOLM, pursuant to 28 USC §1746 hereby declares and says the following under pain and penalty of perjury:

      1.    I am a Director of PCL (Shipping) Pte Ltd ("PCL"), commercial manager of Plaintiff Everspeed Enterprises Limited ("Everspeed"). I am fully familiar with the facts underlying the present dispute and the instant application.

      2.    English is my native language. This declaration is made in support of Plaintiff Everspeed's Complaint and Application for Prejudgment Remedy pursuant to Connecticut General Statutes § 52-278 as against Defendants Skaarup Shipping International Corp., Skaarup Fortune Shipping Ltd., Skaarup Shipping Corp., Thomas Bene, Ole Skaarup, and Jonathan Zhu. I have assisted in the preparation of this declaration, and it is based on my personal knowledge. Where not based on my personal knowledge, it is based on business records I have reviewed.

      3.    Everspeed is a shipping company specializing in the carriage of dry bulk materials. PCL has been the commercial manager for Everspeed at all times relevant to this dispute. I have been employed by PCL since May 2000, and my responsibilities include the

negotiations of all charter parties for the vessels Everspeed operates, including the charter of the Motor Vessel BUNGA SAGA 9 by Skaarup Fortune Shipping Ltd. ("Skaarup Fortune") that is now the subject of this action.

<div align="center">THE CHARTER PARTY</div>

4.     Everspeed, the disponent owner of the M/V BUNGA SAGA 9, entered a charter with Skaarup Fortune on March 9, 2008 (following a March 7, 2008 fixture) after extensive negotiations among myself, Jonathan Zhu of Skaarup Fortune and Skaarup Shipping Corporation ("Skaarup Shipping"), and Philip Syrrist of Skaarup Shipbrokers Inc. of Greenwich, Connecticut ("Skaarup Shipbrokers"). The charter was for a minimum period of 29 months at a daily charter rate of US $56,500 per day.

5.     The charter was negotiated over a period of several days. During this time, numerous phone calls, emails, and instant messages were exchanged among Mr. Zhu, Mr. Syrrist, and me, resulting in the charter of the vessel pursuant to the terms of the fixture agreed on March 7, 2008.

6.     We had circulated the vessel as being available for cargo and for chartering through various brokers in late February and early March of 2008. We were contacted by Mr. Syrrist of Skaarup Shipbrokers who inquired about the vessel, her capabilities, and her availability on behalf of Skaarup Fortune.

7.     Skaarup Fortune was described to me by Mr. Syrrist as a joint venture of Skaarup Shipping and two other companies. Because I was personally unfamiliar with Skaarup Fortune, as neither Everspeed nor PCL had ever been commercially involved with Skaarup Fortune, and given the duration of the proposed charter, I was not willing to charter the vessel to Skaarup Fortune without sufficient assurances of financial performance in the form of a corporate guarantee from Skaarup Fortune's parent company, namely Skaarup Shipping of Greenwich,

<div align="center">2</div>

Connecticut. I notified Mr. Syrrist that Everspeed would consider chartering to Skaarup Fortune provided that Skaarup Fortune's obligations, including payment of charter hire due and owing to Everspeed pursuant to the charter, were guaranteed by Skaarup Shipping of Greenwich, Connecticut.

8.      Everspeed's requirement that Skaarup Fortune's performance be guaranteed by its parent company was raised by me on more than one occasion. This requirement was communicated by me to Mr. Syrrist: I referred to the need for a guarantor, my understanding that Skaarup in Greenwich, meaning Skaarup Shipping Corp., would be the guarantor, and my acknowledgement that Skaarup Shipping would be a satisfactory guarantor. **(See Exhibit 2, annexed hereto.)**

9.      Upon the completion of the initial negotiations, Mr. Zhu asked that we obtain approval of the proposed charter by PCL's management; he indicated via his email of March 6, 0952 GMT that he had to inform "Skaarup, Greenwich" regarding the charter. **(See Exhibit 1 annexed hereto.)** This statement confirmed to us that (1) Jonathan Zhu was not solely responsible to Skaarup Fortune; (2) that Jonathan Zhu reported to Skaarup Shipping; and (3) that Skaarup Shipping was the party in interest for securing the performance of the charter by Skaarup Fortune.

10.      Skaarup Shipping in Greenwich is well known to me because I worked as a shipbroker myself in New York and Connecticut from 1988 -- 1999. It is quite common, particularly in these turbulent economic times, that owners of ships charter their vessels only in connection with a financial guarantee from a well-regarded company. Skaarup Shipping was known to me while Skaarup Fortune was not. Skaarup Shipping has a long history; its founder, Mr. Ole Skaarup, has a long tenure in the industry and has amassed considerable holdings; to my

3

knowledge, there were at the time no Skaarup entities of any substantial size that were unrelated to Mr. Skaarup and his affiliates and certainly no such companies in Greenwich.

