**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
-------------------------------------------------------------------X

EVERSPEED ENTERPRISES LIMITED,                          09-CV-0187 (SRU)

                              Plaintiff,

        -against-

SKAARUP SHIPPING INTERNATIONAL CORP.,                   **DECLARATION OF**
SKAARUP SHIPPING CORP.,                                 **MICHAEL J. MITCHELL**
SKAARUP FORTUNE SHIPPING LTD.;                          **IN OPPOSITION TO**
THOMAS BENE; OLE SKAARUP; and                           **MOTION TO DISMISS**
JONATHAN ZHU,

                              Defendants.
-------------------------------------------------------------------X

MICHAEL J. MITCHELL, hereby declares:

        1.      I am an attorney duly admitted to practice in the State of New York and represent

Plaintiff EVERSPEED ENTERPRISES LIMITED in the captioned matter. I am fully familiar

with the facts and circumstances attendant to this action.

        2.      I make this declaration in Opposition to Defendants' Motion to Dismiss the

Complaint. The Court is respectfully referred to the declaration of Mr. Keith Denholm

("Denholm Decl.") dated November 18, 2009, submitted with Plaintiff's Motion For

Prejudgment Remedy, for a full recitation of the relevant facts.

        3.      Plaintiff EVERSPEED ENTERPRISES LIMITED, ("Everspeed") is a foreign

company duly organized under the laws of the British Virgin Islands. At all material times, it was

the disponent owner of the Motor Vessel BUNGA SAGA 9. Pursuant to a charter party contract

dated March 9, 2008, Everspeed chartered the BUNGA SAGA 9 to Defendant Skaarup Fortune

Shipping Ltd. ("Skaarup Fortune") for a minimum period of 29 months.

        4.      During the negotiations for the charter, Defendant Skaarup Fortune was

represented by Defendant Jonathan Zhu ("Zhu") of Skaarup Shipping Corp. ("Skaarup

Shipping"), and Everspeed was represented by Mr. Keith Denholm ("Denholm"). Non-party Skaarup Shipbrokers Inc. acted as broker for the transaction, having been appointed by Skaarup Fortune. Mr. Phillip Syrrist acted for Skaarup Shipbrokers. (Denholm Decl. ¶ 4.)

5.      As detailed in Mr. Denholm's Declaration, Plaintiff Everspeed required that Skaarup Fortune's performance under the charter be guaranteed by Skaarup Shipping as a condition of contracting with Skaarup Fortune. (Denholm Decl. ¶ 7-8.) Mr. Zhu, who was at the pertinent time a Vice-President of Skaarup Shipping (see Skaarup Group Website, cached version, Ex. 1), agreed to provide a guarantee as is reflected in the Fixture Recap appended to the Denholm Declaration as Exhibit 7.

6.      Defendant Skaarup Fortune wrongfully terminated the charter on January 23, 2009, causing Plaintiff to incur damages in the approximate amount of $49,000,000. Complaint ¶ 96.

7.      On February 13, 2009, Everspeed filed a Complaint against Skaarup Fortune and Skaarup Shipping International Corp. ("SSI") in the U.S. District Court for the Southern District of New York, 09 CIV 1319 (LBS) (the "SDNY Rule B Action") seeking Process of Maritime Attachment and Garnishment ("PMAG") in the amount of $49,690,801 for damages arising from Skaarup Fortune's wrongful termination of the charter. On February 17, 2009, the Honorable Leonard Sand granted the request for a PMAG.

8.      On February 20, 2009, garnishee bank JP Morgan Chase notified me through their counsel that they had restrained $894,050.00 in funds belonging to Skaarup Fortune. I instructed the bank to continue to restrain said funds because they fell within the ambit of the Rule B Writ of Attachment.

9.      On February 24, 2009, I notified Skaarup Fortune and SSI of the Rule B Writ and of the attachment of Skaarup Fortune's funds.

10.     On March 16, 2009, I received a phone call from Mr. J. Lincoln Hallowell, who advised that he was a Connecticut attorney representing the guarantor SSI. Mr. Hallowell <u>did not</u> reveal that he was also the Corporate Secretary of Defendant SSI and of Defendant Skaarup Shipping. Mr. Hallowell inquired as to the existence of a guarantee. I requested that Mr. Hallowell provide me with a letter of representation and provide certain information regarding his client SSI including their financial bona fides and their corporate status. Mr. Hallowell asked me to put my request in writing, which I did and sent to him by email that day. As can be seen from said Exhibit, I requested that Mr. Hallowell provide the following information regarding his client SSI:

    a.   SSI's Articles of Incorporation;

    b.   Identity and addresses of SSI shareholders;

    c.   Identity and addresses of SSI board members;

    d.   Identity of officers, directors, senior management and employees;

    e.   minutes of SSI board meeting for the past 5 years;

    f.   Any and all correspondence, minutes, notes, letters, memoranda, email, faxes, instant messages or any document of any kind concerning the subject charter and guarantee;

    g.   SSI's tax returns for the past 5 years;

    h.   SSI's office lease for the past 3 years.

I also requested that SSI preserve and maintain any and all records concerning the subject charter and guarantee. Later in the evening I added one additional request, namely for a financial statement for SSI for the previous 5 years. (Ex. 2.)

11.     Mr. Hallowell responded by email on Tuesday, March 17, 2009. He advised that he represented SSI for the "limited purposes of ascertaining whether SSI has been properly named as a party to the Rule B action in New York." He asked for a copy of the guarantee and

the arbitration agreement between SSI and Everspeed. Once again, he did not reveal that he was also acting as Corporate Secretary for Defendant SSI or Defendant Skaarup Shipping. (See Ex. 2.)

12.     That same day I requested that Mr. Hallowell advise whether his client was contending that the performance guarantee was not valid and the basis for that belief. I also reiterated my request for the corporate information concerning Defendant SSI's bona fides. I explained to Mr. Hallowell that I was not going to participate in unilateral discovery but would provide the information he requested as soon as he provided the information concerning SSI that I had requested. (See Ex. 2.)

