UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------------------X

EVERSPEED ENTERPRISES LIMITED,                 :        3:09 CV 1878 (SRU)

           Plaintiff,                               :

   - against-                                     :        March 2, 2010

SKAARUP SHIPPING INTERNATIONAL CORP.,          :
SKAARUP FORTUNE SHIPPING LTD., SKAARUP
SHIPPING CORP., THOMAS BENE, OLE SKAARUP,      :
and JONATHAN ZHU,
                                               :
          Defendants.

-----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION FOR SANCTIONS

EVERSPEED ENTERPRISES LIMITED

Patrick F. Lennon (CT 11950)
Kevin J. Lennon (CT 20411)
LENNON, MURPHY & LENNON, LLC
Tide Mill Landing
2425 Post Road
Southport, CT 06890
(203) 256-8600
(203) 256-8615 fax
pfl@lenmur.com
kjl@lenmur.com

*Of counsel:*
Michael J. Mitchell
MICHAEL J. MITCHELL, P.C.
494 Eighth Avenue, 7th Floor
New York, New York 10001
(646) 328-0120
mimoma@rcn.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT  ……………..…………………………………..……………1

ARGUMENT

POINT I
THE RULE 11 STANDARD …….…..……………………………………………………7

POINT II
THE AUTHORITIES THE SKAARUP DEFENDANTS RELY UPON ARE FACTUALLY
DISTINGUISHABLE ………………………………………………………………………8

POINT III
NEITHER PLAINTIFF, NOR PLAINTIFF'S COUNSEL, HAVE VIOLATED RULE 11 OR 28
U.S.C. § 1927 AND THE MOTION SHOULD BE DENIED ………………………………..9

POINT IV
THE CAUSES OF ACTION SET FORHT IN PLAINTIFF'S ORIGINAL COMPLAINT WERE
FACTUALLY SUPPORTED, ALLEGED IN GOOD FAITH AND NOT FOR ANY
IMPROPER PURPOSE …………………………………………………………………17

POINT V
PURSUANT TO ITS INHERENT POWER TO CURB ABUSIVE LITIGATION PRACTICES
THE COURT SHOULD SANCTION SKAARUP DEFENDANTS' COUNSEL FOR FILING
THE PRESENT SANCTIONS MOTION …………………………………………………25

Plaintiff, Everspeed Enterprises Limited (hereinafter referred to as "Plaintiff or "Everspeed"), and its undersigned counsel, Michael J. Mitchell and Patrick F. Lennon, hereby submit this Memorandum of Law in Opposition to the Motion for Sanctions of the "Skaarup Defendants"[1] against Plaintiff and its undersigned counsel pursuant to Federal Rule of Civil Procedure 11.

## PRELIMINARY STATEMENT

Plaintiff filed the original complaint in this action on November 18, 2009, seeking pre-judgment security for its claims arising from Defendant Skaarup Fortune Shipping Ltd.'s ("Skaarup Fortune") breach of a maritime contract of charter dated March 9, 2008, for the commercial motor vessel M/V BUNGA SAGA 9 (the "fixture"). Plaintiff further seeks pre-judgment security herein from Defendants Skaarup Shipping International Corp. ("SSI-Vanuatu"[2]), as guarantor for Defendant Skaarup Fortune, and from Defendants Skaarup Shipping Corp. (hereinafter "Skaarup Shipping"), Thomas Bene ( "Bene"), Ole Skaarup ( "Ole Skaarup") and Jonathan Zhu ( "Zhu") on an alter ego theory of liability. Plaintiff filed[3] its First Amended Complaint on February 19, 2010 (*see docket entry no. 46*), and has withdrawn, without prejudice, certain independent causes of action against the various defendants.

The Skaarup Defendants contend that Plaintiff and its counsel brought claims against the Defendants based on a demonstrably false allegation: that "SSI does not exist." However,

---

[1] Defendants Skaarup Shipping International Corp., Skaarup Shipping Corporation, Thomas Bene and Ole Skaarup are represented by common counsel and will be hereinafter collectively referred to as the "Skaarup Defendants.")

[2] As will be discussed at length throughout this response, a significant part of the Skaarup Defendants' motion is based on the deliberate obfuscation of a **clear** legal principle: corporations organized in different jurisdictions are different legal entities just as two natural persons with the same name are legally distinct. Here, Plaintiff named Skaarup Shipping International Corp., a corporation formerly organized under the laws of Liberia, in the original complaint. Defendant Skaarup Shipping International Corp., a Vanuatu corporation, ("SSI-Vanuatu") appeared through the same counsel as the other Skaarup Defendants and joined in the motion to dismiss filed by those defendants. To avoid confusion and actually simplify and clarify the factual and legal arguments, Plaintiff will continue to distinguish between these confusingly named entities.

[3] Plaintiff subsequently filed a Motion for Leave to File First Amended Complaint *nunc pro tunc* on February 23, 2010. *See docket entry no. 51.* The Court granted Plaintiff's motion on February 25, 2010.. *See docket entry no. 53.*

Plaintiff's allegations throughout the original Complaint were based on the dissolution of SSI-Liberia, and no mention was ever made of SSI-Vanuatu. The substantive effect of the distinction is currently no longer relevant because of Plaintiff's filing of the First Amended Complaint. Nevertheless, the Skaarup Defendants have claimed that the alleged corporate existence of SSI-Vanuatu **must** mean that the allegations relating to SSI-Liberia are false.  However, proving a fact for a different legal entity is of no consequence, as outlined at length in Plaintiff's opposition to the Defendant's to Dismiss.

The story of the two SSI entities goes back even further than the original complaint filed in this action.  In the Supplemental Rule B action commenced in the Southern District of New York, Everspeed had initially named "SSI" as a defendant in that action but later dismissed SSI as a defendant.  Plaintiff sent a Local Rule B.2 Notice to Skaarup Fortune and "SSI"[4] regarding the attachment of funds belonging to Defendant Skaarup Fortune. *See copy of Plaintiff's Local Rule B.2 Notice attached hereto as Exhibit 1.*  As can be seen, the notice of attachment was sent by email (brokers@skaarup.com) to "SSI" in Connecticut.  "SSI," now perhaps more precisely designated as Defendant SSI-Vanuatu but not then so identified, through its counsel and corporate secretary, Mr. J. Lincoln Hallowell, contacted Plaintiff's counsel – Michael J. Mitchell - in March 2009 following receipt of the notice.  The notice was plainly received since Mr. Hallowell made contact with Mr. Mitchell on March 16, 2009.  In response to Mr. Hallowell's inquiry about the guarantee, Mr. Mitchell asked for detailed corporate information regarding "SSI," including corporate governance records, information about shareholders, directors, officers, and management, and correspondence related to the guarantee. Mr. Mitchell also requested that SSI preserve and maintain any and all records concerning the subject charter and

