# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------X
                                             :

EVERSPEED ENTERPRISES LIMITED,      :

                                          :      Case No. 09-cv-01878 (SRU)

                      Plaintiff,        :

                                          :

                  -against-       :      **DECLARATION OF**

                                        :      **ROBERT S. FRIEDMAN IN**

SKAARUP SHIPPING INTERNATIONAL CORP., :      **FURTHER SUPPORT OF**

SKAARUP FORTUNE SHIPPING LTD.,     :      **MOTION FOR SANCTIONS**

SKAARUP SHIPPING CORP., THOMAS BENE,  :      **UNDER RULE 11**

OLE SKAARUP and JONATHAN ZHU,     :

                                          :

                    Defendants.     :

                                          :      March 12, 2010

------------------------------------------------------------X

I, **ROBERT S. FRIEDMAN**, hereby declare:

1.      I am an attorney licensed to practice in the State of New York and admitted *pro hac vice* to the United States District Court for the District of Connecticut in the above-captioned case, and I am a member of the law firm of Sheppard, Mullin, Richter & Hampton LLP.

2.      I am counsel for Skaarup Shipping International Corp. ("SSI"), Skaarup Shipping Corp. ("SSC"), Thomas Bene and Ole Skaarup (collectively, the "Defendants") in this action and I make this declaration in further support of Defendants' Motion for Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

3.      I am fully familiar with the facts and circumstances set forth herein. This Declaration is based upon my personal knowledge and my review of the relevant documents, except where based upon information and belief, and as to those matters, I believe them to be true.

4.      As set forth in my previous declaration in support of Defendants' motion for sanctions dated January 4, 2010, on December 8, 2009, I sent a letter to Plaintiff's counsel advising them of the defects in their complaint and providing them with conclusive evidence of the existence of SSI.  *See* Declaration of Robert S. Friedman dated January 4, 2010 (Jan. 4th Friedman Decl.") at ¶ 5.

5.      After sending the December 8, 2009 letter, I had several conversations with Plaintiff's counsel during which I requested that Plaintiff withdraw its baseless claims.  *See* Jan. 4th Friedman Decl. at § 6.  However, after Plaintiff repeatedly refused to withdraw the claims, Defendants served the instant motion for sanctions on Plaintiff on January 4, 2010.  *See id.*

6.      On January 13, 2010, Patrick Lennon, counsel for Plaintiff, sent me an email in which he proposed that Plaintiff would amend its complaint on condition that Defendants refrain from filing a motion for sanctions, among other conditions.  Attached hereto as Exhibit A is a copy of Mr. Lennon's January 13, 2010 email to me.

7.      On January 19, 2010, Michael Mitchell, co-counsel to Plaintiff, sent me an email in which he stated: "Based on what the defendants collectively have produced to date, and the statements by counsel as to what their respective client's [sic] evidence might show, at this stage we see no reason to amend."  Attached hereto as Exhibit B is a copy of Mr. Mitchell's January 19, 2010 email to me.

8.      In a subsequent telephone call, Plaintiff's counsel changed their minds yet again and stated that Plaintiff would agree to amend the complaint if Defendants agreed both to withdraw their motion for sanctions and to voluntarily allow the attachment of $894,500 in funds that were the subject of the Rule B proceeding pending in the United States District Court for the Southern District of New York.

9.     On January 28, 2010, Mr. Mitchell sent me an email in which he again suggested that Plaintiff might amend the complaint, and further stated: "I would suggest that we agree a [sic] two week standstill agreement . . ."  Attached hereto as Exhibit C is a copy of Mr. Mitchell's January 28, 2010 email to me.

10.    On February 8, 2010, Mr. Lennon sent me an email in which he stated he intended to reach an agreement with me regarding the amended complaint, "on certain conditions related to . . . [the] pending motion to dismiss and motion for sanctions."  Attached hereto as Exhibit D is a copy of Mr. Lennon's February 8, 2010 email to me.

11.    On February 11, 2010, Mr. Mitchell sent me an email attaching a draft of Plaintiff's proposed amended complaint.  In this email, Mr. Mitchell stated that the attached draft was still "subject to . . . client[] approval and further tweaking" and that the final version would include a "claim for security in aid of foreign arbitration under CT law."  Attached hereto as Exhibit E is a true and correct copy of Mr. Mitchell's February 11, 2010 email to me.

12.    On December 31, 2009, Plaintiff filed a petition in New York State Court, Index No. 118323/2009 (J. Lobis), seeking to attach $894,500 of funds belonging to Skaarup Fortune. By order dated January 25, 2010, the New York State Supreme Court denied Plaintiff's petition. Attached as Exhibit F is a true and correct copy of the January 25, 2010 order.

13.    On March 8, 2010, the parties held a telephone conference before the Court. Attached hereto as Exhibit G is a true and correct copy of an excerpt of the transcript of the March 8, 2010 telephone conference held before Judge Underhill.

14.    Upon information and belief, attached as Exhibit H is a true and correct copy of a document dated February 19, 2010 filed by Plaintiff in the Arbitration Proceeding in response to

Skaarup Fortune's request for an anti-suit injunction seeking to restrain Plaintiff from proceeding against Skaarup Fortune in this action.

## **<u>CONCLUSION</u>**

**WHEREFORE**, it is respectfully requested that the Court grant Defendants' motion for sanctions pursuant to Rule 11 and 28 U.S.C. § 1927, and impose monetary sanctions against Plaintiff and its counsel, Michael J. Mitchell and Patrick F. Lennon.