11.     Furthermore, at the time of these negotiations, Skaarup Shipbrokers was owned by Skaarup Shipping, so I knew that the brokers were part of the corporate structure of Skaarup Shipping and presumably had some level of access to corporate information in their role securing charters for Skaarup Shipping and its affiliates such as Skaarup Fortune. Indeed, the typical role for a broker is to represent the charterer, and that continued here where the broker (Skaarup Shipbrokers) was in fact owned by the charterer (Skaarup Shipping).

12.     In reviewing the proposed charter with my superior Mr. Kuok, on March 6, I told him that we would be receiving a guarantee from Skaarup Shipping. It was the availability and proffer of this quality of guarantee that resulted in our continuing at that point to contract with Skaarup Fortune rather than an alternate charterer that was even more financially stable than Skaarup Shipping.

13.     Later, when the charter party fixture recap distributed at 1519 GMT on March 6 failed to include the name of the guarantor, I informed the broker via instant messaging, during a conversation we began at 1507 GMT, that they "need to insert after charterer's name the gtee wording;" to be clearer, I reiterated my point:

> -- need to insert some words after chrtrs name to show who is
> guaranteeing performance
> -- Something like "guaranteed by Skaarup Shipping Inc"
> -- or whatever their full style is

Mr. Syrrist replied, "THAT WILL BE WORKED OUT." **(See Exhibit 2, annexed hereto.)**

14.     I was not certain as to what the proper legal name for Skaarup Shipping was at that time, so I could not direct the drafting more precisely. It was clear at that time that Mr. Syrrist himself did not know the proper legal name for Skaarup Shipping either: his responses

4

included references to the charter "GUARANTEED BY SKAARUP SHIPPING INTERNATIONAL" and "SKAARUP GREENWICH COMPANIES ASSISTED GUARANTEE" within minutes of each other. **(See Exhibit 2, annexed hereto.)**

15.     Following the foregoing exchanges regarding the "full style" of the guarantor, Skaarup Fortune provided a guarantee by "Skaarup Shipping International" of Greenwich, Connecticut. **(See Exhibit 4, annexed hereto.)**

16.     On March 6, 2008, Mr. Zhu, in an email to Mr. Syrrist, stated "if Keith need a guarantee from Skaarup Shipping, you can just go ahead to accept." **(See Exhibit 5, annexed hereto.)** Later in the day in an email to me, the broker Mr. Syrrist quoted Mr. Zhu's email:

> Philip, thank you very much for the recap, which is in good order in line with all the negotiations among you, Keith and I. Hopefully PCL will lift their subs as promised then I can go through formality to lift ours in time for a clean fixture. If Keith need a guarantee from Skaarup Shipping, you can just go ahead to accept.

17.     These communications from Mr. Zhu were not inconsistent with my understanding.

18.     In an instant message exchange between Messrs Zhu and Syrrist, the following exchange took place:

> Mr. Syrrist:  "Hey did you talk to Thomas or get any letter
>                regarding Skaarup INT guaranteeing performance?"
> Mr. Zhu:  "Don't worry. Remember I am VP of Skaarup, I can
>             make decision for this matter"
> Mr. Zhu:  "Please get the sub lifted"
> Mr. Zhu:  "For the guarantee wording, I can send it to you later."

**(See Exhibit 3, annexed hereto.)**

19.     In a subsequent email dated March 7, 2008, Mr. Zhu, writing directly to me, responded to my request for a written confirmation that the charterer's performance was to be

guaranteed by Skaarup Shipping International of Greenwich, Connecticut, stating:

> "also ok as I told you and Philip before."

**(See Exhibit 6, annexed hereto.)**

20.     On March 7, 2008, Mr. Zhu provided a "Letter of Guarantee" to Mr. Syrrist with a copy to Mr. Thomas Bene, for Everspeed's review and acceptance. I know Thomas Bene to be president of Skaarup Shipping. Again, nothing about this guarantee seemed unusual: it identified Thomas Bene as the President of "Skaarup Shipping International Corporation," all of which was consistent with my understanding of the general name, location, and senior management of Skaarup Shipping. In fact, it seemed to confirm that Everspeed was getting the guarantee that I had required. **(See Exhibit 4, annexed hereto.)**

21.     In reliance on said guarantee, I chartered the vessel to Skaarup Fortune Shipping. If Skaarup Shipping had not provided a guarantee, I would not have chartered the vessel to Skaarup Fortune.

22.     On March 9, 2008 Mr. Syrrist issued a clean recap in which the following term is included:

> Performance of which to be guaranteed by Skaarup Shipping International Greenwich, CT USA.

**(See Exhibit 7, annexed hereto.)**

23.     Following the wrongful cancellation of the charter by Skaarup Fortune on or about February 18, 2009, I caused an investigation to be conducted into the bona fides of Skaarup Fortune and its guarantor. The corporate registrars of all 50 United States and 22 offshore registries were searched. The only reference to "Skaarup Shipping International" was found at the Liberian International Shipping Corporate Registry (LISCR). LISCR advised that Skaarup Shipping International was formed on November 1, 1989 and was **DISSOLVED** on

April 18, 2000 following the execution of a consent to dissolve by the "sole shareholder" of the company on December 23, 1999.