13.     On March 18, 2009 Mr. Hallowell responded by email stating that he was trying to avoid "getting into an unnecessary exchange of documents and interrogatories." Mr. Hallowell did not answer my request for information regarding SSI including their corporate status. (See Ex. 2.) So far as I recall, I have had no further contact with Mr. Hallowell since his email of March 18, 2009.

14.     Thereafter, on April 19, 2009, for reasons unrelated to my correspondence with Mr. Hallowell, Plaintiff Everspeed voluntarily dismissed SSI and Skaarup Shipping from the SDNY Rule B Action.

15.     In July 2009, I requested Everspeed to verify SSI's place of incorporation. Mr. Denholm sent an email to Phillip Syrrist of Skaarup Shipbrokers. On August 25, 2009, Mr. Syrrist stated in writing that Defendant SSI was incorporated in Monrovia, Liberia. (Ex. 3.)

16.     Skaarup Shipbrokers at present are not a party to this action. According to the website maintained by Defendant Skaarup Shipping, Skaarup Shipbrokers is a member of the "Skaarup Group," and Defendant Ole Skaarup serves as its Chairman. On information and belief, Skaarup Shipbrokers was sold in January 2009 and now is known as "ICAP Shipbrokers Inc."

However, at the time the BUNGA SAGA 9 charter party negotiations were taking place, Skaarup Shipbrokers was a Skaarup Group company, as identified on Skaarup Shipping's website (Ex. 4.)

17.    Everspeed retained the services of a prominent maritime investigation entity to verify the status of SSI. More than seventy-seven jurisdictions were searched, including each of the 50 United States and 22 well known and frequently used offshore jurisdictions. The only reference to SSI was found in the Liberian Corporate Registry, which reported that SSI had been dissolved in April 2000.

18.    Based on Mr. Hallowell's refusal to identify the corporate status of SSI, and further based on the marine investigator's reports, the Liberian Corporate Registrar's Certificate of Dissolution, and Mr. Syrrist's statement that the guarantor SSI was a Liberian company, we considered that the SSI entity upon whose behalf Mr. Zhu negotiated the charter party guarantee was a Liberian entity that had been dissolved some eight years prior to Mr. Zhu having agreed on its behalf to act as guarantor of the performance of Skaarup Fortune under the charter party.

19.    In Defendants' Motion to Dismiss, Mr. Hallowell alleges that an entity known as SSI does exist and is domiciled in Vanuatu.  This information contradicts the statement made by Skaarup Shipbrokers Mr. Syrrist, the broker that put the charter party and guarantee together, who prior to the date Everspeed filed the instant action had identified the guarantor SSI as being a Liberian company.

20.    On December 17, 2009, my co-counsel Patrick Lennon and I called Defendants' counsel Mr. Friedman and requested that he identify which of the SSI entities was in fact the guarantor of Skaarup Fortune. Mr. Friedman has not answered that question. On December 23, 2009, co-counsel Patrick Lennon sent a letter to counsel for the Connecticut Defendants and to counsel for Skaarup Fortune and Jonathan Zhu requesting that they identify which of the SSI

entities (Liberia or Vanuatu) was proffered by Mr. Zhu as Skaarup Fortune's guarantor during the charter party negotiations. (Ex. 5.)

21.     As of today's date, we have not had any formal response from counsel to these inquiries, although we have had further informal discussions with counsel on the topic.

22.     On receipt of Defendant's Motion to Dismiss, I investigated whether it is possible to obtain Vanuatu corporate records of the sort which Mr. Hallowell has thus far refused to provide. I was advised that the Vanuatu Corporate Registrar will not provide any information other than the name of a foreign entity's registered agent and the agent's address, absent consent of the entity or a Vanuatu court order. This restriction is described in the Vanuatu Corporate Registrar's webpage, a relevant portion of which is attached hereto as Ex. 6.

23.     Everspeed is unable to verify the information submitted by Mr. Hallowell in his capacity as Corporate Secretary for both Skaarup Shipping and Skaarup Shipping International. Mr. Hallowell still has not responded to my request for information made 10 months ago. Nor has SSI's counsel in this action formally responded to the written request made three weeks ago to identify which of the entities named "Skaarup Shipping International Corp." was the alleged guarantor of Skaarup Fortune. Yet, Defendants request that this Court take judicial notice of unverifiable information from an ultra-secretive foreign offshore registry, which information is in any event non-determinative of the issues raised by Defendants in the Motion to Dismiss, namely the domicile of a company with the same name as that which has been identified as the guarantor of Skaarup Fortune.

_____

MICHAEL J. MITCHELL

Dated: January 14, 2010

# EXHIBIT 1



Home                                                    ABOUT US    >>    Executives

- Who We Are
- Divisions
- Press Releases
- Executives
- Careers

- About Us Home



### Ole Skaarup
**Chairman**

An industry-recognized expert as well as an innovator of the modern dry bulk carrier, Ole Skaarup established Skaarup Shipping Corporation in 1951, following several years of commercial shipping employment in New York. In 1954, he conceived, designed and contracted for the construction of the first ocean-going bulk carrier, which became the prototype for today's bulkers. Later, he designed the gravity-type self-unloading bulk carrier, an important innovation in ocean shipping and core strength of Skaarup's business. His creativity, experience, vision and expertise provide a source of sustainable growth for the Skaarup Group, its partners and clients alike. Born and educated in Denmark, he served in the United States Army from 1941 to 1946 as an officer in the Transportation Corps where he gained extensive experience in ocean transportation. Responding to the OPA 90, he has been a key participant in studies of technological advances of oil tanker design aimed at the protection of the marine environment, as well as in the work of the U.S. National Academy of Sciences, and the International Maritime Organization (IMO). Ole Skaarup has been chairman of Lloyd's American Committee, a Board Member of West of England P & I Club, and a member of the Executive Committee of the Federation of American Controlled Shipping (FACS). He was awarded an Honorary Doctorate of Science degree at the Webb Institute of Naval Architecture in recognition of his efforts to reform the maritime policies of the United States, and to assist in a revival of the U.S. shipbuilding industry. In 1998 he was inducted into the Maritime Hall of Fame of the United Nations.