---

[4] When Plaintiff filed the Supplemental Rule B action, it had not yet learned that SSI-Liberia had been dissolved or that SSI-Vanuatu existed.

guarantee. *See Declaration of Michael J. Mitchell in Opposition to Defendant's Motion for Sanctions ("Mitchell Decl.") at ¶ 6.*

In follow-on email exchanges, Mr. Hallowell advised he represented "SSI" for limited purposes and asked for a copy of the guarantee and the arbitration agreement between "SSI" and Everspeed, to which Mr. Mitchell requested that Mr. Hallowell state whether his client was questioning the validity of the performance guarantee and again requested the "SSI" corporate information. Mr. Hallowell responded stating that he was trying to avoid "getting into an unnecessary exchange of documents and interrogatories." In any event, Mr. Hallowell was successful because he never responded to Mr. Mitchell's requests for information, never identified "SSI" with particularity, and never corrected the possibly erroneous allegation in the Supplemental Rule B complaint regarding the jurisdiction of organization of "SSI."

Mr. Mitchell recounts in his Declaration in Opposition to the Skaarup Defendant's motion for sanctions that Mr. Hallowell called him to advise he was calling on behalf of guarantor SSI. The Supplemental Rule B Complaint in the Southern District of New York action that was sent to Mr. Hallowell's purported client stated, upon information and belief, that SSI was a corporation or business entity organized pursuant to Connecticut law with a place of business in Greenwich, Connecticut. *See Rule B Complaint at ¶ 4 appended to Exhibit 1.* Further, the Supplemental Rule B Complaint stated that SSI had guaranteed Skaarup Fortune's performance and thus was jointly liable for Skaarup Fortune's breach of charter party. *See Supplemental Rule B Complaint at ¶ 11.* Based on the facts known to counsel for the Skaarup Defendants, and Mr. Hallowell as SSI-Vanuatu's corporate secretary, it is noteworthy, and troubling, that he failed to clarify with Mr. Mitchell at that time that SSI was not a Connecticut corporation. However, because the Skaarup Defendants intentionally blur the legally assumed

3

separateness of these companies and the individual defendants operating them, it is no longer surprising that Mr. Hallowell abjectly refused to clarify matters.

Because of this continuing refusal of counsel for the Skaarup Defendants to provide further details regarding the existence of SSI-Vanuatu, so that Plaintiffs could independently determine whether the corporate facts were consistent with the documentary evidence contained in the guarantee, or separately confirm, without prejudice, that SSI-Vanuatu was, in fact, the purported/intended guarantor of the obligations of Defendant Skaarup Fortune under the fixture pursuant to the guarantee, Plaintiff maintained, consistent with all the evidence, as well as the affirmative statements by the Skaarup Defendants, its allegations in the original complaint. Plaintiff's counsel understood the need for the Skaarup Defendants to preserve their defenses on the validity of the guarantee and sought only to simplify the action before the Court.

Skaarup Defendants' counsel Mr. Friedman states in his Declaration in support of the Skaarup Defendants' motion for sanctions that he sent a December 8, 2009, letter to Plaintiff's counsel along with "conclusive evidence that SSI exists." What was provided, in fact, however, were corporate documents relating to SSI-Vanuatu and not to the legally distinct entity SSI-Liberia. Further, as set forth in Mr. Friedman's declaration, on December 23, 2009 Plaintiff's counsel, Patrick F. Lennon, wrote to Mr. Friedman and to attorney Eric Post, who at the time acted on behalf of Defendants Skaarup Fortune and Jonathan Zhu. Mr. Lennon's letter provided, in relevant part, as follows:

> In response to Mr. Friedman's letter, we consulted with Plaintiff and contacted Mr. Friedman, and Mr. Post in his capacity as counsel for defendants Jonathan Zou and Skaarup Fortune, in an effort to clarify the factual basis for Plaintiff's allegations. During those conversations, we explained to you both that the broker, Phillip Syrrist, who negotiated the charter party and guarantee, confirmed to Plaintiff's representatives that the purported guarantor of the charter party was, in fact, Skaarup Shipping International Corp. of Monrovia, Liberia ("SSI – Liberia"). We also asked Mr. Friedman to provide further documentation

4

concerning SSI – Vanuatu, e.g. corporate shareholding, officers, directors, etc. In addition, we asked Mr. Post to advise whether his client, Jonathan Zou was able to confirm whether during the charter party/guarantee negotiations he was referring to SSI – Liberia or SSI – Vanuatu, or whether he did not know to which entity he was referring. To date, we have received no reply or further information from either of you.

In light of the foregoing, and as we explained during our telephone conversations, given that Plaintiff's information and due diligence confirmed that SSI – Liberia was the purported guarantor of the charter party, Plaintiff stands by the allegations set forth in the Verified Complaint. The mere fact that there are two entities, SSI - Liberia and SSI – Vanuatu, neither of which your clients are willing or able to confirm was the purported guarantor, does not defeat the factual predicate for Plaintiff's claims.

Plaintiff will submit its opposition papers to the motion to dismiss filed by Mr. Friedman's clients. In the meantime, please let us know if you wish to discuss this matter further, or to provide any of the documentation or information we have requested.

*See Plaintiff counsel's December 23, 2009 letter attached to Friedman Declaration as Exhibit C.* As explained by Mr. Lennon in his letter, Plaintiff was standing by the allegations set forth in its original Complaint. This position should not have come as any surprise to Defendants' counsel, and after Plaintiff took pains to explain the logic and law involved in its analysis, it could not have been unclear to the Skaarup Defendants. It is beyond any doubt that SSI-Liberia did not exist either at the time the fixture and guarantee were entered into or when Plaintiff and counsel carried out its pre-filing factual investigation upon which the original Complaint in this action was based. The Skaarup Defendants cannot show otherwise; instead, they edited Plaintiff's Liberia-specific allegations to "SSI did not exist," conveniently pointing out the apparent existence of an entity from another jurisdiction. The Skaarup Defendants then self-servingly decry the fact that Plaintiff did not discover the existence of SSI-Vanuatu. Yet, SSI-Vanuatu cannot be the corporate successor to SSI-Liberia since it was formed *before the dissolution of* SSI-Liberia and thus Plaintiff, at the time it drafted and filed the original Complaint, even if it

5

knew of SSI-Vanuatu, which it did not, would have lacked a good faith basis to sue that corporate entity.