Dated: March 12, 2010

                                        /s/ Robert S. Friedman
                                        ROBERT S. FRIEDMAN

# EXHIBIT A

| From: | Patrick F. Lennon [plennon@lenmur.com] |
|---|---|
| Sent: | Wednesday, January 13, 2010 4:42 PM |
| To: | Robert Friedman; epost@kellydrye.com |
| Subject: | RE: Everspeed/Skaarup et al - LML ref: 1888 |
| Attachments: | Emails Denholm and Syrrist.pdf |

Dear Rob and Eric,

Further to my separate telecons with each of you last evening, I write to follow up after having had the opportunity to consult with Mike Mitchell and our mutual client.

First, attached please find two PDF pages of the emails I have referenced during our conversations between Keith Denholm of PCL/Everspeed and Philip Syrrist of Skaarup Shipbrokers. Please note that I am providing these documents to you without waiver of any of Everspeed's rights and merely in furtherance of our discussions regarding the fraud allegations set forth in Everspeed's complaint.

Second, based on the information we discussed last evening regarding Skaarup Shipping International ("SSI")– i.e. the Liberia vs. Vanuatu issue, we are leaning towards filing an amended complaint that will not include fraud allegations based on the non-existence of SSI – Liberia, although a final decision has not yet been made. Please note however, that if Everspeed does in fact file such an amended complaint, it will do so without waiver of its right to file a further amended complaint should further evidence be discovered during the litigation that the purported guarantor was, in fact, SSI - Liberia.

Third, in light of the preceding paragraph, it seems that we may have a procedural dilemma. If Everspeed does, in fact, file an amended complaint, in our view that nullifies (or renders moot) the pending motion to dismiss filed by Rob's clients. I also discussed with each of you last evening the possibility of adjourning the PJR response date, but am unsure whether that makes sense if Everspeed files and amended complaint.

In light of the foregoing, please consider the following proposal:

1. If Everspeed determines to file an amended complaint, Rob's clients and Everspeed agree that Everspeed need not file opposition tomorrow to the pending motion to dismiss;
2. If after reviewing the amended complaint Rob's clients determine that a motion to dismiss is still appropriate, Everspeed will file its opposition within 14 days of being notified by Rob that his client's wish renew the motion to dismiss to attack the amended complaint (or within 14 days of the filing of a new/revised motion to dismiss, as appropriate);
3. If Everspeed does file an amended complaint, that will serve as withdrawal/correction of the original complaint and Everspeed and counsel will require confirmation from Rob and his clients that the Rule 11 motion will not be filed, as per the safe harbor provision of Rule 11 itself.
4. We can separately discuss the PJR application.

I will endeavor to call each of you by 5:30 this afternoon, or you can call me at your convenience after reviewing the foregoing.

3/11/2010

Kind regards,
Patrick F. Lennon
*Lennon, Murphy & Lennon, LLC*

| The GrayBar Building | Tide Mill Landing |
| 420 Lexington Ave, Suite 300 | 2425 Post Road |
| New York, NY 10170 | Southport, CT 06890 |
| (212) 490-6050 | (203) 256-8600 |
| (212) 490-6070 fax | (203) 256-8615 |

www.LENMUR.com

****NOTICE****

This message is being sent by a lawyer and may contain confidential information, attorney-client privileged information or attorney work-production information.  If you have received this message in error, please notify the sender and delete the message.  Thank you.

3/11/2010

# EXHIBIT B

| From: | Michael J Mitchell [mimoma@rcn.com] |
|---|---|
| Sent: | Tuesday, January 19, 2010 11:07 PM |
| To: | Robert Friedman |
| Subject: | Re: Everspeed v Skaarup |

How about 1215?
Based on what the defendants collectively have produced to date, and the statements by counse
as to what their respective client's evidence might show,  at this stage we see no reason to
amend.

Sent via BlackBerry from T-Mobile

-----Original Message-----
From: "Robert Friedman" <rfriedman@sheppardmullin.com>
Date: Tue, 19 Jan 2010 20:08:54
To: Michael Mitchell<mimoma@rcn.com>; Post, Eric<EPost@KelleyDrye.com>
Cc: Lisa Lewis<lmlewis@sheppardmullin.com>; Patrick F. Lennon<plennon@lenmur.com>; Rick
Colosimo<rcolosimo@bgmplaw.com>; Moriarty, James<JMoriarty@KelleyDrye.com>; Steiner,
Robert<RSteiner@KelleyDrye.com>; Lisa Lewis<lmlewis@sheppardmullin.com>
Subject: RE: Everspeed v Skaarup

Not for me.  I have a continued hearing starting at 2 pm.  I believe
Eric said he is unavailable after 3 pm.  Are you amending?


------------------------------------------------------------------------

Robert S. Friedman
30 Rockefeller Plaza
24th Floor
New York, New York 10112
rfriedman@sheppardmullin.com
Direct: 212.634.3058
Fax: 212.655.1758


Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice
given herein (or in any attachments) is not intended or written to be used, and cannot be used
by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein (or in any
attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or
confidential. If you received this transmission in error, please notify the sender by reply e-mail
and delete the message and any attachments.
------------------------------------------------------------------------

From: Michael Mitchell [mailto:mimoma@rcn.com]

1

Sent: Tuesday, January 19, 2010 8:04 PM
To: Robert Friedman; 'Post, Eric'
Cc: Lisa Lewis; 'Patrick F. Lennon'; 'Rick Colosimo'; 'Moriarty, James';
'Steiner, Robert'; Lisa Lewis
Subject: RE: Everspeed v Skaarup

I'm not available until 3:30 or so.
Does that work?

-----Original Message-----
From: Robert Friedman [mailto:rfriedman@sheppardmullin.com]
Sent: Tuesday, January 19, 2010 6:58 PM
To: Post, Eric; Michael Mitchell
Cc: Lisa Lewis; Patrick F. Lennon; Rick Colosimo; Moriarty, James;
Steiner, Robert; Lisa Lewis
Subject: RE: Everspeed v Skaarup

Let's try to have a call tomorrow (Wed) morning.  Is 10:30 good for
everyone?