24.    A copy of the certified Liberian Articles of Dissolution is attached to this Declaration as **Exhibit 8**.

25.    Skaarup Shipping International's Certificate of Dissolution includes its Articles of Dissolution, in which Defendant Thomas Bene is identified as Chairman and CEO, and Defendant Ole Skaarup as the sole Director. **(See Exhibit 8, annexed hereto.)**

26.    On March 27, 2000 Mr. Bene and Skaarup Shipping International's Assistant Secretary appeared before a Connecticut Notary Public and presented to said Notary Public an executed copy of a shareholder consent dissolving Skaarup Shipping International, and duly acknowledged and verified to said Notary Public that the execution of the corporate resolution dissolving Skaarup Shipping International was the act and deed of the corporation. **(See Exhibit 8, annexed hereto.)**

27. The Articles of Dissolution of Skaarup Shipping International state that:

4.    The Corporation has elected to dissolve.

5.    The dissolution of the corporation was authorized by a vote of the holder of all outstanding shares of the corporation entitled to vote at a meeting of the shareholders.

**(See Exhibit 8, annexed hereto.)**

28.    The Corporate Certificate of Resolution of SKAARUP SHIPPING INTERNATIONAL CORPORATION, dated March 23, 2000 and duly executed by Arlette W. Britton, Assistant Secretary, states as follows:

7

**Corporate Certificate of Resolutions**
**of**
**SKAARUP SHIPPING INTERNATIONAL CORPORATION**

I hereby certify to the LIBERIAN INTERNATIONAL SHIP & CORPORATION REGISTRY, LLC, that I am the Assistant Secretary of SKAARUP SHIPPING INTERNATIONAL CORPORATION (the "Company"), a corporation duly organized and validly existing under the laws of the Republic of Liberia, and that the Consent of Shareholder to Dissolution of the Company, annexed hereto, is a true copy, duly adopted by the sole Shareholder of the Company as of December 23, 1999, and further that such Consent of Shareholder is in conformity with the Certificate of Incorporation and the Constitution of the Company and is in full force and effect on the date hereof and has not been modified or rescinded:

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of this Company this 29th day of March, 2000.

_____
Arlette W. Britton, Assistant Secretary

**(See Exhibit 8, annexed hereto.)**

29.     This Company, Skaaarup Shipping International Corp., named by Mr. Zhu, Mr. Bene, Skaarup Fortune, and Skaarup Shipping to provide the guarantee upon which Everspeed relied, does not exist, did not exist at the time of the charter, and had not existed for nearly eight years before the negotiation of the guarantee.

8

I declare under the pains and penalties of perjury under the laws of the United States of America that the foregoing declaration is true and correct.

Dated:      Singapore
            November 17, 2009                    _R. K. Denholm_

                                                R. Keith Denholm

## LIST OF EXHIBITS

1. March 6, 2008 (0952 GMT), email from Jonathan Zhu;
2. IM chat log, March 6, 2008, between Philip Syrrist & Keith Denholm;
3. IM chat log, March 6, 2008, between Philip Syrrist & Jonathan Zhu;
4. Letter of Guarantee;
5. March 7, 2008 (0502 GMT), email from Jonathan Zhu to Philip Syrrist;
6. March 7, 2008 (0514 GMT), email from Jonathan Zhu in response to email from Keith Denholm;
7. Fixture Recap, pp 1-2; and
8. Copy of certified Liberian Articles of Dissolution of Skaarup Shipping International.

# EXHIBIT "1"



"Jonathan"
<Jonathan@skaarupfortune.c
om>

06/03/2008 17:52

To  <keith@pacificcarriers.com.sg>

cc  <philip@skaarupbrokers.com>

bcc

Subject  答复: 答复: 答复: 答复: Bunga Saga 9

Skaarup Fortune Shipping Limited
Tel: +86-21-6888-3880 (switch board), 6888 2668 (direct line);  Fax: +86-21-6888-7818
Email: chartering@skaarupfortune.com and jonathan@skaarupfortune.com (private)

March 6, 2008

Keith,

CC: Philip

As per our telecon, we have decided to take your good vessel, the Bunga Saga 9
basically as per your proposal.

While for you to insert the a salt and one sulphur per annum, can you please also
consider giving us some flexibility for the redelivery window, saying Nov. 30, 2010/Jan.
31, 2011?

Meantime, for formality, I need Charterers management approval by 10 PM tonight - as
mentioned, I need to inform Skaarup, Greenwich for the sake of good order.

Awaiting for yours.

Thanks and B. Regards,

Jonathan Zhu
(Mobile in China: 1381 789 3099)

-----原始邮件-----
发件人: keith@pacificcarriers.com.sg [mailto:keith@pacificcarriers.com.sg]
发送时间: 2008年3月6日 15:59
收件人: Jonathan
抄送: Phillip Syrrist
主题: Re: 答复: 答复: 答复: Bunga Saga 9

EXHIBIT "2"

Message Printed    on 3/6/2008 11:07:18 PM  by PTS      RefNum:PTS4301258
From/To: BOC
Subject: BUNGA SAGA FILL

FROM: Skaarup Shipbrokers / USA
TEL: 1 203 4877000
DATE: 3/6/2008 11:07:30 PM
REF : PTS4301258


FOR MY/PHILIP FILE...........