----------------------------------------------------------------



### Frank Parker
**Chief Executive Officer**

With more than 30 years of industrial experience, Frank brings unique values and strategic visions to Skaarup's dynamic growth. Joining the Skaarup Group in 1985 as Vice President of Finance, he helped initiate and develop partnerships with major investors, achieving satisfactory results in asset and risk management as well as financial performance. His strong engineering and technical strengths give him great insights in achieving our high quality ship-operations, maintenance, and efficiencies at Skaarup. His finance expertise adds value to our partners and clients alike. He received a Bachelor of Science in Mechanical

Engineering in 1969 from Stevens Institute of Technology in New Jersey, and he worked in the power generating business until 1985. Thereafter, he joined the Skaarup Group with an MBA in Finance.

--------------------------------------------------------------



### Thomas Bene
**President**

Thomas Bene started in the shipping business in Hamburg, Germany followed by a year in London, UK. He joined the Skaarup Group in 1960. He became President of Skaarup Chartering in 1979 and President of Skaarup Shipping in 1990. These positions cover activities in brokerage, sale and purchase, chartering, ship management and the commercial development of the company's owned and chartered tonnage. His rich expertise, insightful views, hands-on experience, and extensive customer base, all add invaluable assets to Skaarup and its clients.

--------------------------------------------------------------

### Jonathan C. Zhu
**Vice President**

Jonathan C. Zhu joined The Skaarup Group in it's Greenwich headquarters in June 2007. He initially joined Skaarup in July 2005 in the newly formed joint venture company, Skaarup Fortune Shipping Limited located in Shanghai, China. Skaarup Fortune Shipping is jointly owned by Skaarup Shipping International Corporation, Fortune Ocean Shipping and Welton Hazz Maritime Ltd. Skaarup Fortune Shipping specializes in ship management and operations in mainland China. Jonathan received his Bachelor of Science degree from Dalian Maritime University, and began his shipping career in 1985 at the well known Chinese shipping company, COSCO, in Dalian. In 1989 he came to the United States to further his education receiving his Masters degree in Engineering from City University of New York. In 1994 he joined Seagos Company in Stamford, Connecticut as a Marine Coordinator and Shipbroker responsible for tanker, LPG and bulk carrier chartering, sales and purchase, newbuildings and ship financing. Jonathan C. Zhu is Vice President of Skaarup Shipping Corporation. His versatile experience and extensive knowledge in the international shipping industry is a valued addition to The Skaarup Group, especially in his unique role of bridging the span between the Eastern and Western markets.

--------------------------------------------------------------

Return to Top

--------------------------------------------------------------

Home | Site Map | Desktop Wallpaper | Contact Us     Copyright © Skaarup Shipping Corporation

Small Business Web Hosting

Web Development

- About Us
- Services
- Partnerships
- Legendary Design
- Press Releases
- Contact Us

# EXHIBIT 2

**Michael Mitchell**

| | |
|---|---|
| From: | Linc Hallowell [lhallowell@fahwlaw.com] |
| Sent: | Wednesday, March 18, 2009 2:23 PM |
| To: | Michael Mitchell |
| Subject: | RE: Everspeed v Skaarup SDNY 09 cv 1319 |

Dear Mr. Mitchell:

Thank you for getting back to me so quickly.

My purpose in requesting threshold documents is simply to avoid getting into an unnecessary exchange of documents and interrogatories.

I have reviewed the subject Charter Party, and indeed it provides for Singapore arbitration under English Law for disputes arising between your client and Skaarup Fortune Shipping Ltd. The document makes no reference whatsoever to my client or a purported Guarantee.

If you have a signed Guarantee, it would spare both of our clients needless expense in litigating the existence or nonexistence of it.

Again, I appreciate your attention to this matter.

**Sincerely,**

**J. Lincoln Hallowell**
**Ferguson, Aufsesser, Hallowell & Wrynn, LLP**
**66 Field Point Road**
**Greenwich, CT 06830**
**(203) 661-5222 x17**
**(203) 661-1197 (fax)**
jlhallowell@fahwlaw.com

This electronic message from the law firm of FERGUSON, AUFSESSER, HALLOWELL & WRYNN, LLP may be a confidential attorney-client communication or may be privileged or otherwise protected from disclosure. The content is intended for the addressee only. If you are not the addressee, please note that any disclosure, copy, distribution or use of the content of this message (including any attachments) is strictly prohibited. If you suspect that you have received this electronic message in error, please notify the sender immediately by telephone or e-mail and immediately destroy this message and all of its attachments. Although this email and any attachments are believed to be free of any VIRUS or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and Ferguson, Aufsesser, Hallowell & Wrynn, LLP, accepts no responsibility for any loss or damage.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. Federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Michael Mitchell [mailto:mimoma@rcn.com]
**Sent:** Tuesday, March 17, 2009 3:47 PM
**To:** Linc Hallowell
**Subject:** RE: Everspeed v Skaarup SDNY 09 cv 1319

Dear Mr. Hallowell,

Thank you for your response.

My limited brief is to secure my client's claims for damages arising out of Skaarup Fortune Shipping Ltd.'s wrongful termination of the BUNGA SAGA 9 charter, as detailed in the Verified Complaint.
The underlying claims regarding performance of the charter are governed by the dispute resolution clause of the charter party, which provides for the application of English law and arbitration in Singapore. Please advise whether your client contends that the performance guarantee is not valid and the basis for that belief.

I would be happy to exchange documentation with you but am unwilling to engage in unilateral discovery, which I am sure you will understand. Please forward the information I have requested concerning Skaarup Shipping International's bona fides and I shall forward the information you requested concerning the guarantee.

Kind regards,

Mike Mitchell


MICHAEL J. MITCHELL  PC

494 Eighth Avenue
Seventh Floor
New York, New York  10001

Office    646 224 0270
Fax       646 328 0121
Mobile   917 328 0673

_____

Notice: This message and any attached file(s) is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email and delete all copies of the original message. Thank you.