Plaintiff was never advised during the negotiations for the fixture in question that SSI was based in Vanuatu. Further, the Skaarup Defendants and their attorneys have, to this day, failed to confirm that SSI – Vanuatu was/is the purported charter party guarantor or to provide any details or documentation regarding this entity, which is not publicly available in the ultra-secretive tax haven of Vanuatu, and thus it is disingenuous in the extreme for them to not only blame but actually seek sanctions against Plaintiff and its attorneys. They have improperly sought to create a false impression with the Court that Plaintiff failed to carry out a reasonable inquiry of the facts surrounding its claim, which is simply incorrect, and also that upon being advised of the Skaarup Defendants concerns about the fraud allegations that Plaintiff, and its attorneys simply dug in their heels and ignored contrary facts and documentation. This is amply refuted by Mr. Lennon's letter and a proper consideration of the facts known to Plaintiff and its counsel both prior to, and following, the filing of this action. Also, it has been nearly one year since Mr. Mitchell and Mr. Hallowell corresponded, and over two months since Mr. Lennon and Mr. Friedman corresponded, regarding "SSI." However, despite this protracted passage of time, the Skaarup Defendants have steadfastly refused to be forthcoming regarding whether SSI – Vanuatu is, in fact, the purported charter party guarantor or to provide anything more than the minimal corporate documentation from the Republic of Vanuatu regarding this company that was chosen by the Skaarup Defendants to attach to the Declaration of Mr. Hallowell.

To date, Plaintiff has not been awarded any pre-judgment security against any of the

Defendants herein. Instead, with a tactical and contrived Rule 11 motion, coupled with a toothless Motion to Dismiss[5], the Skaarup Defendants have sought to thwart Plaintiff's good faith efforts to obtain lawful pre-judgment security by interposing not any response on the merits but rather a baseless motion to dismiss and a motion to adjourn the hearing on Plaintiff's pre-judgment remedy application scheduled for March 30, 2010 – although four (4) months will have passed since the Plaintiff filed its application. The tactics employed by the Skaarup Defendants and their counsel are transparent, and the Court should soundly denounce them.

**ARGUMENT**

**POINT I**

**<u>THE RULE 11 STANDARD</u>**

"Rule 11 sanctions are an extreme remedy, such that when divining the point at which an argument turns from merely losing to losing and sanctionable . . . district courts [must] resolve ***all doubts*** in favor of the signer." *See Parker v. State of Connecticut*, 2006 U.S. Dist. LEXIS 14912 at \*5 (D. Conn. March 31, 2006). "Courts determine whether a Rule 11 violation has occurred by focusing on the situation existing when the paper was signed . . . . The Court must not allow hindsight to skew its judgment. . . . An attorney is entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable . . . . Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Id.* (internal citations omitted).

For the reasons that follow, neither Plaintiff, nor its counsel violated Rule 11.

---

[5]     The Skaarup Defendants' Motion to Dismiss is, by its counsel's own admission, now moot.  See *Skaarup Defendants' Reply Memorandum of Law dated February 25, 2010 at 4* ("[i]n light of the filing of the Amended Complaint, Defendants' Motion to Dismiss is now moot. . . .").

## POINT II

### THE AUTHORITIES THE SKAARUP DEFENDANTS
### RELY UPON ARE FACTUALLY DISTINGUISHABLE

The Skaarup Defendants cite to and rely upon opinions in cases which bear no relation to the facts and circumstances attendant to the motion for sanctions. Their reliance on *O'Malley v New York City Transit Authority*, 896 F.2d 704 (2d Cir. 1990) is misplaced. In *O'Malley*, the Second Circuit Court of Appeals reversed the denial of sanctions by the district court in a case involving alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The district court declined to find Rule 11 sanctions notwithstanding the fact that it had warned plaintiff and his counsel at a pre-trial conference that the RICO cause of action lacked any merit, the case would be dismissed and discovery was stayed pending defendants' motion for summary judgment, which was subsequently granted. This is far from the situation here where this Court has not at any time indicated in any manner to Plaintiff or its counsel that it views the claims presented as lacking any merit.

Skaarup Defendants' reliance on *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452 (2d Cir. 1998) is equally misplaced. *Calloway* involved a series of tort and copyright claims alleged by plaintiff against his former business partners and production companies regarding an artistic dispute. The Rule 11 sanctions were imposed against plaintiff's attorneys based on the attorneys' willfully continuing the litigation including a claim that plaintiff's signature had been forged on agreements in which he transferred his artistic rights in the face of an expert's opinion, undisclosed to the plaintiff, that his signature might be genuine.

*Moazed v. First Union Mortgage Corp.*, 221 F.R.D. 28 (D. Conn. 2004) is also significantly far afield from the issues at stake here. *Moazed* concerned a plaintiff's baseless assertion of liability against a mortgage lender under the Truth in Lending Act based upon an

8

alleged failure by the mortgage company to respond within twenty (20) days to plaintiff's claim for rescission. However, the mortgage company had responded to the claim for rescission and so the plaintiff's contrary and repeated representations to the court ran afoul of the strictures of Rule 11. There is simply no similarity to the facts before this Court. Indeed, here, Plaintiff has made repeated requests to the Skaarup Defendants regarding the identity of the proffered guarantor and there has been no meaningful response other than continued obfuscation.

The numerous other opinions cited by and relied upon by the Skaarup Defendants in their defective motion are similarly off-point and unhelpful. The effort to shore up the Skaarup Defendants' sanctions motion with these myriad other case citations adds nothing to the application itself which is entirely bereft of any merit.

## POINT III

### NEITHER PLAINTIFF, NOR PLAINTIFF'S COUNSEL, HAVE VIOLATED RULE 11 OR 28 U.S.C. § 1927 AND THE MOTION SHOULD BE DENIED

"In considering sanctions regarding a factual claim, the initial focus of the district court should be on whether an objectively reasonable evidentiary basis for the claim was demonstrated in pretrial proceedings or at trial. Where such a basis was shown, no inquiry into the adequacy of the attorney's pre-filing investigation is necessary." *See Calloway,* 854 F.2d at 1470.

"Rule 11 provides in relevant part: '[t]he signature of an attorney or party constitutes a certificate by the signer that . . . to the best of the signer's knowledge, information, and belief *formed after reasonable inquiry* [the pleading] is well grounded in fact." *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 541, 111 S. Ct. 922, 928, 112 L. Ed. 2d 1140, 1152 (1991). "[T]he meaning of the Rule seems plain: A party who signs a pleading or other paper *without first conducting a reasonable inquiry* shall be sanctioned." *Id.* (emphasis added). "A signature certifies to the court that the signer has read the document, has

conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Id.* at 543.