--------------------------------------------------------------------
--

Robert S. Friedman
30 Rockefeller Plaza
24th Floor
New York, New York 10112
rfriedman@sheppardmullin.com
Direct: 212.634.3058
Fax: 212.655.1758


Circular 230 Notice: In accordance with Treasury Regulations we notify
you that any tax advice given herein (or in any attachments) is not
intended or written to be used, and cannot be used by any taxpayer, for
the purpose of (i) avoiding tax penalties or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed
herein (or in any attachments).

Attention: This message is sent by a law firm and may contain
information that is privileged or confidential. If you received this
transmission in error, please notify the sender by reply e-mail and
delete the message and any attachments.
--------------------------------------------------------------------
--

From: Post, Eric [mailto:EPost@KelleyDrye.com]
Sent: Tuesday, January 19, 2010 11:12 AM
To: Robert Friedman; Michael Mitchell

2

Cc: Lisa Lewis; Patrick F. Lennon; Rick Colosimo; Moriarty, James;
Steiner, Robert
Subject: RE: Everspeed v Skaarup

I am available Wednesday until 3pm.  After that I will be out of the
country until next Tuesday and will likely have extremely limited email
and phone access, if any.  Please include my colleagues Jim Moriarty in
our Stamford office and Rob Steiner in our NY office on any
communications.  They are copied on this email.  Thanks.  Eric

-----Original Message-----
From: Robert Friedman [mailto:rfriedman@sheppardmullin.com]
Sent: Friday, January 15, 2010 7:09 PM
To: Michael Mitchell
Cc: Lisa Lewis; Patrick F. Lennon; Rick Colosimo; Post, Eric
Subject: RE: Everspeed v Skaarup


I've reviewed it and can speak now if you want.  I have a hearing
Tuesday.



-----------------------------------------------------------------------
--

Robert S. Friedman
30 Rockefeller Plaza
24th Floor
New York, New York 10112
rfriedman@sheppardmullin.com
Direct: 212.634.3058
Fax: 212.655.1758


Circular 230 Notice: In accordance with Treasury Regulations we notify
you that any tax advice given herein (or in any attachments) is not
intended or written to be used, and cannot be used by any taxpayer, for
the purpose of (i) avoiding tax penalties or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed
herein (or in any attachments).

Attention: This message is sent by a law firm and may contain
information that is privileged or confidential. If you received this
transmission in error, please notify the sender by reply e-mail and
delete the message and any attachments.
-----------------------------------------------------------------------
--

From: Michael Mitchell [mailto:mimoma@rcn.com]
Sent: Friday, January 15, 2010 7:06 PM

3

To: Robert Friedman
Cc: Lisa Lewis; 'Patrick F. Lennon'; 'Rick Colosimo'; 'Post, Eric'
Subject: RE: Everspeed v Skaarup

Rob,

Thank you for forwarding the declaration.

I'd suggest you and co-counsel review Everspeed's opposition and that we
speak next week, say Tuesday afternoon if convenient.

Mike


-----Original Message-----
From: Robert Friedman [mailto:rfriedman@sheppardmullin.com]
Sent: Friday, January 15, 2010 6:53 PM
To: Michael Mitchell
Cc: Lisa Lewis; Patrick F. Lennon; Rick Colosimo; Post, Eric
Subject: RE: Everspeed v Skaarup

Michael:

I've copied counsel for SF and Mr. Zhu.

Please advise immediately as to your intentions on amending the
complaint. As you know, our reply is due 1/29. I believe it is in
everyone's interests to avoid the expense of us preparing a reply. In
addition, I am waiting for a formal response re: adjourning our time to
respond to the PJR. Patrick indicated in a call that you would likely
agree to extend our time. Please confirm.

Thanks


-------------------------------------------------------------------- ----
--

Robert S. Friedman
30 Rockefeller Plaza
24th Floor
New York, New York 10112
rfriedman@sheppardmullin.com
Direct: 212.634.3058
Fax: 212.655.1758

4

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

------------------------------------------------------------------------
--


From: Michael Mitchell [mailto:mimoma@rcn.com]
Sent: Friday, January 15, 2010 6:39 PM
To: Robert Friedman
Cc: Lisa Lewis; 'Patrick F. Lennon'; 'Rick Colosimo'
Subject: Everspeed v Skaarup

Robert,
Attached pls find my declaration which was filed w/ECF last night but according to Lisa does not appear on Pacer. I'd appreciate it if you'd forward this to co-defense counsel, whose particulars I do not have readily available. Mike


MICHAEL J. MITCHELL  PC

494 Eighth Avenue
Seventh Floor
New York, New York   10001

Office    646 224 0270
Fax        646 328 0121
Mobile   917 328 0673

_____

Notice: This message and any attached file(s) is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email and delete all copies of the original message. Thank you.

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise
stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure;
please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be
subject to legal restriction or sanction. If you think that you have received this E-mail message in
error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or
other defect that might affect any computer system into which it is received and opened. However, it is the
responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley
Drye & Warren LLP for any loss or damage arising in any way from its use.

**EXHIBIT C**

Page 1 of

| | |
|---|---|
| **From:** | Michael Mitchell [mimoma@rcn.com] |
| **Sent:** | Thursday, January 28, 2010 4:02 PM |
| **To:** | Robert Friedman |
| **Cc:** | 'Patrick F. Lennon'; rcolosimo@bgmplaw.com |
| **Subject:** | Everspeed v Skaarup |

Rob,

We were notified this morning that Rahul Wanchoo has replaced Kelly Drye as counsel for Skaarup Fortune and Jonathon Zhou.

Further to our discussions yesterday, I would suggest that we agree a two week standstill agreement, which would give our respective clients opportunity to consider the proposal we discussed.

Thus, your clients' time to serve reply papers would be extended for two weeks, and our time to respond to the Rule 11 motion would also be tolled for a similar period of time.