PCL-KEITH says:
morally i am with you on this but gerald has his girlfriend in china
shipping pushing
PCL-KEITH says:
just spoke with jonathan
philip@skaarupbrokers.com says:
SORRY MATE, SHE WAS A BIT LATE......
philip@skaarupbrokers.com says:
OUR WORD IS STILL OUR BOND IN CERTAIN SECTORS......AND FRANKLY IF U
WANT TO GET INTO THE  UNKOWN SIDE OF CHINA PCL DOESNT KNOW.....
PCL-KEITH says:
they now 58,000 less 3.75%
philip@skaarupbrokers.com says:
WELL, JONATHAN WILL "GIVE" YOU MORE THAN CHINA SHIPPING EVER WILL
PCL-KEITH says:
1.2 million ?
philip@skaarupbrokers.com says:
DOES G.T. WANT TO RE-FIX WITH DREYFUS NOPAC RV TDY ??? BID AT 70K
PCL-KEITH says:
basically 1,400 pd diff between the two of them
PCL-KEITH says:
swissmarine bid upper 70's on linda leah
philip@skaarupbrokers.com says:
ITS 1.368.750 BY HE WAY
PCL-KEITH says:
so even more he needs to give me !
philip@skaarupbrokers.com says:
I REMEMBER G.T SAY "AS A GESTURE" I WILL GIVE HIM AND AGREE TO 56.500
philip@skaarupbrokers.com says:
ACTUALY ITS PRETTY SIMPEL.....
philip@skaarupbrokers.com says:
EITHER WE PLAY IT STRAIGHT AS WE USED TO AND SHOULD DO,
philip@skaarupbrokers.com says:
OR WE DONT,
PCL-KEITH says:
we will be playing it straight - i already told GT that
philip@skaarupbrokers.com says:
EXCEPT WITH (ALL DUE RESPECT) TO KOREANS,WHAT GOES AROUND DOES COME
AROUND.....
PCL-KEITH says:
but they better agree to the amended recap and the cp and lift their
subs promptly - also need to insert after charterers name the gtee
wording
PCL-KEITH says:
i am fully aware of that and i do not want pcl to suffer for an MBC
fixture
philip@skaarupbrokers.com says:
AMENDED RECAP U MEAN DEL?
PCL-KEITH says:
so hopefully jonathan will recognise this one day
PCL-KEITH says:
yes
philip@skaarupbrokers.com says:
AND SULPHUR CL...
PCL-KEITH says:
and the sulphur protection that was already agreed yday
philip@skaarupbrokers.com says:
HE HAS A LONG MEMORY......ASK HIM ABT ARMADA

Message Continuas...

philip@skaarupbrokers.com says:
IS HE AWARE ABT THE CHANGES?
PCL-KEITH says:
need to insert some words after chrtrs name to show who is
guaranteeing performance
philip@skaarupbrokers.com says:
THAT WILL BE WORKED OUT
PCL-KEITH says:
something like "guaranteed by Skaarup Shipping Inc"
PCL-KEITH says:
or whatever their full style is
philip@skaarupbrokers.com says:
....SEE CLAUSE "XYZ" ....WHICH TO BE GUARANTEED BY SKAARUP SHIPPING
INTERNATIONAL.......MAINSTREET USA
philip@skaarupbrokers.com says:

PCL-KEITH says:
ok
PCL-KEITH says:
holding off  ing the following but i have it in draft format
PCL-KEITH says:
Dear Jonathan

It was a pleasure to talk with you again this morning.

I am pleased to inform you that Owners have lifted their BOD approval
to proceed with this fixture. As you know, we were being pressed by
China Shipping for the vessel late last night at 58,000 less 3.75%
commission otherwise similar deal to what we have with you. However
tempting this may be for us, we must stay on the moral h
philip@skaarupbrokers.com says:
JONATHAN TELLING ME MSN HE IS SENDING U UPDATED BACKGROUND......
PCL-KEITH says:
we must stay on the moral high ground and respect our negotiations of
yesterday with you. Hopefully this will be the start of a long and
healthy relationship with Skaarup Fortune and we look forward to
hearing your news on Charterers subjects and charter party comments if
any.

All the best
Keith Denholm
Director

philip@skaarupbrokers.com says:
I WOULD ADD.....
philip@skaarupbrokers.com says:
AND IN DUE COURSE WE AWAY SKAARUP GREENWICH COMPANIES ASSISTED
GUARANTEE,WITH ALL DUE RESPECT....OR SIMILAR
philip@skaarupbrokers.com says:
OK?
philip@skaarupbrokers.com says:
JONATHAN SAYS HE SEND U LATEST SKAARUP FORTUNE UPDATE...DID U GET IT?
philip@skaarupbrokers.com says:
ON YR PRIVATE
PCL-KEITH says:
got it
PCL-KEITH says:
i sent u an email just now
PCL-KEITH says:
Philip / Keith

Please can I urgently have the following

a)    Charterers agreement to amend delivery to Singapore - Japan range
b)    Amended recap including sulphur protection clause which has already
been agreed
c)    Charterers written confirmation that charterers performance to be
guaranteed by Skaarup Shipping International, Greenwich Connecticut

Many thanks
Keith
philip@skaarupbrokers.com says:

Message Continues...