---

**From:** Linc Hallowell [mailto:lhallowell@fahwlaw.com]
**Sent:** Tuesday, March 17, 2009 11:20 AM
**To:** Michael Mitchell
**Subject:** RE: Everspeed v Skaarup SDNY 09 cv 1319

Dear Mr. Mitchell:

I am in receipt of your request for information concerning Skaarup Shipping International Corp. ("SSI").

Please note that I represent SSI for the limited purpose of ascertaining whether SSI has been properly named as a party to the Rule B Proceeding of Everspeed v. Skaarup pending in the USDC for the Southern District of New York.

Accordingly, could you please provide me with a copy of the Guarantee purportedly executed by SSI in support of the obligations of Skaarup Fortune Shipping Ltd. arising out of the "BUNGA SAGA 9" time charter.

I also note that your Verified Complaint (Paragraphs 8 and 12) refers to the parties having agreed to submit any disputes to arbitration under English Law in Singapore. Could you also provide whatever documentation you have which indicates that SSI has agreed to the submission of disputes to arbitration.

I very much appreciate your getting back to me on this.

**Sincerely,**

**J. Lincoln Hallowell**
**Ferguson, Aufsesser, Hallowell & Wrynn, LLP**
**66 Field Point Road**
**Greenwich, CT 06830**
**(203) 661-5222 x17**
**(203) 661-1197 (fax)**
jlhallowell@fahwlaw.com

This electronic message from the law firm of FERGUSON, AUFSESSER, HALLOWELL & WRYNN, LLP may be a confidential attorney-client communication or may be privileged or otherwise protected from disclosure. The content is intended for the addressee only. If you are not the addressee, please note that any disclosure, copy, distribution or use of the content of this message (including any attachments) is strictly prohibited. If you suspect that you have received this electronic message in error, please notify the sender immediately by telephone or e-mail and immediately destroy this message and all of its attachments. Although this email and any attachments are believed to be free of any VIRUS or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and Ferguson, Aufsesser, Hallowell & Wrynn, LLP, accepts no responsibility for any loss or damage.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. Federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Michael Mitchell [mailto:mimoma@rcn.com]
**Sent:** Monday, March 16, 2009 7:11 PM
**To:** Linc Hallowell
**Subject:** RE: Everspeed v Skaarup SDNY 09 cv 1319

PS—Please also provide a financial statement for SSI for the past five years through this date.
Thank you,
Mike Mitchell

**From:** Michael Mitchell [mailto:mimoma@rcn.com]
**Sent:** Monday, March 16, 2009 7:05 PM
**To:** 'jlhallowell@fahwlaw.com'
**Subject:** Everspeed v Skaarup SDNY 09 cv 1319

Dear Mr. Hallowell,

I refer to our conversation earlier this afternoon wrt the captioned matter.

I understand you represent Skaarup Shipping International Corp.("SSI").

Kindly provide me with a letter of representation.

I would be grateful to receive the following information:

1.  SSI's Articles of Incorporation;
2.  Identity and addresses of SSI shareholders;
3.  Identity and addresses of SSI board members;
4.  Identity of officers, directors, senior management and employees;
5.  Minutes of SSI board meetings for past five years;
6.  Any and all correspondence, minutes, notes, letters, memoranda, email, faxes, instant messages or other document of any kind concerning the subject charter and guarantee;
7.  SSI's Tax returns for past five years;
8.  SSI's office lease for past three years.

I request that SSI maintain and do not destroy any and all records concerning the subject charter and guarantee.

I look forward to your reply.

Kind regards,

Mike Mitchell

MICHAEL J. MITCHELL  PC

494 Eighth Avenue
Seventh Floor
New York, New York   10001

Office   646 224 0270
Fax      646 328 0121
Mobile  917 328 0673

---

Notice: This message and any attached file(s) is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email and delete all copies of the original message. Thank you.

# EXHIBIT 3

**Michael Mitchell**

| | |
|---|---|
| **From:** | keith@pacificcarriers.com.sg |
| **Sent:** | Tuesday, August 25, 2009 8:36 AM |
| **To:** | Mike Mitchell |
| **Subject:** | Fw: |

```
----- Original Message -----
From: "Philip Syrrist" [philip.syrrist@us.icapshipping.com]
Sent: 25/08/2009 12:13 GMT
To: Robert Keith
Subject: Re:
```

Today
```
------Original Message------
From: Keith Denholm
To: psyrrist@att.blackberry.net
ReplyTo: Keith Denholm
Sent: Aug 25, 2009 7:50 AM
Subject:
```

Hi Philip

Any joy??

cheers

```
----- Forwarded by keith/Chartering/PCL on 25-08-09 07:49 PM -----
```

 keith/Chartering/PCL
06-08-09 06:05 PM

To "Phillip Syrrist" <philip@skaarupbrokers.com>

cc

Subject

Many thanks for your email. Can you give me Skaarup Shipping International's full style then please

Cheers

philip.syrrist@us.icapshipping.com

1

**Michael Mitchell**

| | |
|---|---|
| **From:** | Michael Mitchell [mimoma@rcn.com] |
| **Sent:** | Sunday, January 10, 2010 5:49 PM |
| **To:** | 'Rick Colosimo'; 'Patrick F. Lennon' |
| **Subject:** | FW: S S I C |

-----Original Message-----
From: keith@pacificcarriers.com.sg [mailto:keith@pacificcarriers.com.sg]
Sent: Tuesday, August 25, 2009 2:52 PM
To: Mike Mitchell
Subject: Fw: S S I C


----- Original Message -----
From:  [philip.syrrist@us.icapshipping.com]
Sent: 25/08/2009 14:47 AST
To: Robert Keith
Subject: S S I C




FROM: Icap Shipping USA
TEL: 1 203 4877000
DATE: 8/25/2009 2:47:04 PM
REF : PTS7607460



KEITH / PTS


SKAARUP SHIPPING INTERNATIONAL  OF MONRROVIA LIBERIA



Regards

Philip Syrrist

ICAP SHIPPING USA
phone 203-487.7000
mobile203-918.6467

1

# EXHIBIT 4



**Home**

ABOUT US    >>    Press Releases

- Who We Are
- Divisions
- Press Releases
- Executives
- Careers

- About Us Home

### New Company to be Named Skaarup Shipbrokers

#### October 1, 2003

Skaarup Chartering Corporation of Greenwich, CT and Bulk Ocean Chartering of Stamford, CT, merge their respective ship and cargo brokerage operations into a newly formed company named Skaarup Shipbrokers, Inc. Mr. Skaarup will serve as Chairman Emeritus of the new company.