In *Business Guides,* upon which the Skaarup Defendants rely, the Supreme Court squarely held that Rule 11 "imposes on any party who signs a pleading, motion or other paper - - whether the party's signature is required by the Rule or is provided voluntarily- - an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. at 551.   The Court imposed sanctions on plaintiff and its attorneys, finding that the plaintiff failed to conduct a reasonable inquiry before signing an application for a temporary restraining order.  The facts showed that the plaintiff only spent a few minutes investigating the accuracy of its copyright claims before filing its application for the temporary restraining order.  *Id.* at 538.  Additionally, Business Guides and its attorneys were sanctioned for failing to conduct a reasonable investigation after they were put on notice of several inaccuracies contained in their application.  *Id.*

In the instant matter, as set forth in Plaintiff's Verified Complaint, when Skaarup Fortune wrongfully terminated the charter party contract, Plaintiff sought to verify the domicile and status of the guarantor, SSI.  *See Mitchell Decl. at ¶ 6.*  Plaintiff conducted an investigation into the status of SSI by engaging a private investigation firm to search the corporate registries in each of the fifty (50) United States and in each of twenty-two (22) foreign jurisdictions frequently used by maritime entities including Liberia.  SSI was found in only one registry: Liberia.  On June 29, 2009, the Liberia Ship and Corporate Registry ("LISCR"), the official corporate registrar for Liberia, advised that SSI was established on November 1, 1989 and had been dissolved on April 18, 2000.  *Id.*

SSI's Articles of Dissolution identify defendant Thomas Bene as its Chairman and CEO (and President) and identify defendant Ole Skaarup as its sole Director.  The documentation evincing the undisputed dissolution of SSI-Liberia was set forth in the original Complaint.  The information from the corporate documents obtained from LISCR was consistent with Plaintiff's understanding from its negotiations and dealings with the Skaarup Defendants that SSI-Liberia was intended to be the guarantor of the fixture.

Plaintiff's investigation thereafter included a substantial search of corporate records guided by email confirmations with the broker, Philip Syrrist, who was part of the Skaarup Group at the time of the charter negotiations and who had had a long career with the Skaarup Group.  This specific inquiry of persons in a position to know, confirmed by correlative evidence completely consistent with the objective evidence in the guarantee, was a reasonable investigation that provided, and in fact still provides, ample evidentiary support for Plaintiff's claim that SSI-Liberia did not exist at the time the guarantee was negotiated.  In sum, Plaintiff's investigation concluded where it had started – to wit, the Broker, Philip Syrrist, confirmed to that the SSI entity that was proffered as the guarantor was registered in Liberia.  *See Mitchell Decl. at ¶ 6 (final bulleted point)*.

The Skaarup Defendants self-servingly declare that the Plaintiff failed to properly conduct a reasonable investigation into the factual or legal basis of their claim, as a consequence for which Plaintiff and its counsel have, according to the Skaarup Defendants, run afoul of Rule 11.  However, it glosses over the plain text of Rule 11 which provides that pleadings must be signed by a party, or its attorney, certifying that "to be the best of that person's knowledge, information and belief, ***formed after an inquiry reasonable under the circumstances . . . .*"  *See* Fed. R. Civ. P. 11(b) (emphasis added).

The Skaarup Defendants simply ignore the facts and circumstances at issue. They certainly make no attempt to inform this Court of the dealings among the parties and the basis from which Plaintiff undertook its inquiry into the background of Skaarup Shipping International Corp. (hereinafter "SSI[6]"). The Declaration of R. Keith Denholm could not make it any clearer – during the fixture negotiations between himself and Defendant Jonathan Zhu, and the Broker (Phillip Syrrist) on behalf of Skaarup, the Plaintiff was never advised that SSI was based in Vanuatu. However, the charter party of the M/V BUNGA SAGA 9 included the negotiation of a guarantee of that charter party by SSI "of Greenwich, Connecticut." *See Declaration of Keith Denholm Declaration dated November 17, 2009 at ¶¶ 4-22 ("Denholm Decl.") (see docket entry no. 1).*

Puzzlingly, Mr. Denholm's Declaration, which sets out in some detail the history of the fixture negotiations, and which appends copies of various communications among himself, Jonathan Zhu, and Phillip Syrrist, is never specifically referred to in the Skaarup Defendants' Motion for Sanctions. Instead, they refer only to various paragraphs of the Plaintiff's original Complaint. Yet, Mr. Denholm's Declaration, appended as Exhibit A to Plaintiff's original Complaint, cannot be so easily ignored. The Skaarup Defendants do not offer for consideration declarations from Jonathan Zhu or Phillip Syrrist that contradict the fixture negotiations as explained within the Denholm Decl.[7]

Because the Skaarup Defendants have chosen not to answer the Plaintiff's original Complaint, it is premature to speculate as to the defenses that may be articulated therein. What is

---

[6] This abbreviation is not to be confused with Skaarup Shipbrokers, Inc., which is referred to in numerous sections of the Skaarup Group website (www.skaarup.com) as yet another "SSI," notwithstanding that the Skaarup Defendants claim that there has never been any corporate relationship of Skaarup Shipbrokers, Inc. to any of the Defendants. This claim is directly contradicted by the Skaarup defendants on the Skaarup website where they hold out the Skaarup Group as inclusive of Skaarup Shipbrokers, Inc.

[7] Should the Skaarup Defendants seek to belatedly introduce declarations from either of these individuals for the first time in their reply papers, Plaintiff should be permitted an opportunity to refute any contradictory statements with a further declaration from Mr. Denholm.

known, however, is that any answer of the Skaarup Defendants would itself be subject to Rule 11. The absence of affirmative statements about the identity of the proffered guarantor, the absence of affirmative statements that Defendant Bene is indeed the president of SSI-Vanuatu, and the absence of affirmative statements by anyone, whether witness or counsel, sworn or unsworn, on any factual issues related to the analysis of Plaintiff's claims can perhaps only be explained by the most artful advocacy by counsel for the Skaarup Defendants to avoid making any untrue statement or allowing an untrue statement to be made. Should any of the Defendants at this juncture merely say, let alone proffer as a written statement subject to Rule 11 or penalty of perjury, that any of these carefully unstated assumptions are in fact true, then, having received nearly one year later the information sought by Plaintiff's counsel in March 2009, Plaintiff could evaluate those statements and substantively amend its complaint.[8]  Absent, however, the Skaarup Defendants' oral, let alone written, representation to these non-controversial, non-prejudicial facts:

(a)  Thomas Bene was President of SSI-Vanuatu at the relevant time, and

(b)  SSI-Vanuatu would be the proper guarantor or responsible party if a guarantee does in fact exist,

then the Skaarup Defendants have explicitly left missing the most salient, persuasive facts that are in their sole knowledge and control.