Please let us have your response by return email, as I understand you are not in the office until Monday.

Regards,

Mike Mitchell

MICHAEL J. MITCHELL  PC

494 Eighth Avenue
Seventh Floor
New York, New York  10001

Office   646 224 0270
Fax      646 328 0121
Mobile  917 328 0673

Notice: This message and any attached file(s) is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email and delete all copies of the original message. Thank you.

3/11/2010

# EXHIBIT D

**From:**      Patrick F. Lennon [plennon@lenmur.com]
**Sent:**      Monday, February 08, 2010 10:42 PM
**To:**        Robert Friedman; mimoma@rcn.com
**Cc:**        Lisa Lewis
**Subject:** RE: Amended Complaint

Rob,

Thanks yours.  I'm fairly certain we told you we were meeting with our client late last week, which we did.  It is our intention to
come to an agreement with you on the filing of an amended complaint on certain conditions related to your clients' pending motio
to dismiss and motion for sanctions.  I should have a draft amended complaint for your review tomorrow (the final version of whic
will be subject to client approval).

Regards,

Patrick F. Lennon

*Lennon, Murphy & Lennon, LLC*

The GrayBar Building          Tide Mill Landing
420 Lexington Ave, Suite 300    2425 Post Road
New York, NY 10170             Southport, CT 06890
(212) 490-6050                 (203) 256-8600
(212) 490-6070 fax             (203) 256-8615

www.lenmur.com

****NOTICE****
This message is being sent by a lawyer and may contain confidential information, attorney-client privileged information or attorne
work-production information.  If you have received this message in error, please notify the sender and delete the message.  Thar
you.

**From:** Robert Friedman [mailto:rfriedman@sheppardmullin.com]
**Sent:** Monday, February 08, 2010 6:38 PM
**To:** Patrick F. Lennon; mimoma@rcn.com
**Cc:** Lisa Lewis
**Subject:** Amended Complaint

Patrick and Michael:

We have not received an amended complaint, nor any communication from your side regarding the amendment we discussed.
We assume you decided to continue with the present complaint.  Accordingly, we will renew our efforts to finalize our reply.

Rob

30 Rockefeller Plaza

3/12/2010

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP

24th Floor
New York, New York 10112
212.653.8700 *office*
212.653.8701 *fax*
***www.sheppardmullin.com***

**Robert S. Friedman**
212.634.3058 *direct* | 212.655.1758 *direct fax*
*rfriedman@sheppardmullin.com*

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# EXHIBIT E

| | |
|---|---|
| **From:** | Michael Mitchell [mimoma@rcn.com] |
| **Sent:** | Thursday, February 11, 2010 12:47 PM |
| **To:** | Robert Friedman |
| **Cc:** | 'Patrick F. Lennon'; rcolosimo@bgmplaw.com |
| **Subject:** | Amended Complaint - CT |
| **Attachments:** | Amended Complaint - CT - (fifth draft).pdf |

Rob,

Attached please find Everspeed's draft amended complaint which is subject to our client's approval and further tweaking. We will also add a claim for security in aid of foreign arbitration under CT law.

Please confirm that the MTD and Rule 11 motion will be withdrawn.

Note that we reserve all rights to amend further if in discovery we become aware of any other causes of action or actionable conduct on your client's part wrt the transactions complained of.

Regards,

Mike Mitchell


MICHAEL J. MITCHELL  PC

494 Eighth Avenue
Seventh Floor
New York, New York   10001

Office   646 224 0270
Fax      646 328 0121
Mobile   917 328 0673

————————————————

Notice: This message and any attached file(s) is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email and delete all copies of the original message. Thank you.

# EXHIBIT F

FILED: NEW YORK COUNTY CLERK 01/26/2010

NYSCEF DOC. NO. 9

INDEX NO. 118323/200

RECEIVED NYSCEF: 01/26/201

SUPREME COURT OF THE STATE OF NEW YORK - NEW YORK COUNTY

PRESENT:      HON. JOAN B. LOBIS                          PART 6

*Justice*

---

EVERSPEED ENTERPRISES LIMITED

           Petitioner(s),

      - v -

SKAARUP FORTUNE SHIPPING, LTD.

          Defendant(s).

INDEX NO. 118323/09

MOTION DATE 1/19/10

MOTION SEQ. NO. 001

MOTION CAL. NO.

---

The following papers, numbered 1 to __13__, were read on this motion to/for an order of attachment

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion / Order to Show Cause – Affidavits – Exhibits _____ | 1-11 |
| Answering Affidavits – Exhibits _____ | 12 |
| Replying Affidavits _____ | 13 |

Cross-Motion:    [  ] Yes    [X] No

Upon the foregoing papers, it is ordered that this petition is denied.

After consideration of all the papers and after oral argument, which was held on January 25, 2010, the petition for an order of attachment against an electronic funds transfer ("EFT") in the amount of $894,050 is denied. The court is persuaded by the holding in Shipping Corp. of India v. Jaldhi Overseas Pte. Ltd., which states that "New York law clearly prohibits attachment of EFTs[.]" 585 F.3d 58, 71 (2d Cir. 2009). This order is without prejudice to further applications of attachment if petitioner discovers additional property in the court's jurisdiction that may be attached under New York law.

This constitutes the decision, order, and judgment of the court.