# EXHIBIT "3"

Message Printed   on 3/6/2008 11:08:04 PM  by PTS      RefNum: PTS4341261
From/To: BGT
Contact: BUNGA SAGA 9

FROM: Skaarup Shipbrokers / USA
TEL: 1 203 4877000
DATE: 3/6/2008 11:08:51 PM
REF : PTS4301262


for my.philip file


bunga saga 9


philip@skaarupbrokers.com says:
U THERE?
JONATHAN/FORTUNE says:
Yes, I called him and will send him our updated background
philip@skaarupbrokers.com says:
CHINA SHIPPING NOW BIDDING THEM USD 58.000 WITH 3.75 TTL ,.,,,,,,,
JONATHAN/FORTUNE says:
one moment
philip@skaarupbrokers.com says:
OK....
JONATHAN/FORTUNE says:
I have just sent him our background - please check with him for his
safe receipt.
JONATHAN/FORTUNE says:
For China Shipping's bidding, he told me on the phone
philip@skaarupbrokers.com says:
58K LESS 3.75- I AM TELLING KEITH AND CO TO STICK TO THEIR WORD....
philip@skaarupbrokers.com says:
DID U SEND TO HIS PRIVATE EMAIL OR REGULAR PMX
JONATHAN/FORTUNE says:
Yes, he promised the same
JONATHAN/FORTUNE says:
private
philip@skaarupbrokers.com says:
OK
philip@skaarupbrokers.com says:
HEY
JONATHAN/FORTUNE says:
he send you a e-mail with copy to me. I will reply directly with a
copy to you
JONATHAN/FORTUNE says:
to save time
philip@skaarupbrokers.com says:
THANKS AND THE PROBLEM KEITH HAS IS THAT MBC (MALAYSIAN BULK CARRIERS)
JONATHAN/FORTUNE says:
ok
philip@skaarupbrokers.com says:
IS A PUBLIC COMPANY AND THERE ARE VERY VERY DIFFERENT RULES OF DOING
BEST POSSIBLE BUSINESS
JONATHAN/FORTUNE says:
understand
philip@skaarupbrokers.com says:
HEY, DID U TALK TO THOMAS OR GET ANY LETTER REGARDING SKAARUP INT.
GUARANTEEING PERFOMANCE?
philip@skaarupbrokers.com says:
-KEEP THIS LINE OPEN PLS...
JONATHAN/FORTUNE says:
don't worry. remember I am VP of Skaarup, I can make decision for this
matter
philip@skaarupbrokers.com says:
OKIEDOKIE......
JONATHAN/FORTUNE says:
Please get the sub lifted
philip@skaarupbrokers.com says:

                                        Message Continues...

--------------------------------------------------------------------

I USED TO BE VP OF SKAARUP.....
JONATHAN/FORTUNE says:
for the guarantee wording, I can send it to you later
JONATHAN/FORTUNE says:
I know. If you come back, I can give this postion back to you
philip@skaarupbrokers.com says:
GET CRACKING.....
JONATHAN/FORTUNE says:
haha
philip@skaarupbrokers.com says:
HEY
philip@skaarupbrokers.com says:
DID U JUST GET AN EMAIL FROM KEITH ??
JONATHAN/FORTUNE says:
hi, the sub lifted. I am sending him a reply
philip@skaarupbrokers.com says:
PLS DO
JONATHAN/FORTUNE says:
ok, will copy to you
philip@skaarupbrokers.com says:
PLS DO
JONATHAN/FORTUNE says:
ok
philip@skaarupbrokers.com says:
KEITH WAITING FOR YR EMAIL
philip@skaarupbrokers.com says:
HE HAS TO RUN TO THE EMBASSY
JONATHAN/FORTUNE says:
sent to him already
philip@skaarupbrokers.com says:
TKS
philip@skaarupbrokers.com says:
U THERE?
JONATHAN/FORTUNE says:
yes, can you please send me the revised recap?
philip@skaarupbrokers.com says:
IN THE MEANTIME....CH.SHIPPING RAISED THEIR BID P AND C TO 58500-LESS
3.75 WITH SUBS ONE HOUR............
philip@skaarupbrokers.com says:
WILL DO
JONATHAN/FORTUNE says:
ok, thank you
philip@skaarupbrokers.com says:
call me pls
JONATHAN/FORTUNE says:
ok


---------------- End of Message ----------------

# EXHIBIT "4"

Letter of Guarantee

Date: March      ,  2008

To:
Everspeed Enterprises Limited
C/O PCL (Shipping) Pte. Ltd.
No. 1 Kim Sen Promenade
Great World City #07-02
Singapore 237994