"We are pleased to bring together two staffs of great experience and professionalism into one global company that can equal more than the sum of its parts," said Mr. Skaarup. "We are confident this new venture will be able to offer clients unmatched service, value and market knowledge."

The new company will be located at 850 Canal Street in Stamford. Mr. Skaarup, who will maintain an office at the new facility, is joined at the merged company by Bob Del Vecchio, Gary Smith, John Keeshan, David Wold, and Timm Lange from Skaarup Chartering, as well as Philip Syrrist, George Kulagus, Theo Junkins, and Niall O'Connor from Bulk Ocean Chartering.

Return to Top

---

Home | Site Map | Desktop Wallpaper | Contact Us     Copyright © Skaarup Shipping Corporation

Small Business Web Hosting                      Web Development



- About Us
- Services
- Partnerships
- Legendary Design
- Press Releases
- Contact Us

 **The Skaarup Group**

Home

- Who We Are
- Divisions
- Press Releases
- Executives
- Careers

- About Us Home

ABOUT US    >>    Divisions



The viability of the Skaarup Group derives from the full transportation services offered by its member companies. Over the past 50 years, these member companies have made The Skaarup Group a "dry bulk maritime boutique", offering ship brokerage,

ship management, joint ship-owning, financing, naval architecture and marine engineering, design and commissioning of new vessels and cargo handling facilities.

Today, the Skaarup Group comprises of:

- Skaarup Shipping Corporation
- Skaarup Shipbrokers Inc.
- Skaarup Management (Hong Kong) Co.
- Total Transportation, LLC
- Skaarup Shipping International Corporation
- Seaways Leasing Company

Return to Top

Home | Site Map | Desktop Wallpaper | Contact Us    Copyright © Skaarup Shipping Corporation

Small Business Web Hosting    Web Development

About Us
Services
Partnerships
Legendary Design
Press Releases
Contact Us

# EXHIBIT 5

Lennon,
Murphy &
Lennon, LLC

ATTORNEYS AT LAW

The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
phone (212) 490-6050
fax (212) 490-6070

www.lenmur.com

Tide Mill Landing
2425 Post Rd., Suite 302
Southport, CT 06890
phone (203) 256-8600
fax (203) 256-8615

mail@lenmur.com

December 23, 2009

*Via Email: rfriedman@sheppardmullin.com*
Robert S. Friedman, Esq.
Sheppard Mullin
30 Rockefeller Plaza
24th Floor
New York, New York 10112

*Via Email: epost@kellydrye.com*
Eric B. Post, Esq.
Kelly, Drye & Warren, LLP
101 Park Avenue
New York, NY 10178-0002

Re:    **Everspeed Enterprises Ltd. v. Skaarup Shipping International Corp., et al**
       USDC, Dist. of CT – Docket No. 09 Civ. 1878 (SRU)
       LML ref: 1888

Dear Sirs,

As you are aware, together with Michael Mitchell, Esq., we represent the Plaintiff, Everspeed International Ltd. in the referenced action.

We refer to Mr. Friedman's letter of December 8, 2009 and our subsequent several telephone conversations with each of you.  On behalf of his clients, Skaarup Shipping Corp., Ole Skaarup, Thomas Bene and Skaarup Shipping International Corp. of Vanuatu ("SSI – Vanuatu"), Mr. Friedman in his letter questioned the validity of Plaintiff's allegations, as set forth in Plaintiff's Verified Complaint, that frauds were committed on the Plaintiff by certain of the defendants due to the fact that the alleged charter party guarantor, "Skaarup Shipping International Corp." had been dissolved at the time of the negotiations between Plaintiff and defendants Skaarup Fortune and Mr. Jonathan Zou.  The premise of Mr. Friedman's letter was that, in fact, Skaarup Shipping International Corp. does exist, having been incorporated in the country of Vanuatu in or about 1999.

In response to Mr. Friedman's letter, we consulted with Plaintiff and contacted Mr. Friedman, and Mr. Post in his capacity as counsel for defendants Jonathan Zou and Skaarup Fortune, in an effort to clarify the factual basis for Plaintiff's allegations.  During those conversations, we explained to you both that the broker, Phillip Syrrist, who

Patrick F. Lennon  |  Charles E. Murphy  |  Kevin J. Lennon  |  Nancy R. Siegel  |  Anne C. LeVasseur  |  Coleen A. McEvoy

negotiated the charter party and guarantee, confirmed to Plaintiff's representatives that the purported guarantor of the charter party was, in fact, Skaarup Shipping International Corp. of Monrovia, Liberia ("SSI – Liberia"). We also asked Mr. Friedman to provide further documentation concerning SSI – Vanuatu, e.g. corporate shareholding, officers, directors, etc. In addition, we asked Mr. Post to advise whether his client, Jonathan Zou. was able to confirm whether during the charter party/guarantee negotiations he was referring to SSI – Liberia or SSI – Vanuatu, or whether he did not know to which entity he was referring. To date, we have received no reply or further information from either of you.

In light of the foregoing, and as we explained during our telephone conversations, given that Plaintiff's information and due diligence confirmed that SSI – Liberia was the purported guarantor of the charter party, Plaintiff stands by the allegations set forth in the Verified Complaint. The mere fact that there are two entities, SSI - Liberia and SSI – Vanuatu, neither of which your clients are willing or able to confirm was the purported guarantor, does not defeat the factual predicate for Plaintiff's claims.

Plaintiff will submit its opposition papers to the motion to dismiss filed by Mr. Friedman's clients. In the meantime, please let us know if you wish to discuss this matter further, or to provide any of the documentation or information we have requested.

Very truly yours,

Patrick F. Lennon

PFL/bhs

cc:    ***Via Email: mimoa@rcn.com***
       Michael Mitchell, Esq.