This inexplicable silence, in the face of repeated, specific, explicit attempts to describe the evidentiary holes, the missing links in the Skaarup Defendants' theory, and the level of

---

[8] Of course, Plaintiff has already filed the First Amended Complaint. Plaintiff cannot stress strongly enough its continued conviction in the viable and defensible character of each of the causes of action set forth in the original Complaint. It has become clear to Plaintiff, however, that the tangential proceedings instituted by the several defendants, from the Motion to Dismiss and Motion for Sanctions in this Court to the application for an anti-suit injunction before the Singapore arbitration panel, were distracting from the avowed goal of seeking the pre-judgment remedy to which Plaintiff is lawfully entitled. The maintenance of the Rule 11 motion following the amendment shows that the Skaarup Defendants continue to challenge the original allegations, and Plaintiff continues to defend them.

evidence or representation that would persuade Plaintiff to amend the original Complaint was ended not by disclosure of any kind but by a motion for sanctions. The glaring absence of statements by counsel for the Skaarup Defendants or the individual defendants is so striking that Plaintiff honestly wonders whether counsel is not making or forwarding such statements because they may in fact not be true. And if that scenario remains a possibility, then what reason is there for Plaintiff's counsel to assume otherwise, without evidence or justification? And, directly to the point: what justification is there for **sanctioning** Plaintiff and its counsel for refusing to infer what the Defendants will not state?

The actual issue raised by the Skaarup Defendants' motion is whether Plaintiff conducted a reasonable investigation to justify its allegations that SSI-Liberia was the proffered guarantor and that the dissolution of that entity nearly eight years prior to the charter party negotiations and the proffer of the guarantee to induce entry into the charter party contract gave rise to the causes of action outlined in the original Complaint. The Skaarup Defendants do not at any time in their papers filed in support of their sanctions motion advance an objective standard for what a reasonable investigation might entail, having not responded to Plaintiff's calls, emails, and letters explicitly outlining what Plaintiff considered reasonable and fair evidence on the questions. Instead, the Skaarup Defendants simply castigate Plaintiff for not discovering that an entity with the same "Skaarup Shipping International Corp." name as SSI-Liberia had been formed in the ultra-secretive offshore tax haven[9] of Vanuatu on October 29, 1999; instead, the Skaarup Defendants ignore the **actual allegations** in the original Complaint and use the contrived "SSI does not exist" formulation to lead Plaintiff, and this Court, down a primrose path of unstated

---

[9] *See Declaration of Michael J. Mitchell .in Opposition to Motion to Dismiss at ¶23 (docket entry no.26 ); see also Mitchell Decl. at ¶ 8 and the "Stop Tax Haven Abuse Act," S 506, H.R. 1265, 111th Cong., 1st Sess. (2009) discussing the secretive tax haven that is the island nation of Vanuatu.*

inferences, unsupported assumptions, and artful non-statements that would lead the unwary astray.

The Skaarup Defendants have not, and cannot, show to this Court that what the Plaintiff alleged – specifically that SSI-Liberia had been dissolved at the time of the fixture and guarantee at stake in this dispute -  was false.  They do not, for obvious reasons, claim that SSI-Liberia was not dissolved.  Instead, they wrongly seek to conflate the Plaintiff's actual allegations in order to support their spurious sanctions motion.

The Skaarup Defendants seek to blunt the damnable fact that Plaintiff justifiably relied on information provided by the shipbroker for the Defendant Skaarup Fortune Shipping Ltd. that SSI was formed and located in Liberia.  But, they provide no colorable argument as to why Plaintiff should not have relied on the information from the broker in concluding, in good faith, that SSI-Liberia (as purported guarantor) did not exist at the time the fixture was concluded.

The Skaarup Defendants cite the decision in *Chien v. Skystar Bio Pharmaceutical Co.*, 256 F.R.D. 67 (D. Conn. 2009) in which a plaintiff was sanctioned based on, *inter alia*, evidence in the form of the plaintiff's own website postings that showed it had prior inconsistent knowledge regarding the defendant's alleged securities fraud.  Interestingly, the Skaarup Group website itself contradicts some of the so called "facts" set forth in their motion.  For example, there is an effort to distance Skaarup Shipbrokers, Inc. from the Skaarup Defendants where they have argued that "Shipbrokers has **no corporate affiliation** to any of the Defendants."  *See Skaarup Defendants' Memorandum of Law, fn. 2, at 3*.  However, a perfunctory review of the website maintained by the Skaarup Group states that the Skaarup Group consists of, among others, Skaarup Shipbrokers Inc.

Attorney Hallowell has submitted a Declaration in Support of the motion to dismiss filed by the Skaarup Defendants which states that "SSC publicly discloses the fact that several of its affiliated entities have been incorporated variously in Liberia, Hong Kong, Panama and Vanuatu." *See J. Lincoln Hallowell Declaration dated December 14, 2009 at ¶6. See docket entry no. 14.* Mr. Hallowell fails to provide evidence of the public disclosure to which he refers or to otherwise clarify where and in what form SSC has made public disclosures. It is assumed Mr. Hallowell is referring to a solitary statement made on the website maintained by the Skaarup Group – www.skaarup.com. In particular, there is one webpage under the link titled "– Services – Ship Ownership –" that mentions Vanuatu. *See copy of webpage at www.skaarup.com attached hereto as Exhibit 2.* A Google search for the word "Vanuatu" limited to the Skaarup.com website lists but a single result – the webpage in question.

The implication of Mr. Hallowell's Declaration is that had Plaintiff bothered to review the Skaarup Group website prior to commencing this action that it might have determined that SSI was based in Vanuatu. However, a close examination of Mr. Hallowell's own words shows he realizes this is not the case. He does not state that SSC publicly discloses that its affiliated entity – SSI – is based in Vanuatu. In point of fact, he does not even state that SSI is related to SSC. Further, examination of the webpage in question shows that Skaarup Shipping claims to have controlled vessels registered, *inter alia*, in Vanuatu. To Plaintiff – or, for that matter, any other party viewing the webpage - this would mean essentially nothing since it (a) makes no reference to any entity from any jurisdiction named "Skaarup Shipping International Corp.;" (b) could mean that Skaarup Shipping has chartered vessels from shipowners who had flagged their vessels in Vanuatu; (c) seems to mean that Skaarup Shipping has owned or controlled vessels

that sailed under various flags of convenience, including Vanuatu and (d) does not reference any affiliated corporate entities – including Skaarup Shipping International Corp. based in Vanuatu.