Dated: ___1/25/10___

              JOAN B. LOBIS, *J.S.C.*

Check one:      [X] FINAL DISPOSITION      [  ] NON-FINAL DISPOSITION

# EXHIBIT G

1

```
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - x

EVERSPEED ENTERPRISES, LTD        :  No. 3:09CV-1878 (SRU)
                                  :  915 Lafayette Boulevard
            vs.                   :  Bridgeport, Connecticut
                                  :
                                  :  March 8, 2010
SKAARUP SHIPPING INTL CORP,       :
ET AL                             :

- - - - - - - - - - - - - - x


                    TELEPHONE CONFERENCE


B E F O R E:

    THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

A P P E A R A N C E S:

    FOR THE PLAINTIFF:

          MICHAEL J MITCHELL PC
                494 8th Avenue, 7th FL
                New York, New York  10001
          BY:  MICHAEL J. MITCHELL, ESQ.

          LENNON, MURPHY & LENNON
                Tide Mill Landing
                2425 Post Road, Suite 302
                Southport, Connecticut  06890
          BY:  PATRICK F. LENNON, ESQ.
               KEVIN LENNON, ESQ.

    FOR THE DEFENDANTS:

          SHEPPARD, MULLIN, RICHTER & HAMPTON
                1300 I Street, NW
                11th Fl, E
                Washington, DC  20005
          BY:  ROBERT S. FRIEDMAN, ESQ.
               LISA M. LEWIS, ESQ.

                                        (Continued)
```

```
         TISDALE LAW OFFICES, LLC
              10 Spruce Street
              Southport, Connecticut  06890
         BY:  CLAURISSE CAMPANALE-OROZCO, ESQ.
              THOMAS L. TISDALE, ESQ.


         WANCHOO LAW OFFICES, LLP
              Empire State Building
              350 Fifth Avenue, 59th FL
              New York, New York  10118
         BY:  RAHUL WANCHOO, ESQ.



              Susan E. Catucci, RMR
              Official Court Reporter
              915 Lafayette Boulevard
          Bridgeport, Connecticut  06604
               Tel: (917)703-0761
```

1    to the court's suggestions on that.  It could be either

2    way.

3            THE COURT:  Well, my first suggestion is have

4    the parties conferred on the choice of law issue and is

5    there a disagreement?

6            MR. MITCHELL:  From a review of the motion

7    papers, there does seem to be.

8            THE COURT:  And what's the defense point of

9    view?

10            MR. FRIEDMAN:  I'm not quite sure what the

11    plaintiff's position is, so to answer your question, Your

12    Honor, we have not conferred.  So I'm not quite sure what

13    the dispute is and if there is a dispute.

14            THE COURT:  Let's figure that out because it

15    doesn't make a lot of sense to waste time hearing from an

16    English law expert on choice of law if there was no

17    disagreement.

18            MR. MITCHELL:  Well, Your Honor, the guaranty

19    provided, says it would be interpreted according to

20    English law, to a high court, selection clause in

21    Singapore.  Last week the defendant, SSI, the guarantor,

22    was served with a writ from the high court of Singapore.

23    So we are in the process of being served.  We believe that

24    English law applies and if it would be an issue with

25    respect to PJR, then perhaps we ought to have an English

# EXHIBIT H

Fax



Mr David Farrington
df@chorleyfarm.co.uk

Via Email

Mr Alan Oakley
apo@alanoakley.co.uk

| SENDER'S REF | RECIPIENT'S REF | DATE | PAGE |
|---|---|---|---|
| TKS/ITW/ekh/306799-01 | Please Advise | 19 Febaruary 2010 | 1/8 |

**BUNGA SAGA 9 – CHARTERPARTY DATED 09.03.2008**

Dear Sirs

1.    We refer to Charterers' application dated 8 February 2010 for an injunction restraining Owners from proceeding against Charterers in the Connecticut proceedings (the "Application").

2.    Owners oppose the Application.

3.    Charterers' application is based on a misunderstanding of the nature of and issues in the Connecticut proceedings. Furthermore, as the Tribunal would have seen, the Application makes bald sweeping allegations that the Connecticut proceedings fall foul of the arbitration agreement in the Charterparty without any attempt at substantiation. We will address Charterers' arguments and allegations below.

4.    First, it bears noting that Owners themselves have commenced these arbitration proceedings against Charterers on 9 March 2009 for breach of the Charterparty. Owners are seeking, *inter alia*, damages for wrongful termination of the Charterparty. Clearly, Owners have no reservations about invoking the arbitration clause in the Charterparty - in the appropriate case. As we will demonstrate below, Owners' claim in the Connecticut proceedings falls <u>outside</u> the scope of the arbitration agreement in Clause 17 of the Charterparty. As such, it was not commenced in breach of the arbitration clause and no injunction should be granted to restrain its continuance.

5.    In summary, the main grounds against the grant of an anti-suit injunction are as follows:

    (a)    The Tribunal does not have the power to grant an anti-suit injunction against Owners.

    (b)    Even if the Tribunal has power to grant an anti-suit injunction, the Tribunal should not grant an anti-suit injunction for the following reasons: -

        (i)    Owners' claim in Connecticut falls outside the scope of the arbitration clause. It does not concern a claim under the Charterparty. It is concerned with a claim under a separate agreement, i.e. "Letter of Guarantee" issued by a third party (which is not even privy to the Charterparty).

RAJAH & TANN LLP
9 Battery Road #25-01   Straits Trading Building   Singapore 049910   T +65 6535 3600   F +65 6225 9630   www.rajahtann.com
We are registered in Singapore with limited liability (T08LL0005E). We do not accept service of court documents by fax.

1



RAJAH
TANN

(ii)    The Connecticut court is not requested to adjudicate on issues within the purview of this Tribunal. Owners are not claiming a breach of the Charterparty in the Connecticut proceedings.

(iii)    Besides Charterers, there are 5 other defendants in the Connecticut proceedings. None of these 5 parties is bound by the arbitration clause in the Charterparty.

(iv)    In any event, the objective of the Connecticut proceedings is to obtain security for Owners' claim under the Charterparty. It is established law that such ancillary proceedings do not infringe the arbitration/jurisdiction clause in the underlying contract.

Owners will elaborate on each of these grounds.