Re:   <u>MV Bunga Saga 9/Skaarup Fortune,  CP DD</u>

Dear Sirs,

In consideration of your agreeing to enter into a time charter party in respect of the above vessel with Skaarup Fortune Shipping Ltd. hereinafter referred to as "the Charterers", and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, we, the undersigned as primary obligor and not as mere surety, hereby unconditionally and irrevocably guarantee to you the full, timely and faithful performance and discharge by the Charterers of all of its obligations and responsibilities of whatsoever nature under the Charter Party and any addendum, amendment or modification made or in the future to be made thereto and should any breach thereof by the Charterers occur, we undertake to indemnify you upon demand for all losses, expenses and liabilities of whatsoever nature which you may suffer or incur by reason of such breach. Our obligation hereunder shall not be affected by any insolvency, amalgamation, reconstruction, change or name, ownership, control or status of any legal limitation relating to, by or of the Charterers of a receiver, administrative receiver, administrator liquidator or similar officer of the Charterers.

We hereby unconditionally affirm, consent to, and waive any entitlement which we may have to receive notice of any and all addenda amendments or modifications which may be made here after to the Charter Party.  We further agree that you shall be at liberty to make proceedings against us without first exercising any rights which you may have against the Charterers or us.

This letter of guarantee and all rights and obligations arising hereunder shall be governed by and construed and take effect according to English laws.  We agree and undertake that all claims or disputes arising out of or connected with this guarantee and indemnity shall be subject to the exclusive jurisdiction of the high court of justice in Singapore.  We also agree and undertake we shall appoint solicitors in London to receive and accept service on our behalf of any proceedings or other documents to be served on us in relation to this guarantee and indemnity within ten days of receipt of

notice from you so to appoint, such notice to be addressed to us at the above address by fax, telex or letter.

This letter of guarantee shall become effect of the date here of.

For and on behalf of
Skaarup Shipping International Corporation


Name :   Thomas Bene
Title :   President

# EXHIBIT "5"



&lt;chartering@skaarupbrokers.
com&gt;

07/03/2008 00:02

Please respond to
&lt;chartering@skaarupbrokers.c
om&gt;

To  &lt;chartering@skaarupbrokers.com&gt;

cc

bcc

Subject  BUNGA SAGA 9

FROM: Skaarup Shipbrokers / USA
TEL: 1 203 4877000
DATE: 3/6/2008 11:02:11 AM
REF : PTS4299923

KEITH / PHILIP

FROM JONATHAN

Subject: : BUNGA SAG 9 / SKAARUP FORTUNE

Skaarup Fortune Shipping Limited

Philip,

Thank you very much for the recap, which is in good order in line with
all the negotiations among you, Keith and I.

Hopefully, PCL will lift their subs as promised, then I can go through
formality to lift ours in time for a clean fixture. If Keith need a
guarantee from Skaarup Shipping, you can just go ahead to accept.

By the way, I will be in the office later tomorrow. Please call me
when you get Owners subs.

Thanks and B. Regards,

Jonathan Zhu
(Mobile in China: 1381 789 3099)

Regards

Philip Syrrist
Skaarup Shipbrokers USA
Phone 203-487.7000
Mobile 203-918.6467/BlackBerry "philip@skaarupbrokers.com"

EXHIBIT "6"

Message Printed   on 3/8/2008 10:16:36 PM   by PTS   RefNum:PTS4391194
From/To: Jonathan@skaarupfortune.com
Subject:

: Bunga Saga 9
Skaarup Fortune Shipping Limited ========================================
Tel: +86-21-6888-3883 (switch board), 6888 2668 (direct line);   Fax: +86-21-6888-7818
Email: chartering@skaarupfortune.com and jonathan@skaarupfortune.com (private)


March 7, 2008


Keith,

Well note yours and would like to reply as below:

a) no problem for me to amend the same;
b) ok
c) Also ok as I told you and Philip before.

Awaiting for yours.


Thanks and B. Regards,

Jonathan Zhu
(Mobile in China: 1381 789 3099)

-----



-----
: keith [mailto:keith@pacificcarriers.com.sg]
: 2008
3
7
 11:12
: Jonathan
·: chartering@skaaruobrokers.com
: Bunga Saga 9


Philip / Keith

Please can I urgently have the following

a]       Charterers agreement to amend delivery to Singapore - Japan range
b]       Amended recap including sulphur protection clause which has already been agreed
c]       Charterers written confirmation that charterers performance to be guaranteed by Skaarup
Shipping International, Greenwich Connecticut

Many thanks
Keith


        --------------- End of Message ---------------

# EXHIBIT "7"



<chartering@skaarupbrokers.
com>
10/03/2008 11:52
Please respond to
<chartering@skaarupbrokers.c
om>

To  <chartering@skaarupbrokers.com>

cc

bcc

Subject  BUNGA SAGA 9- RECAP

FROM: Skaarup Shipbrokers / USA
TEL: 1 203 4877000
DATE: 3/9/2008 11:52:09 PM
REF : PTS4305104



17 MAR 2008

TO JONATHAN ZHU-SKAARUP FORTUNE-SHANGHAI
AND
TO PCL KEITH DENHOLM
                AND THE COMMECIAL TEAM      PCL SINGAPORE