# EXHIBIT 6

Home ⋮ Functions ⋮ Insurance ⋮ Offshore ⋮ Applications ⋮ News ⋮ Contact Us

| Search |



**Review of Offshore Sector**

- ⌂ Home
- About Us
- Forming a Company
- Business Name
- CTSP Directory
- Insolvency Cases
- Approved Auditors
- Struck off Companies
- History of Vanuatu
- Key Indicators
- Review of Offshore Sector
- Insurance
- Law Library
- Forms Library
- Fees Schedule
- New Developments
- News
- Regulated Entities
- Useful Links
- Jobs Opportunities

**Link to old website**

VANUATU
**Fri, Jan 15, 2010 at 7:28:08 AM**
NEW YORK
**Thu, Jan 14, 2010 at 3:28:08 PM**
LONDON
**Thu, Jan 14, 2010 at 8:28:08 PM**
TOKYO
**Fri, Jan 15, 2010 at 5:28:07 AM**
SYDNEY
**Fri, Jan 15, 2010 at 7:28:08 AM**



# *"Overview of the Financial Sector and DNFBP"*

1. The finance sector in Vanuatu, consisting of banks and insurance providers, contribute about 7% to Vanuatu's GDP. In 2004, this represented a growth of 9.3% over the previous year.

2. The financial sector in Vanuatu consists of the Reserve Bank of Vanuatu (RBV), banks (both domestic and off-shore), credit unions, money exchanges and remitters and insurance companies.

3. The banking sector is relatively small, consisting of five domestic banks and seven off-shore banks all of which are regulated by the RBV. Greater regulation of the off-shore banks, conducted by the RBV enforcing local physical presence, led to a dramatic drop in the number of off-shore banks operating in Vanuatu.

4. Insurance companies are regulated by the Vanuatu Financial Services Commission (VFSC) and money exchanges and remitters are regulated by the Ministry of Finance through the Customs and Revenue Department.

5. Remittance businesses in Vanuatu are limited to a Western Union franchise operated by the Vanuatu Post Office and a Moneygram operator. The remittance sector in Vanuatu is relatively small, servicing mainly the tourist industry.

6. The designated non-financial businesses and professions (DNFBPs) that operate in Vanuatu consist of trust companies and service providers (TCSPs), law firms, accountants, gaming agencies, real estate agents and car dealers. These entities are all defined as financial institutions under recent amendments to the *Financial Transactions Reporting Act* (FTRA) and therefore fall within the AML/CFT regime in Vanuatu.

*Casinos*

7. One casino currently operates in Vanuatu, although there are a number of applications for licenses currently under consideration. Licenses for casinos are issued by the Department of Customs and Revenue. Foreign applicants for a casino license must first receive a clearance from the Vanuatu Investment Promotion Authority (VIPA) which will determine if the applicant is of a good character and that there is a viable business plan. Casinos are subject to the FTRA and therefore subject to supervision by the VFIU.

*Shipping Register*



**Port-Vila**

Users Online: 1

Crude Oil Price



Mortgage Rate Watch - Detailed

| Mortgage & CMT Rates | | | |
|---|---|---|---|
| **NEW-NYC Portal-** | | | |
| **NYNyx.com** | | | |
| This Week | Trend | Last Week | Last Month |
| **Mortgage Rates** | | | |
| **30 Year Fixed** | | | |
| 5.09% | ⬆ | 5.14% | 4.81% |
| **15 Year Fixed** | | | |
| 4.50% | ⬆ | 4.54% | 4.32% |
| **5/1 ARM** | | | |
| 4.44% | | 4.44% | 4.26% |
| **1 Year ARM** | | | |
| 4.31% | ⬆ | 4.33% | 4.24% |
| **Constant Maturity Treasury Rates** | | | |
| **CMT 10 Year** | | | |
| 3.8% | ⬆ | 3.85% | 3.61% |
| **CMT 7 Year** | | | |
| 3.28% | ⬆ | 3.33% | 3.09% |
| **CMT 5 Year** | | | |
| 2.55% | ⬆ | 2.6% | 2.35% |
| **CMT 1 Year** | | | |
| 0.37% | ⬆ | 0.4% | 0.38% |
| Prime Rate: 3.25% More... | | | |
| Fed Funds Rate: 0.05% More... | | | |
| Discount Rate: 0.5% More... | | | |
| Feedback | © MarketWatch101 | | |

8.   The shipping law is modeled on that of Liberia and non statutory US maritime law applies. Special surveys are required to register ships that are more than 20 years old. There are no obligations to employ Vanuatu citizens as crew or officers although the Vanuatu Maritime College produces qualified seafarers. There are regional offices in New York, London, Athens, Singapore, Hong Kong and Yokohama which may effect registration. All of the major international conventions apply. Ships registered in Vanuatu are usually owned by Vanuatu companies. On registration, a fee is payable which is at a reducing graduated rate based on net tonnage. The annual tonnage tax is on a reducing scale from 0.25 to 0. 10 per tonne. There is no stamp duty bills of sale. There is no requirement for a shipping company to submit audited accounts. There is an emergency flag transfer procedure which may be invoked even where the transfer does not have the approval of the existing flag state. Charges registered under the Maritime Act need not also be registered under the Companies Act.

*Company and Trust Service Providers (CTSP)*

9.   Vanuatu has Eleven Trust Service Providers operating in Port Vila. These are licensed as companies through the Registrar of Companies within the VFSC and are also subject to their obligations under parts 2 and 3 of the FTRA. Company Service Providers will be licensed under the new CTSP Act.

*Lawyers*

10.   Lawyers in Vanuatu must register with the Law Council in order to practice. Registration requires that an applicant:

(a) holds a law degree or similar qualification from a University or such other appropriate institution recognised by the law Council; and

(b)    (i) is a Ni-Vanuatu citizen who is admitted as a barrister and/or solicitor in a Commonwealth jurisdiction; or

(ii) not being a Ni-Vanuatu citizen admitted in a Commonwealth jurisdiction, has at least two years post supervised practical, legal experience acceptable to the Law Council;

(c) is resident in Vanuatu.