The Skaarup Defendants' motion also fails because it does not establish, in any way, that Plaintiff is pursuing this action in bad faith or to harass the Defendants. The Skaarup Defendants have not, in any meaningful way, addressed the underlying cause of action for breach of the maritime contract of charter party due to which the contracting Defendant, Skaarup Shipping Fortune, is alleged to be liable to the Plaintiff in the sum of $49,690,081. *See Plaintiff's Complaint at ¶13 (see docket entry no. 1); Plaintiff's Amended Complaint at ¶18 (see docket entry no. 46).*

Finally, the Skaarup Defendants fail to appreciate that the guarantee pursuant to which Defendant SSI is alleged to be liable to Plaintiff is subject to English law. However, this is quite plain by the literal terms of the guarantee itself, a copy of which is appended as Exhibit 4 to the Declaration of R. Keith Denholm which itself is Exhibit A to the Amended Complaint. However, the fact that the guarantee is subject to English law was clearly set forth in the original Complaint as well. *See Plaintiff's Complaint at ¶13 (see docket entry no. 1).* Thus, the effort to persuade this Court that Connecticut law somehow governs the validity of the guarantee is yet another example of the Skaarup Defendants unyielding efforts to confuse issues and misguide this Court.

## POINT IV

### THE CAUSES OF ACTIONS SET FORTH IN PLAINTIFF'S ORIGINAL COMPLAINT WERE FACTUALLY SUPPORTED, ALLEGED IN GOOD FAITH AND NOT FOR ANY IMPROPER PURPOSE

Contrary to the incorrect and self-serving commentary set forth in the Skaarup Defendants' motion, the causes of action sounding in fraud and negligence that were alleged in

17

the Plaintiff's original complaint, which have now been withdrawn, without prejudice, are factually supported, were alleged in good faith and were not made for any improper purpose.

Plaintiff incorporates herein by reference its Opposition to the Skaarup Defendants' Motion to Dismiss which, as per the Skaarup Defendant's concession, is now effectively mooted by the filing of Plaintiff's Amended Complaint.  Notwithstanding the Skaarup Defendant's concession, the Plaintiff's opposition papers set forth in clear and convincing detail the factual and legal sufficiency of its original Complaint and should be considered in full by the Court with respect to the Skaarup Defendant's sanctions application.

The Skaarup Defendants predicate their entire motion for sanctions on a gross misconstruction of Plaintiff's claims: that SSI-Vanuatu was, or should have been, known to Plaintiff at the time it filed this action.  However, as set forth herein, Plaintiff was aware only of SSI-Liberia, and had no reason to know, or suspect, that an entity known as SSI-Vanuatu was the actual correct entity, when it filed this action.  Where a party pursues relief within a pleading in "good faith" a Rule 11 motion will be denied. *See Blinkoff v. Dorman*, 2008 U.S. Dist. LEXIS 54037 (D. Conn. July 16, 2008).  The comprehensive investigations carried out by Plaintiff never revealed the existence of SSI-Vanuatu and, even if it had, this would have been insufficient to allow Plaintiff to conclude that the Skaarup Defendants had meant to use SSI-Vanuatu as the guarantor.

With a proper understanding of Plaintiff's allegations and the facts known to it, and its counsel, at the time it filed this action it is clear that the causes of action alleged were legally and factually supported and never intended for any improper purpose.  Plaintiff's original complaint asserted several related fraud causes of action all of which were premised on the unarguable truth that Plaintiff was provided with a guarantee for the fixture from SSI-Liberia even though SSI-

Liberia had been dissolved years prior.  Plaintiff's original complaint also included a negligence based cause of action which again related to the provision of a guarantee from SSI-Liberia.

Further, and importantly, the original complaint, as well as the amended complaint, contends that the Skaarup Defendants, and others, are alter egos.  Alter ego is not a cause of action under Connecticut law but rather a legal mechanism through which a plaintiff can seek to impose liability against defendants responsible for acts and omissions of other parties notwithstanding the legal fiction of corporate separateness between the various defendants.  *See Intermed, Inc. v. Alphamedica, Inc.*, 2009 U.S. Dist. LEXIS 118923 at * 24, fn. 4 (D. Conn. December 18, 2009).

Under Connecticut law, fraud is defined as follows:

> (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. *Billington v. Billington*, 220 Conn. 212, 217, 595 A.2d 1377 (1991); *Kilduff v. Adams, Inc.*, 219 Conn. 314, 329, 593 A.2d 478 (1991); *Maturo v. Gerard*, 196 Conn. 584, 587, 494 A.2d 1199 (1985).

*Weisman v. Kaspar*, 233 Conn. 531, 539-540 (June 20, 1995).

"Fraud by nondisclosure expands on the first three of [the] four elements of fraud." *Statewide Griev. Comm. v. Egbarin*, 61 Conn. App. 445, 454 (Jan. 23, 2001).   It "involves the failure to make a full and fair disclosure of known facts" *Id* with the "intent or expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to [their] detriment."  *See Yavarone v. Jim Moroni's Oil Serv., LLC*, 2005 Conn. Super. LEXIS 543 (Feb. 18, 2005); *see also Finley Assocs. v. Crossroad Inv.*, 2001 Conn. Super. LEXIS 3560 (Dec. 17, 2001)("to be actionable for fraud, the nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction.").

"The key element in a case of fraudulent nondisclosure is that there must be circumstances which impose a duty to speak." *See Leisure Resort Tech., Inc. v. Trading Cove Assocs.,* 2001 Conn. Super. LEXIS 2203 (Aug. 6, 2001).  The law imposes a duty to speak when a party "voluntarily makes a disclosure.  A party who assumes to speak must make a full and fair disclosure." *See Statewide Griev. Comm.,* 61 Conn. App. at 454.

In *Statewide Griev. Comm.,* the Court found a fraudulent nondisclosure had occurred where a buyer in a real estate transaction failed to disclose to the plaintiff it defendant had not paid certain federal income taxes.  The Court stated,

> We are not persuaded by the defendant's arguments that his actions did not amount to fraud and further that he did not have a duty to disclose to Sanborn and to the Picards that his taxes were unpaid. The court properly analyzed the defendant's actions under the four elements of fraudulent misrepresentation and the legal concepts of fraudulent nondisclosure. Given the great amount of discretion that we accord to the trial court in attorney grievance proceedings, we do not conclude that the court abused its discretion in finding that, under the circumstances, the defendant fraudulently misrepresented facts on his URLA application, committed fraudulent nondisclosure in failing to inform Sanborn and the Picards that he did not pay his taxes, and fraudulently misrepresented facts regarding his taxes before the court.

*Id.* at 454.

Further, in *Gayne v. Smith*, 104 Conn. 650 (July 3, 1926), the Connecticut Supreme Court held:

> [Defendant] may not do anything to conceal from [plaintiff] a material fact affecting [the contract], or say or do anything to divert or forestall an intended inquiry by him, or deliberately hide defects, for, in so doing, *he is not merely remaining silent but is taking active steps to mislead. So the surrounding circumstances may be such that the effect of his silence is actually to produce a false impression in the mind of the [plaintiff], and the making of an agreement or doing of some other act may in itself lead the [plaintiff] to believe that a certain fact exists and so amount to an affirmation of it.* So [defendant] may stand in such a relationship of trust and confidence to the [plaintiff] that it is his duty to make a full disclosure.