**A.    Tribunal has no power to grant anti-suit injunctions**

6.    At paragraph 5 of the Application (page 2), Charterers stated that they apply for an anti-suit injunction, pursuant to Section 12(1)(i) of the Singapore International Arbitration Act. Section 12(1)(i) provides that the Tribunal *"shall have powers to make orders or give directions for...an interim injunction or any other interim measure"*.

7.    We respectfully submit that the section 12(1)(i) in fact does not include an anti-suit injunction. Nowhere in Section 12(1)(i) does it say that interim injunctions include an anti-suit injection.

8.    Charterers do not cite any authority for their proposition that the Tribunal has the power to grant an anti-suit injunction in this case.

9.    It is widely recognized that an anti-suit injunction is a drastic remedy. In *Societe Nationale Industrielle Aerospatiale v Lee Kui Jak* [1987] AC 871 (Annex A) (*"Aerospatiale"*), the locus classicus on anti-suit injunctions, the Privy Council noted at 892 that *"it has been emphasized on many occasions that, since such an order indirectly affects the foreign court, the jurisdiction is one which must be exercised with caution"*. This is because the effect of such an injunction is that it directly interferes with foreign court process.

10.    In this case, Charterers are seeking an anti-suit injunction in connection with claim which is not even the subject matter of the arbitration before the Tribunal. Article 17 of the Model Law (enacted in Singapore in the First Schedule to the Singapore International Arbitration Act) provides that, *"...the arbitral tribunal may, at the request of a party, order any party to take such interim measure of protection as the arbitral tribunal may consider necessary in respect of the subject-matter of the dispute..."* The Model Law has the force of law in Singapore (see Section 3, Singapore International Arbitration Act). Section 12(1)(i) should be read consistently with Article 17.

11.    Section 12(1)(i) when so read with Article 17 means that the interim injunctions which the Tribunal is empowered to issue is restricted to interim injunctions *"necessary in respect of the subject-matter of the dispute"*, i.e. when the interim injunction is necessary in relation to the claim in question. The interim



RAJAH
TANN

injunction sought by Charterers has no connection with the subject-matter of this arbitration, that is to say Owners' claim arising from Charterers' wrongful termination of the Charterparty.

12.   Additionally, the nature of the anti-suit injunction sought by Charterers is <u>not</u> "*interim*". The anti-suit injunction sought by Charterers is in the nature of a <u>permanent</u> injunction restraining Owners from proceeding against Charterers in Connecticut. It is clearly not an "<u>interim</u> injunction or any <u>interim</u> measures" within the meaning of Section 12(1)(i). There is no temporal limit to the injunction which Charterers are seeking.

13.   Finally, the power of the courts to grant anti-suit injunctions lie arises from the inherent jurisdiction of the courts to prevent its own process being used to bring about injustice. (see *Cheshire, North & Fawcett Private International Law*, 14th Ed. at p. 469 (Annex B) and *CSR Ltd v Cigna Insurance Australia Ltd* (1997) 189 CLR 345 at 390-392 (Annex C) at paras 48, ) An arbitration tribunal, unlike a court, does not have inherent jurisdiction. In the absence of such inherent jurisdiction, the arbitration tribunal also does not have the power to grant an anti-suit injunction.

14.   Based on the above, we humbly submit that the tribunal does not have the power to grant the anti-suit injunction sought by Charterers and the Application should be refused on this ground alone.

**B.   Connecticut action is outside the scope of the arbitration clause**

15.   Even if the Tribunal has the power to grant an anti-suit injunction in this case, there is no basis to do so because the Connecticut action is <u>outside</u> the scope of the arbitration clause.

16.   Clause 17 in the Charterparty reads, "*That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at Singapore, one to be appointed by each of the parties hereto, and the third by the two so chosen…*" Although the clause refers to "any dispute" between Owners and Charterers, the words "any dispute" cannot be read literally and without any qualification. Only disputes arising out of the Charterparty between Charterers and Owners would be subject to the arbitration clause. The parties could not have intended that all disputes between Owners and Charterers be subject to arbitration pursuant to Clause 17 regardless of the degree of connection with the Charterparty.

17.   A review of the Complaint filed in the Connecticut District Court will show that Owners' claim in the Connecticut proceedings has no real connection with the Charterparty. It would be convenient to refer to the Complaint which Owners have filed in the Connecticut court. A copy of the Complaint is enclosed in Annex D. We highlight the following points.

   (a)   On 18 November 2009, Owners filed a Complaint in the District Court of Connecticut (the "Complaint").

   (b)   Owners' claim in the Connecticut proceedings concerns a document named "Letter of Guarantee" issued on or around 7 March 2008 by an entity identified as Skaarup Shipping International ("SSI").

3

RAJAH
TANN

(c)      The parties to the "Letter of Guarantee" are Owners and SSI. It is a separate and distinct agreement from the Charterparty. In fact the "Letter of Guarantee" contains its own jurisdiction clause (as opposed to an arbitration clause).

(d)      Owners were informed by Charterers' brokers that SSI was a company incorporated in Liberia. Subsequent to Charterers' breach of the Charterparty (and after these arbitration proceedings were brought), Owners discovered that SSI Liberia was dissolved in 2000, some 8 years before the "Letter of Guarantee" was issued. (See paragraph 19 of the Complaint)

(e)      Accordingly, Owners brought a claim against Charterers and 5 other defendants for, *inter alia,* misrepresenting that SSI had the *"capacity, power, intent and/or had in fact agreed to serve as the guarantor..."* when they knew that SSI could not legally enter into any contract with Owners since SSI no longer existed at the time the "Letter of Guarantee" was issued. (See paragraphs 48 to 50 of the Complaint)

(f)      Owners are seeking a prejudgment remedy in the form of an attachment over the assets of the 6 defendants named in the Connecticut proceedings. A copy of Owners' application for prejudgment attachment is enclosed in Annex E.