-BUNGA SAGA 9 / SKAARUP FORTUNE


AS PER AUTHORITIES GIVEN WE ARE PLEASED TO ISSUE THE FOLLOWING
FIXTURE RECAP WHICH 1S CONFIDENTIAL

CP DATED MAR 9 2008



Disponent
Owners            Everspeed Enterprises Limited
C/O PCL (Shipping) Pte Ltd
                  No.1 Kim Seng Promenade
                  Great World City #07-02
                  Singapore 237994

                  Tel:  +65 6733 3500 (Switchboard)
                  Fax:  +65 6839 6084
                  Comtext: A91RS792
                  Telex RS 23245
                  Panamax@pacificcarriers.com.sg (panamax chartering)
                        Ops@pacificcarriers.com.sg (Operations)
                        Postfix@pacificcarriers.com.sg  (Postfixture)
                        Website: www.pclsg.com


                  Commercial Director:    Keith Denholm
                  Direct Office           65 - 6839 6015
                  Mobile (24 hrs)         65 - 90299922
                  Email:                  Keith@pacificcarriers.com.sg

```
              Operations Manager      David Coleman
              Direct Office           65- 6839 6047
              Mobile                  65 - 90690398
              Email:
Davidcoleman@pacificcarriers.com.sg


Charterers:
              Skaarup Fortune Shipping Ltd.
              906 Zhongrong Plaza
              1088 Pudong Rd
              Pudong, Shanghai, China, 200120
              Tel:+86 21 6888 3880
              Email: jonathan@skaarupfortune.com
                     chartering@skaarupfortune.com


              Performance of which to be guaranteed by
              Skaarup Shipping International
              Greenwich Ct Usa

Vessel:
Bunga Saga 9
Flag:                 Malaysia
Built:                Hyundai Heavy Industries, South Korea July 1999
Call Sign             9MEB4
IMO Number            9171266
Class Det Norske Veritas +1A1, Bulk Carrier ESP, ES(S), HC/E Holds
2,4,6 empty, EO,IB(+),LCS(S), Grain-U  DNV Number 20263
Type  SD ST Gearless Bulk Carrier
Summer Dwt / Draft      73,127 mt on 13.769 mtrs
Winter Dwt / Draft      71,193 mt on 13.483 mtrs
Tropical Dwt / Draft    75,074 mt on 14.055 mtrs
Fresh Dwt / Draft 73,137 mt on 14.079 mtrs
TPC                   67.82
GRT / NRT            38,972 / 24,407
Suez GRT / NRT       40,843.21 / 36,852.25
Panama NRT           32,230.00
LOA                  224.97 mtrs
Beam                 32.29 mtrs
LT Ship              10,877 mts
Holds                 Seven
1)    11,371.10 cbm
2)    12,659.20
3)    12,673.50
4)    12,028.40
5)    12,681.30
6)    12,652.20
7)    11,944.20
Grain Capacity    86,009.90 cbm
Hatches               Seven Side rolling hatch covers
                      No.1      15.12 mtrs x 12.00 mtrs
                      Nos 2-7)  15.12 mtrs x 15.00 mtrs
Inmarsat B            Telex      353 359 213
Telephone    353 359 210/211
Facsimile    353 359 212
Data         353 359 214
Inmarsat C   453 344 210
MMSI:        533 592 000
P & I  Club       The London Steamship Owners Mutual Insurance
Association
```

# EXHIBIT "8"



# THE REPUBLIC OF LIBERIA



# APOSTILLE

(Hague Convention of 5 October 1961/Convention de La Haye du 5 Octobre 1961)

1. Country:                           The Republic of Liberia

**This Public Document**

2. Has been signed by:            Krubo B. Kollie

3. Acting in the capacity of:     Minister of Foreign Affairs,
                                  Republic of Liberia

4. Bears the seal/stamp of:       Ministry of Foreign Affairs,
                                  Republic of Liberia

**Certified**

5. At:                            Virginia, United States of America

6. On:                            July 01, 2009

7. By:                            E. GORALSKI
                                  Special Agent,
                                  Bureau of Maritime Affairs

8. Number:                        V-50166

9. Seal/Stamp:

10. Signature:



C-59771-1514245

# REPUBLIC OF LIBERIA

Business Corporation Act 1977
The Associations Law, Title 5, as Amended, of the Liberian Code of Laws Revised

# CERTIFIED COPY
## OF
## ARTICLES OF DISSOLUTION

Filed on the 18th day of April, 2000

## OF

## SKAARUP SHIPPING INTERNATIONAL CORPORATION

**Registration Number: C-59771**
**Incorporated on the 1st day of November, 1989**

**Issued on the 1st day of July, 2009**



The LISCR Trust Company
80 Broad Street
Monrovia
Liberia

# THE REPUBLIC OF LIBERIA
## MINISTRY OF FOREIGN AFFAIRS



# CERTIFIED COPY
### BUSINESS CORPORATION ACT 1977
THE ASSOCIATIONS LAW, TITLE 5, AS AMENDED, OF THE LIBERIAN CODE OF LAWS REVISED

I HEREBY CERTIFY in accordance with Section 1.5 of the Business Corporation Act that the document attached to this Certificate is a true and complete copy of the ARTICLES OF DISSOLUTION filed on the 18th day of April, 2000 in respect of:

### SKAARUP SHIPPING INTERNATIONAL CORPORATION
### Registration Number: C-59771

a Corporation duly incorporated and which commenced legal existence as a Liberian Nonresident Domestic Corporation on the 1st day of November, 1989.