11.   Lawyers were brought under the FTRA through amendments introduced in 2000 but only to the extent that the lawyer ?receives funds in the course of his or her business for the purpose of deposit or investment, or settling real estate transactions (whether or not the funds are deposited into a separate trust account)?. The 2006 amendments expanded the scope of activities that would subject lawyers to the requirements of the FTRA.

*Accountants*

12.   Accountants, like lawyers, were bought under the FTRA under amendments introduced in 2000 but only to the extent that the accountant ?receives funds in the course of his or her business for the purposes of deposit or investment (whether or not the funds are deposited into a separate trust account)?. This scope was widened by the introduction of amendments in 2006.

*Non-Profit Organisations (NPOs)*

13.   NPOs in Vanuatu are governed by the *Charitable Organizations Act*.   AML/CFT legislation is found in the *Proceeds of Crime Act*, the *Financial Transactions Reporting Act*, the *Counter Terrorism and Transnational Crime Act*, and the *Criminal Procedure Code*.   This legislation does not specifically address NPOs, however there is no indication that an NPO is in any way exempt from any of the asset freezing or seizing measures contained in the legislation.?

d.   **Overview of commercial laws and mechanisms governing legal persons and arrangements**





14. Legal persons in Vanuatu are created through the following legislation:

     a. *Companies Act [CAP 191]*

     b. *International Companies Act [No. 32 of 1992]*

     c. *Charitable Associations Act;*

     d. *Business Names Act;*



Vanuatu company law was previously only found in the Companies Act (Cap 191). This Act is based on the UK Companies Act 1948 as altered and extended by the UK Companies Act 1967. Thus, in addition to having the usual limited liability company, it is also possible to have a company limited by guarantee and an unlimited company.

Companies set up under this Act to do offshore work are known as exempted companies, with local companies undertaking domestic work. An exempted company is one whose business is carried on outside Vanuatu although, provided there is no trading within Vanuatu, this can include matters directed from Vanuatu. Local companies are permitted to carry on business in Vanuatu and are required to make full returns, although their accounts need not be audited if their annual turnover is less than approximately US$200,000.

Companies are also divided between public and private (i.e. where there are 50 members or less and the transfer of shares is restricted). If the company is to be a local company details of the beneficial ownership of the company must be given. Details of the beneficial ownership of exempted companies are not disclosed.



The International Companies Act (1992) provides a type of company called an international company. Both local and exempted companies can be converted into an international company. The following information applies to the International Companies Act, unless otherwise indicated.

**(i) Formation**

It is possible to reserve names, but names may not be used where they inappropriately suggest a financial institution or a connection with an official government department or are similar to or the same as an existing company.

One copy of the proposed constitution must be submitted to the Financial Services Commission. Separate articles are not necessary. The company can have the ? Limited? or an abbreviation thereof in any language. There need only be one incorporator under the constitution who need not be a shareholder. The government fee of US$150 is paid on formation and the annual government fee of US$300 is payable on 30 June each year (reduced to US$150 if the company was not in existence the previous 31 December).

**(ii) Pre-incorporation contracts**

Pre-incorporation contracts may be ratified by an international company upon incorporation.

**(iii) Share capital**

Complete flexibility with shares which may take any form or as an alternative there need not be a share capital. A company may purchase its own shares and may also cancel them, so long as at least one shareholder remains who is not the company itself.

**(iv) Members**

A minimum of one member is required, and he/she/it may be of any nationality.

**(v) Officers**

The company may choose whether or not to have officers other than one director, who may be a corporation, and can be resident anywhere.

**(vi) Registered agent**

There must be a registered agent in Vanuatu. The statutory books (Minute Book, Register of Officers and Register of Charges) can be kept anywhere in the world, but the Vanuatu Financial Services Commissioner ("the Commissioner") may direct that they be brought to Vanuatu. The register of members must be maintained in Vanuatu.

**(vii) Meetings**

It is not necessary to have a physical annual general meeting. The directors can meet by any means anywhere in the world.

**(viii) Accounts and annual returns**

The accounts may be kept anywhere in the world, but must be brought to Vanuatu if the Commissioner directs. There is no annual return. An annual certificate is required certifying:

   (i) there has been no public subscription for shares in the company;

   (ii) the company books and records have been properly maintained; and

   (iii) the company has not carried on any business in Vanuatu, except as permitted by the Act.

**(ix) Confidentiality for international (and exempted) companies**

The confidentiality of international (and exempted) companies is provided for in two ways:

   (i) by keeping all statutory records confidential and protected by the law; and

   (ii) by allowing trials relating to them to be held in camera with no public record.

In certain circumstances, information about the Vanuatu Companies can be shared with authorities in other countries.

**(x) Distribution of assets and dissolution**

A company may at any time pay dividends out of capital or gift assets to third parties, so long as the company remains solvent.

**(xi) Re-domiciliation**

Vanuatu companies may re-domicile to another jurisdiction. It is also possible, where the current law governing the company does not preclude it, for a non Vanuatu company to re-domicile to Vanuatu. The shareholders must agree and the creditors must not be prejudiced. An approval for re-domiciliation is good for three years.

Local and International insurance companies including Captive, Intermediaries, Managers and Reinsurers may be set up under the Insurance Act 2005 & Insurance

Regulations 2006 and the Protected Cell Company Act 2005.

Applications are dealt with by the Commissioner. Evidence of beneficial ownership, financial standing, experience of the managers and a business plan must be submitted.

Link to Insurance



English law of general applicability that applied as of 30 July 1980, including legislation based on the UK Perpetuities and Accumulations Act 1964, is applicable. One possible disadvantage is that the rule against accumulations beyond 21 years may cause problems for some long–term discretionary settlements. The perpetuity period is lives in being and 21 years or 80 years.

Trusts are not publicly registered although there is a stamp duty payable on the instrument constituting them. The stamp duty relates to the value of the property put into the settlement by instrument (0.5 per cent subject to a minimum of Vt7,500).



New legislation has yet to be passed to provide measures for: (a) the exclusion of foreign forced heirship; (b) asset protection; (c) recognition of the proper law of trust and the abolition of the rules against perpetuities and accumulations. Investor protection: setting up banks and investment vehicles.