(emphasis added.) *Id.* at 652. In *Gayne*, the seller of a farm failed to disclose that the land could be condemned by the water company by special charter. The court ultimately found that there was no actionable fraudulent nondisclosure because defendant's acts did not induce the buyer to act in any way with respect to the transaction. *Id.* Here, as alleged by Plaintiff, the Defendants' fraudulent actions did in fact induce it to enter into the fixture to its detriment. *See Denholm Decl. at ¶ 21.* .

In the instant matter, the Skaarup Defendants communications throughout the negotiations included misrepresentations and actionable omissions that the Skaarup Defendants knew, or should have known, would mislead Plaintiff and cause Plaintiff to rely on such communications in entering the fixture with Skaarup Fortune. Defendants falsely represented to Plaintiff that SSI-Liberia had the capacity, power, intent, and/or had in fact agreed to serve as the guarantor of Skaarup Fortune. Once the Skaarup Defendants proffered SSI as the guarantor for Skaarup Fortune, they undertook an affirmative duty to speak regarding the *bona fides* of SSI and its capacity and power to enter into contracts.

The Skaarup Defendants are incorrect regarding the legal and factual sufficiency of the allegations set out in Plaintiff's original Complaint. It may be the eventual case that the Plaintiff incorrectly sought recovery against SSI-Liberia. To be patently clear this is not conceded. However, based on the facts known to Plaintiff and its counsel, obtained during the fixture negotiations with the Skaarup Defendants, and on the reasonable pre-suit investigation that was conducted, it is inescapable that neither Plaintiff, nor its counsel, did anything wrong, much less violated Rule 11, by proceedings with its action against SSI-Liberia and the other defendants on the various theories of recovery set out in Plaintiff's original complaint.

The Plaintiff sought recovery against all Defendants for its causes of action based on the factually and legally supported alter ego theory. "Federal common law governs claims for veil-piercing in maritime cases. See, e.g., *Northern Tankers (Cyprus) Ltd. v. Backstrom*, 967 F. Supp. 1391, 1398 (D. Conn. 1997). Federal courts may use principles of state law where federal law is confused, but the federal maritime law regarding alter ego claims is "sufficiently clear so as to warrant no reliance on state law." *Id.* (*citing Holborn Oil Trading Ltd. v. Interpetrol Bermuda Ltd.*, 774 F. Supp. 840, 844 (S.D.N.Y. 1991)).

In *Northern Tankers*, this Court held, after reviewing all relevant Second Circuit case law, that the proper rule to apply when considering claims for piercing the corporate veil in federal maritime cases was that set forth in *Kirno Hill Corp. v. Holt*, 618 F.2d 982 (2d Cir. 1980). *Northern Tankers*, 967 F. Supp. at 1400. The *Kirno Hill* test requires that for the corporate veil to be pierced, an individual defendant must: (1) have used his corporation to perpetrate a fraud; **or** (2) have "so dominated and disregarded" the corporate form that his corporation transacted his personal business rather than its own corporate business. *Kirno Hill Corp.*, 618 F.2d at 984. Domination and control alone, without fraud or inequity, is enough to pierce the corporate veil pursuant to federal maritime law. *Northern Tankers,* 967 F. Supp. at 1399.

In *Northern Tankers* the individual defendants were found to be in control of a large far-flung corporate organization known as "Lexmar." The court held that the plaintiff was not required to prove fraud but merely that the defendants exercised domination and control over the contracting party. The court, examining the applicable precedent, held that federal maritime law does not contain a requirement for proof of fraud in order to make an alter ego finding. Among other factors, the court examined the following factors:

22

1. Common or overlapping stock ownership between parent and subsidiary;

2. Common or overlapping directors and officers;

3. Use of same corporate office;

4. Inadequate capitalization of subsidiary;

5. Financing of subsidiary by parent;

6. Parent exists solely as holding company of subsidiaries;

7. Parent's use of subsidiaries property and assets as its own;

8. Informal inter-corporate loan transactions;

9. Incorporation of subsidiary caused by parent;

10. Parent and subsidiary's filing of consolidated income tax returns;

11. Decision-making for subsidiary by parent and principals;

12. Subsidiary's directors do not act independently in interest of subsidiary but in interest of parent;

13. Contracts between parent and subsidiary that are more favorable to parent;

14. Non-observance of formal legal requirements; and

15. Existence of fraud, wrongdoing or injustice to third parties.

Sufficient facts must be alleged in a pleading to state a claim for relief that is "plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Bravado Int'l Group Merchandising Svc., Inc. v. Ninna, Inc.*, 2009 U.S. Dist. LEXIS 76586 at *43 (E.D.N.Y. 2009).

The fraudulent proffer of SSI-Liberia is an independent ground that establishes the alter ego liability of the Defendants. If, as Plaintiff contends, SSI-Liberia was fraudulently proffered as the guarantor, then the Defendants are collectively liable for that act and charged with the

23

fraudulent statement just as if this proffer was issued by each individual defendant.   The *Northern Tankers* court held that it would be "highly inequitable" to permit the individual principals of Lexmar "to shield themselves from liability when they have so clearly dominated and controlled their corporations with the intention of defrauding creditors, including plaintiff." *See Northern Tankers*, 967 F.3d Supp. at 1413; *see also Alford v. Frontier Enterprises, Inc.*, 559 F.2d 483, 484 (1st Cir. 1979)(shareholder of corporation "may not use the corporate form as both a shield and a sword at will.")

In order to hold a corporation liable for its agent's intentional tort, the court must find that the agent committed the tort within the scope of his or her employment and in furtherance of the corporation's business. *See Northern Tankers (Cyprus) Ltd. v. Baxtrom*, 967 F.3d Supp. at 1415.  Plaintiff has shown that Skaarup Fortune's agents fraudulently withheld information regarding the true status of SSI-Liberia within the scope of their employment and in furtherance of Skaarup Fortune's business so as to make the individual agents responsible for the actions of their alter ego.

Lastly, the Skaarup Defendants motion asserts that Plaintiff filed its action for an improper purpose.  However, it should be abundantly clear that Plaintiff has done nothing more in pursuing the relief herein than what any party in its position is well advised to do: seek security for its claims against those parties which have caused it damage.  Plaintiff's efforts to obtain relief under Connecticut's pre-judgment remedy is well founded and lawful in all respects. No amount of the Skaarup Defendant's protestation to the contrary can show otherwise.