18.     As the Tribunal will note, it is the "Letter of Guarantee", and not the Charterparty, that lies at the heart of the Connecticut proceedings.

19.     Charterers ignored the fact that the "Letter of Guarantee" is a separate transaction between Owners and SSI. SSI is not even a party to the Charterparty. The independence of the "Letter of Guarantee" from the Charterparty is clearly reflected by the fact that it contains a jurisdiction clause in favour of the Singapore courts (as opposed to Clause 17 in the Charterparty). Leaving aside the issue whether Owners ought to have sued in Singapore, the "Letter of Guarantee" was clearly intended to be a separate transaction with its own jurisdiction clause (instead of the arbitration clause in the Charterparty).

**C.      Owners not claiming a breach of Charterparty in the Connecticut proceedings**

20.     Charterers have alleged various "connections" between the claim in Connecticut and the Charterparty. None of their arguments are supported by the facts.

21.     One of the arguments raised by Charterers is that *"insofar as the said allegations are basically that Charterers failed to provide a performance guarantee from SSIC that is a <u>straightforward claim for (alleged) breach of Charterparty</u> and is a fortiori subject to the arbitration agreement".* (See paragraph 20 of the application)

(a)      Contrary to Charterers' assertion, the Complaint does not even contain a claim for breach of Charterparty by reason of a *"failure to provide a performance guarantee".*

(b)      There are eight counts spelled out in paragraphs 47 to 101 of the Complaint, namely (i) fraud; (ii) fraud by nondisclosure; (iii) fraudulent inducement; (iv) fraudulent misrepresentation; (v) negligent misrepresentation; (vi) breach of guarantee; (vii) alter ego; and (viii) violation of Connecticut Unfair Trade Practices Act.

4



RAJAH
TANN

None of these counts contain an allegation that Charterers have breached the Charterparty by failing to provide a performance guarantee from SSI.

(c) More importantly, there is no mention of a performance guarantee in the Charterparty between Charterers and Owners. A copy of the Charterparty is found in Annex F. The Charterparty does not contain an obligation to provide a performance guarantee. It is clearly wrong for Charterers to suggest that Owners are claiming a breach of the Charterparty by reason of a failure to provide a performance guarantee. Simply put, such a cause of action does not even exist. Charterers are merely attempting to create a tenuous link between the Connecticut proceedings and the Charterparty when none exists.

22. Charterers also allege at paragraph 11 of the application that *"Owners'* material argument *in the Connecticut proceedings seem* [sic] *to be that a performance guarantee which under the terms of the* fixture, *Charterers were supposed to provide from "Skaarup Shipping International Corp" ("SSIC") was not provided and/or was unenforceable because (Owners allege) SSIC did not exist"*. (Emphasis added) This is one of many vague and sweeping allegations which Charterers have made in the Application.

(a) Owners' "material argument" (to use Charterers' phrase) in the Complaint is that the defendants have misrepresented SSI's ability to issue the "Letter of Guarantee" (see generally paragraphs 48 to 88 and 99 to 101 of the Complaint).

(b) Charterers have conveniently referred to the "terms of the fixture", without explaining their relevance. The negotiations (including the fixture note) eventually culminated in the executed Charterparty. It is the Charterparty that contains the terms of the charterparty contract, not the fixture note. The "fixture note" was merely part of the negotiations between the parties and is relied upon by Owners in the Complaint merely as evidence that SSI has agreed to guarantee Charterers' performance of the Charterparty.

23. Charterers have also suggested at paragraphs 19 and 20 of the application that Owners are alleging in the Complaint that the Charterparty is *"void/voidable for fraud, misrepresentation, non-disclosure etc"*. Charterers allege at paragraph 20 of the application that *"Owners' arguments in the Connecticut proceedings are subject to the Singapore arbitration agreement, even though some of them (misrepresentation) in a different context might even go to the very existence of the Charterparty"*. Again, this allegation is clearly wrong. There is no basis to say that Owners dispute the existence or validity of the Charterparty. On the contrary, Owners do recognise the existence of the Charterparty - after all Owners themselves are enforcing a claim for breach of the Charterparty before this Tribunal.

24. Even if the applicant establishes that the foreign proceedings infringe its legal or equitable rights, typically by reason of breach of the arbitration agreement, the court may refuse an injunction. Its power is discretionary and it will be influenced by any relevant factors. (See *London Maritime Arbitration, Second Edition* at p.82 (Annex G)) We highlight the following factors for the Tribunal's consideration.

5

RAJAH
TANN

D.    Non-parties to arbitration agreement

25.    Besides Charterers, Owners also named 5 other defendants in the Complaint, namely, SSI, Skaarup Shipping Corp., Thomas Bene, Ole Skaarup, and Jonathan Zhu. These 5 defendants are not party to the Charterparty and therefore would not be obliged to participate in these arbitration proceedings. As such, it is incorrect for Charterers to say that the Connecticut proceedings falls within the scope of the arbitration clause in the Charterparty.

26.    There is no basis for this Tribunal to restrain Owners from proceeding against these 5 other defendants, if at all. There is also no basis for the Tribunal to only restrain Owners from proceeding against Charterers in Connecticut. First, for the reasons set out in this Response, the proceedings against Charterers in Connecticut do not fall within the scope of the arbitration clause. Secondly, Charterers are a proper and necessary party to the Connecticut proceedings. The negotiations leading to the issuance of the guarantee were conducted through Jonathan Zhu who is an officer of Charterers.

27.    Finally, there is a risk of a conflicting judgment and award if the Connecticut court and this Tribunal arrive at different conclusions in relation to the dispute before the Connecticut court. In *Bougyues Offshore SA v Capsian Shipping Co (Nos 1, 3, 4 and 5)* [1998] 2 Lloyd's Rep 461 (Annex H), the English Court of Appeal refused an anti-suit injunction even though there was an English exclusive jurisdiction clause in the contract which was binding on two out of the four interested parties. The court took a global approach towards the different proceedings that the casualty had given rise to, and was particularly concerned to avoid inconsistent decisions being reached over similar issues.