WITNESS my hand and the official seal of the Ministry of Foreign Affairs this 1st day of July, 2009.

By Order of the Minister of Foreign Affairs

Deputy Registrar of Corporations

V-1842

# ARTICLES OF DISSOLUTION
# OF

## SKAARUP SHIPPING INTERNATIONAL CORPORATION
*(A Non-Resident Domestic Corporation)*

REPUBLIC OF LIBERIA

## MINISTRY OF FOREIGN AFFAIRS

## *DUPLICATE COPY*

The Original Copy of this Document was filed in

accordance with Section 1.4 of the Business

Corporation Act on

April 18, 2000
—————————————————
Date

—————————————————
By Order of the Minister of Foreign Affairs

—————————————————
Deputy Registrar of Corporations
Authorized Signature

# ARTICLES OF DISSOLUTION OF

# SKAARUP SHIPPING INTERNATIONAL CORPORATION

We, the undersigned being the President and Assistant Secretary of SKAARUP SHIPPING INTERNATIONAL CORPORATION for the purpose of dissolving said corporation hereby certify:

1.      The name of the corporation is SKAARUP SHIPPING INTERNATIONAL CORPORATION

2.      The Articles of Incorporation of SKAARUP SHIPPING INTERNATIONAL CORPORATION were filed with the Minister of Foreign Affairs as of the 1st day of November 1989.

3.      The name and address of each of its officers and directors are as follows:

Thomas D. Bene                     Chairman & CEO
39 Sheridan Dr.
New Canaan, CT  06840

Arlette W. Britton                    Assistant Secretary
630 Ponus Ridge Road
New Canaan, CT  06840

Frank R. Parker, III                 Treasurer and Director
276 Taconic Road
Greenwich, CT  06831

Ole Skaarup                          Director
Mead Point
Greenwich, CT  06830

4.      The Corporation has elected to dissolve.

5.      The dissolution of the corporation was authorized by a vote of the holder of all outstanding shares of the corporation entitled to a vote at a meeting of shareholders.  A certified copy of such resolution is annexed hereto.

## STATE OF CONNECTICUT
## OFFICE OF THE SECRETARY OF THE STATE

I, **SUSAN BYSIEWICZ**, Secretary of the State of Connecticut, and keeper of the seal thereof,

**DO HEREBY CERTIFY** that GERARD J. CREAN, was duly appointed and commissioned a NOTARY PUBLIC in and for the State of Connecticut, for the term of January 1, 1997 to December 31, 2001;



and that to his/her acts and attestations as such, full faith and credit are and ought to be given in and out of Court.

**In Testimony Whereof,** I have hereunto set my hand and affixed the Great Seal of the State of Connecticut, at Hartford, on **April 11, 2000.**

Secretary of the State

ACKNOWLEDGMENT

STATE OF CONNECTICUT)
                    )    ss:
COUNTY OF FAIRFIELD )

On this *19TH* day of March, 2000, before me personally appeared Thomas D. Bene and Arlette W. Britton, to me known to be the individuals described in and who executed the foregoing instrument and duly acknowledged and verified to me that the execution thereof was the act and deed of the corporation.

Notary Public

GERARD J. CREAN
*NOTARY PUBLIC*
MY COMMISSION EXPIRES DEC. 31, 2001

**Corporate Certificate of Resolutions**
**of**
**SKAARUP SHIPPING INTERNATIONAL CORPORATION**

I hereby certify to the LIBERIAN INTERNATIONAL SHIP & CORPORATION REGISTRY, LLC, that I am the Assistant Secretary of SKAARUP SHIPPING INTERNATIONAL CORPORATION (the "Company"), a corporation duly organized and validly existing under the laws of the Republic of Liberia, and that the Consent of Shareholder to Dissolution of the Company, annexed hereto, is a true copy, duly adopted by the sole Shareholder of the Company as of December 23, 1999, and further that such Consent of Shareholder is in conformity with the Certificate of Incorporation and the Constitution of the Company and is in full force and effect on the date hereof and has not been modified or rescinded:

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of this Company this 23rd day of March, 2000.

_Arlette W. Britton_
Arlette W. Britton, Assistant Secretary

[SEAL]

## THE LISCR TRUST COMPANY

The LISCR Trust Company, as Registered Agent for

## SKAARUP SHIPPING INTERNATIONAL CORPORATION

hereby resigns its appointment, said resignation to become effective thirty (30) days after the date on which the attached Articles of Dissolution are filed with the Minister of Foreign Affairs, R.L., pursuant to the relevant provisions of the Business Corporation Act.

THE LISCR TRUST COMPANY

BY: _____

AUTHORIZED SIGNATURE

Dated April 18, 2000