It is technically possible to have an exempted company registered as a bank under the international Banking Act, in which case full disclosure requirements apply. The International Banking Act was effective from 1 January 2003 and the information that follows reflects the new provisions.

An international bank must only undertake offshore work. However it may do business in Vanuatu either with other exempted banks or in a manner that is incidental to offshore business. An international bank is free from many of the conditions that normally apply to onshore banks. The principal attributes are:

(i)   shareholder's interests of not less than US$500,000;

(ii)  full disclosure of beneficial owners and key management;

(iii) no more than 20 per cent change of ownership without government approval;

(iv)  bank and other references required;

(v)   licences non–transferable;

(vi)  only banking activities allowed;

(vii) quarterly returns to be filed with the Banking Supervisor;

(viii) annual audited accounts to be filed;

(ix)  the chief executive officer must be approved by the Banking Commissioner,

(x)   bank must comply with international capital adequacy guidelines;

(xi)  accounts need not be published;

(xii) profits are exempt from taxes;

(xiii) all transactions are exempt from exchange controls by statute;

(xiv) suspicious transaction reporting is mandatory;

(xv) bank must have physical premises and one or more full time Vanuatu resident employees who are knowledgeable about the day to day running of the bank.

(xvi) periodic inspection by the Reserve Bank of Vanuatu.

An international bank must use the word ?bank? or an equivalent to indicate its activities. Whilst the above relaxed requirements apply where a recognised international financial institution is to be the beneficial owner of the offshore bank, higher criteria are applied where the owner cannot be so described.

In such a case a higher paid up capital may be required and in addition references will be required as well as evidence that the bank will be run by competent persons of probity who are suitably experienced in the running of such institutions. In order to evaluate this information full details of the intended activities of the bank are required, including a business plan.

There has been a policy of not granting licences to banks that intend to provide chequing facilities for members of the public. There are currently approximately seven licensed International banks.



Except where an exempted company is trustee for only one particular trust, professional trust business, including acting as an executor and administrator of estates, comes under the Trust Companies Act (Cap 69). Trust companies must be licensed and must have a sufficient paid up capital (US$125,000 if incorporated in Vanuatu, otherwise US$500,000). In addition, full details of those running the company and of the beneficial owners must be with suitable references. The trustee must have the minimum paid up capital.



Legislation (the Prevention of Fraud (Investment) Act (Cap 70)) exists for dealers in securities.

Separate pieces of legislation have also been introduced to establish mutual funds (Mutual funds Act No. 38 of 2005) and the creation of unit trusts (Unit Trust Act No. 36 of 2005).

Fund managers must be resident in Vanuatu.



This Act provides for the licensing of Mutual Funds and mutual fund administrators. A mutual fund is an investment scheme that allows investors to pool their funds. The investors can receive profits from acquiring, managing and selling property and other investments. A mutual fund may be a company, a unit trust or a partnership. Mutual funds are an accepted form of investment in many jurisdictions. The Act protects investors by allowing only licensed mutual funds to operate, and by requiring administrators of mutual funds to be licensed. The Bill permits the licensing of foreign mutual funds (operating within Vanuatu but established outside Vanuatu) and general mutual funds.

The Vanuatu Financial Services Commission administers the licensing regime. The Act gives the Commission powers to effectively supervise the operation of mutual funds.

This Act provides for the registration of Unit Trusts and the licensing of unit trust managers. A unit trust is an investment scheme established under a trust deed that allows investors to buy units in the trust. The units entitle the unitholders to participate in the income, profits and gains arising out of the acquisition, holding, management or disposal of all kinds of property. The property is held on behalf of the unitholders by a trust company. Unitholders can redeem their units by selling them back to the trust. Unit trusts are an accepted form of investment in many jurisdictions. The Act protects investors by allowing only registered unit trusts to operate, and by requiring managers of unit trusts to be licensed. The Vanuatu Financial Services Commission administers the registration and licensing regime and the Act gives the Commission powers to effectively supervise the operation of unit trusts



There is no exchange control.



Vanuatu has extensive legislative mechanisms dealing with money laundering. They operate on two levels:

- Prevention: The Financial Transactions Reporting Act 2000 sets out mandatory suspicious transaction reporting requirements which are enforced by Vanuatu's Financial Intelligence Unit. At a transactional level, all local banks have extensive "know your customer" protocols. It is on the strength of this framework that Vanuatu has remained off the Financial Action Task Force blacklist; and

- Criminalisation: Money laundering is a criminal offence under the Proceeds of Crime Act 2002. The terms "property" and "proceeds of crime" are defined broadly to encompass property of any type that directly or indirectly represents the proceeds of crime. Powers of confiscation, freezing and forfeiture are all available under the Act. Vanuatu has established a Transnational Crime Unit dedicated entirely to the investigation of money laundering and terrorist financing.



**(a) Direct taxation**

Vanuatu has no income tax, capital gains tax, tax on wealth, estate duty or inheritance tax. An international company is granted by statute a 20 year exemption from taxation on the condition that it remains solvent.

As Vanuatu does not have income tax, there are no double taxation agreements.

**(b) Indirect taxation**

The following domestic taxes exist:

- Import and export duties;

- Harbour and airport dues;

| >> Offshore << |
| --- |
| Overview of OFC |
| Overview of DNFBPs |

- Licence fees on businesses;

- VAT of 12.5 % (not applicable to offshore transactions);

- Stamp duty; 2% on land transactions; 2% on leases (1.8 % if bearer securities or 4% if company has an interest in land situated in Vanuatu); and 1% on other documents;

- Debits tax on each financial transaction varying from ?? to US$3.00.

- Landlord tax on property rental of 12.5%



- Company Law
- International Companies
- Insurance Companies
- Trusts
- Offshore Trustee transfers
- Trust Companies
- Investment Vehicles
- Mutual Funds
- Unit Trusts
- Exchange Control
- Money Laundering 
- Taxation

Last Updated : October 30, 2008 16:40

Copyright © 1996-2008 www.vfsc.vu