24

**POINT V**

**PURSUANT TO ITS INHERENT POWER TO
CURB ABUSIVE LITIGATION PRACTICES THE COURT
SHOULD SANCTION SKAARUP DEFENDANTS' COUNSEL
FOR FILING THE PRESENT SANCTIONS MOTION**

The Skaarup Defendants' Motion for Sanctions is based upon:

(a) the alleged corporate existence of an entity known as "SKAARUP SHIPPING INTERNATIONAL CORPORATION" in Vanuatu.  However, SSI-Vanuatu remains unconfirmed as the proffered guarantor of obligations of Defendant Skaarup Fortune under the charter between Plaintiff and Skaarup Fortune;

(b) the self-serving and failed attempt by the Skaarup Defendants to claim that Plaintiff failed to conduct a reasonable inquiry as required by Rule 11 to locate SKAARUP SHIPPING INTERNATIONAL CORPORATION in Vanuatu where Plaintiff has shown that it carried out a significant investigation in good faith to verify the status of "SKAARUP SHIPPING INTERNATIONAL CORPORATION" and determined that the Liberian entity that it had been told by Defendant's broker was the entity in question was dissolved nearly 8 years prior to the fixture; and

(c) an original Complaint that is no longer operative since Plaintiff filed its First Amended Complaint on February 19, 2010.  The following are the pertinent amendments:

    i)    SKAARUP SHIPPING INTERNATIONAL CORPORATION is alleged to be a Vanuatu corporation but SKAARUP SHIPPING INTERNATIONAL CORPORATION is also alleged to be a Liberian corporation dissolved in 2000. *See First Amended Complaint at ¶¶ 2, 3;*

ii)     Removed the allegation Defendants Thomas Bene and Ole Skaarup were, respectively, the Chairman / CEO and Director / sole shareholder of SKAARUP SHIPPING INTERNATIONAL CORPORATION when it was dissolved in 2000.  *See First Amended Complaint at ¶¶ 6, 7;*

iii)    Defendant Jonathan Zhu represented himself as having power, authority and control over not only SKAARUP SHIPPING INTERNATIONAL CORPORATION but also SKAARUP SHIPPING CORPORATION and SKAARUP FORTUNE SHIPPING LTD.  *See First Amended Complaint at ¶8;*

iv)     Each Defendant was part of the "THE SKAARUP GROUP" and acted for and on behalf of those various entities.  *See First Amended Complaint at ¶9;*

v)      Non-party SKAARUP SHIPBROKERS INC. was part of THE SKAARUP GROUP and acted for and on behalf of those various entities. *See First Amended Complaint at ¶10;*

vi)     This action is an ancillary proceeding for the purpose of obtaining pre-judgment security for its claims pending in arbitration and court in Singapore as against Defendants SKAARUP SHIPPING INTERNATIONAL CORPORATION and SKAARUP FORTUNE SHIPPING LTD. and also its alter ego claims against the Defendants herein which are not party to either the arbitration or court proceedings in Singapore.  *See First Amended Complaint at ¶13; and*

26

vii)   Removed Counts One through Five (fraud causes of action) and Count

Eight (Connecticut Unfair Trade Practices Act) while adding a Count for

breach of charter party and maintaining Counts for breach of guarantee

and alter ego liability.

As has been shown herein, and based on Plaintiff's First Amended Complaint, counsel

for the Skaarup Defendants should not have filed the Motion for Sanctions and should have

withdrawn the Motion for Sanctions following the filing of its First Amended Complaint. Yet,

predictably, the litigation strategy employed by Skaarup Defendants' counsel is to litigate non-

issues in a poorly concealed effort to distract from the fact that Plaintiff has suffered a loss of

over $49,000,000, which should be the predominate focus in this case.

A federal court has "inherent power" to "protect the administration of justice by levying

sanctions in response to abusive litigation practices." *See Blinkoff v. Dorman*, 2008 U.S. Dist.

LEXIS 54037 at *9 (D Conn. July 16, 2008) quoting *Penthouse Int'l, Ltd. v. Playboy*

*Enterprises*, 663 F.2d 371, 386 (2d Cir. 1981). Defendants seek sanctions solely on the basis

that a company exists in Vanuatu with the same name as the company which Defendant Bene,

Defendant Zhu and Defendant Skaarup Fortune, acting in their corporate and individual

capacities, proffered as the guarantor of Defendant Skaarup Fortune for the purpose of inducing

Plaintiff to enter a maritime contract of charter in excess of Fifty Million Dollars.

WHEREFORE, for all the foregoing reasons, the Motion for Sanctions of the Skaarup

Defendants should be denied, *in toto*, and the Court should sanction the Skaarup Defendant's

counsel for its abusive litigation practices in filing and continuing to pursue the Motion for

Sanctions.

Respectfully Submitted,


The Plaintiff
EVERSPEED ENTERPRISES LIMITED


BY: _____/s/_____
           Patrick F. Lennon (CT 11950)
           Kevin J. Lennon (CT 20411)
           LENNON, MURPHY & LENNON, LLC

           Tide Mill Landing
           2425 Post Road
           Southport, CT 06890
           (203) 256-8600
           (203) 256-8615 fax
           pfl@lenmur.com
           kjl@lenmur.com

           *Of counsel:*

           Michael J. Mitchell
           MICHAEL J. MITCHELL, P.C.
           494 Eighth Avenue, 7th Floor
           New York, New York 10001
           (646) 328-0120
           mimoma@rcn.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2010 I caused a copy of the foregoing

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SANCTIONS** to be

served on all parties' counsel via electronic mail and by filing the same on the Court's electronic

case filing system ("ECF"), which automatically causes a notification of the filing to all parties

and counsel of record. The following counsel were served via electronic mail:

*rfriedman@sheppardmullin.com*
Robert S. Friedman, Esq.
Sheppard Mullin Richter & Hampton
30 Rockefeller Plaza, 24th Floor
New York, NY 10112

*mmcgrath@sheppardmullin.com*
Mark E. McGrath, Esq.
Sheppard Mullin Richter & Hampton
30 Rockefeller Plaza, 24th Fl.
New York, NY 10112

*lmlewis@sheppardmullin.com*
Lisa M. Lewis, Esq.
Sheppard Mullin Richter & Hampton
30 Rockefeller Plaza, 24th Fl.
New York, NY 10112

*corozco@tisdale-law.com*
Tisdale Law Offices
10 Spruce Street
Southport, CT 06890

*rwanchoo@wanchoolaw.com*
Rahul Wanchoo, Esq.
Wanchoo Law Offices
350 Fifth Avenue, 59th Floor
New York, NY 10118

29

*jmeerbergen@fercolaw.com*
John E. Meerbergen, Esq.
Bleakley, Platt & Schmidt
66 Field Point Rd.
Greenwich , CT 06830-6473


_____/s/_____
Patrick F. Lennon