E.    Obtaining Security

28.    The Connecticut action is in essence an action to obtain security for Owners' claim. It is established law that a party is not precluded from commencing action in a court to obtain security for a claim subject to arbitration. Ultimately, the Connecticut proceedings is in essence a security proceeding substantially identical to a Rule B attachment proceeding. The proceedings are ancillary to any decisions rendered by this Tribunal on liabilities issues under the Charterparty. The Connecticut court is not being asked to render a judgment on any of the issues within the purview of this Tribunal.

29.    In *The Lisboa* [1980] 2 Lloyd's Rep 546 (Annex I), there was an exclusive jurisdiction clause which provides, "Any and all legal proceedings against the Carrier shall be brought before the competent court at London, which shall have exclusive jurisdiction...unless the Carrier expressly declares his option for other jurisdiction or expressly agrees to submit to other jurisdiction". Lord Denning MR held that the phrase *"any and all legal proceedings should be construed as relating only to proceedings to establish liability and did not extend to proceedings to enforce a judgment or to obtain security."* [Emphasis added]

30.    As far as Owners are concerned, the attempt to obtain security through the Connecticut action is particularly important because there is a real likelihood that Charterers would not be able to satisfy an eventual arbitral award.

6

RAJAH
TANN

31. Owners presently estimate the claim to exceed USD49 million (subject to quantification by the Tribunal). Security of USD900,000 obtained by Owners in separate Rule B proceedings in New York are at risk of being released in light of recent developments in the law on Rule B attachments. There is no evidence that Charterers own any substantial assets. Furthermore, to the best of Owners' knowledge, Charterers have ceased trading soon after the Charterparty was wrongfully terminated.

32. Singapore courts have rejected an anti-suit injunction application brought by a charterer against an owner in similar circumstances. In *Regalindo Resources Pte Ltd v Seatrek Trans Pte Ltd* [2008] 3 SLR(R) 930 (Annex J), there was an arbitration clause in a charterparty which is somewhat similar to the clause in this case. The clause provides that *"Any dispute if arising from this Charterparty to be settled by Arbitration in Singapore and English Law to apply..."* The owners brought proceedings in New York to obtain security for their claim under the charterparty. The charterers sought an anti-suit injunction from the Singapore courts (the seat of the arbitration, like this case, was in Singapore). The court followed the English Privy Council's decision in *Aerospatiale* and noted that there was a real likelihood that the charterers would not be able to satisfy the arbitration award if the defendant succeeded in the arbitration and concluded that *"it cannot be said that the defendant's [owners] resort to the New York Proceedings was unwarranted...any reasonable person in the defendant's shoes would be concerned with the plaintiff's [charterers] ability to satisfy an eventual arbitral award, if any."*

F. **Connecticut proceedings not vexatious or oppressive**

33. As one of the preconditions to obtain anti-suit injunction, Charterers have to demonstrate that Connecticut proceedings are vexatious or oppressive. Charterers have not even attempted to do so. Nonetheless, it cannot be said that the Connecticut proceedings are in any way vexatious or oppressive.

34. In considering whether the proceedings are vexatious and oppressive, the Tribunal should take into account the injustice to Owners if Owners are not allowed to pursue the Connecticut proceedings – hence, an injunction should not be granted if it will deprive Owners of advantages in the Connecticut forum which it would be unjust to deprive Owners of. (See Lord Goff, *Aerospatiale* at p.896)

35. In this case, if Owners are restrained from proceeding against Charterers in Connecticut, Owners would be deprived of the opportunity to obtain security for their claim under the charterparty. As mentioned above, Charterers are a necessary party to the Connecticut proceedings. If they are excluded from the Connecticut proceedings, Owners would effectively be handicapped and prevented from pursuing the claim in Connecticut.

36. Ultimately, the Connecticut action is an action to obtain security for Owners' claims. It is in substance no different from any proceedings to enforce a security separate from the underlying secured transaction. It is usual for maritime claimants to arrest a vessel under an order from a court of law or to commence Rule B proceedings for a maritime attachment. In fact, Owners have commenced Rule B proceedings against Charterers in New York – those proceedings are on-going. Charterers have not relied on the arbitration clause in the Charterparty to challenge the courts' jurisdiction in the Rule B proceedings.

# RAJAH
# TANN

G.      Delay

37.     Finally, we refer to Charterers' unexplained delay in raising this jurisdictional objection. Charterers have had two months to file a motion to stay the Connecticut proceedings after it was commenced on 18 November 2009. They did not do so despite having requested and obtained a time extension to file their Answer to the Complaint.

38.     It was only on 28 January 2010 that Charterers raised for the first time issues with the propriety of the Connecticut proceedings in the context of an application for time extension to file their Defence to the Points of Claim. The bona fides of Charterers' application for an anti-suit injunction are doubtful to say the least. Additionally, their application as the Tribunal would have seen consists of vague and broad-brush allegations without proper substantiation. We humbly submit that Charterers' application for interim injunction appears to be no more than a tactic designed to delay these arbitration proceedings and to frustrate Owners in these arbitration proceedings.

39.     We humbly urge the Tribunal to dismiss Charterers' application and for costs of the application to be awarded to Owners.

Yours faithfully

Toh Kian Sing, SC / Ian Teo
T  +65 62320614 / +65 6232 0627
F  +65 6225 7978

Copy To:
Mr Henry Dunlop (henry.dunlop@hfw.com) / Ms Christie Tsui (christie.tsui@hfw.com)
Ref: HWD/CZT/58096-5

Enclosures

8